DAVIS POLK & WARDWELL LLP
Donald S. Bernstein
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
Telephone:    (212) 450-4000

BOIES SCHILLER FLEXNER LLP
Scott E. Gant (admitted *pro hac vice*)
1401 New York Avenue, NW
Washington, DC 20005
Telephone:    (202) 237-2727
- and -
Damien J. Marshall
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 446-2300

*Counsel to The Hongkong and Shanghai Banking Corp. Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CHINA FISHERY GROUP LIMITED (CAYMAN), *et al.*,<br><br>Debtors. | Case No. 16-11895 (JLG)<br><br>Chapter 11 (Jointly Administered) |
| In re:<br><br>CFG PERU INVESTMENTS PTE. LTD. (SINGAPORE),<br><br>Debtor. | Case No. 16-11914 (JLG)<br><br>Chapter 11 |
| WILLIAM A. BRANDT, JR., AS TRUSTEE OF CFG PERU INVESTMENTS PTE. LTD. (SINGAPORE),<br><br>Plaintiff,<br><br>v.<br><br>THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED,<br><br>Defendant. | Adv. Pro. No. 18-01575-JLG |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED'S
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND .......................................................................................................5

LEGAL STANDARDS ............................................................................................14

ARGUMENT .........................................................................................................15

I.   The Trustee Has Not Established That This Court Has Subject Matter Jurisdiction Over His Claims ..............................................................................................15

II.   The Court Lacks Personal Jurisdiction Over HSBC-HK With Respect to the Trustee's Claims ...........................................................................................16

III.   This Adversary Proceeding Lacks Any Meaningful Connection to the United States and Should Be Dismissed on the Basis of *Forum Non Conveniens* ...........22

    A.   The Trustee's Decision to Sue in the United States Is Not Entitled to Any Deference ......................................................................................23

    B.   Hong Kong Is an Adequate Alternative Forum ....................................25

    C.   The Public and Private Interests Uniformly Favor Litigation in Hong Kong........26

        i.   The Public Interest Factors Favor Dismissal .............................................26

        ii.   The Private Interest Factors Favor Dismissal ...........................................28

IV.   Principles of International Comity Require Dismissal of This Case ................................30

V.   The First Amended Complaint Should Be Dismissed Because It Seeks to Hold HSBC-HK Liable for Petitioning Activity That Is Protected Under the *Noerr-Pennington* Doctrine ...............................................................................32

VI.   The Trustee Has Failed to Plead Claims With Requisite Specificity ...............................35

VII.   Each of The Non-Bankruptcy Causes of Action (Counts One–Six) Should Be Dismissed..........................................................................................39

    A.   The Peruvian Law Claims Must Be Dismissed (Counts One and Two)................39

        i.   The Peruvian Law Claims Are Time Barred .............................................40

        ii.   The Trustee Fails to State a Claim Under Peruvian Law...........................44

B.    The First Amended Complaint Fails to State a Claim Under Hong Kong
Common Law (Count Three) ................................................................45

C.    The Trustee's Unlawful/Tortious Interference Claims Should Be Dismissed
(Counts Four, Five and Six) ...............................................................48

   i.    Under the Governing Choice of Law Principles, Hong Kong Law
Applies to the Allegations Underlying Counts Four, Five and Six ..........49

   ii.    Because Count Four Is Not Cognizable Under Hong Kong Law,
It Should Be Dismissed...............................................................51

   iii.    Counts Five and Six Should Be Dismissed for Several Independent
Reasons ....................................................................................53

   iv.    In Any Event, the Trustee's Allegations Fail to State a Claim
for Tortious Interference Under New York Law .......................................55

VIII.    The Court Should Dismiss the Trustee's Claims for Equitable Subordination and
Equitable Disallowance (Count Seven) ...............................................................60

A.    The Trustee Lacks Standing to Bring Equitable Subordination Claims
Against HSBC-HK.........................................................................60

   i.    The Trustee Brings Count Seven on Behalf of CFG Peru in Its
Capacity as a Creditor...............................................................60

   ii.    The Trustee Cannot Demonstrate That CFG Peru Has Suffered a
Particularized Injury...............................................................61

   iii.    The Trustee Has Not Obtained Derivative Standing to Bring
Equitable Subordination Claims ..........................................................63

B.    The Trustee's Equitable Subordination Cause of Action Should Be
Dismissed as Unripe ...............................................................64

C.    The Allegations in the First Amended Complaint Are Insufficient to
Establish a Basis for the Equitable Subordination of HSBC-HK's Claims...........66

   i.    HSBC-HK's Alleged Conduct Was Not Inequitable and Does
Not Warrant Equitable Subordination .......................................................67

      a.    The Trustee Has Not Alleged That HSBC-HK Engaged
in "Gross and Severely Unfair" Conduct......................................67

      b.    HSBC-HK Was Never an Insider of the Debtors .........................69

   ii.    HSBC-HK's Conduct Neither Resulted In Harm to Other Creditors
Nor Conferred a Benefit Upon HSBC-HK ...............................................73

iii.    Equitably Subordinating HSBC-HK's Claims in the Present Case
Would Be Inconsistent With the Bankruptcy Code ...................................75

D.    Section 510(c) of the Bankruptcy Code Does Not Apply Extraterritorially
and Cannot Be Applied to Regulate HSBC-HK's Foreign Conduct ....................76

E.    Equitable Subordination Cannot Be Used to Compromise or Change the
Priority of HSBC-HK's Claims Against Non-Debtors.........................................77

F.    "Equitable Disallowance" Is Not a Remedy Recognized Under the
Bankruptcy Code .....................................................................................................77

CONCLUSION ..............................................................................................................78

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*10 Ellicott Square Court Corp. v. Violet Realty, Inc.,*
   81 A.D.3d 1366 (4th Dep't 2011)..............................................................58

*80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.),*
   169 B.R. 832 (Bankr. S.D.N.Y. 1994).......................................................67

*ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners, L.P.),*
   210 B.R. 508 (Bankr. S.D.N.Y. 1997)................................................70, 75

*Adelphia Commc'ns Corp. v. Bank of Am. (In re Adelphia Commc'ns Corp.),*
   330 B.R. 364 (Bankr. S.D.N.Y. 2005).......................................................63

*In re Aéropostale, Inc.,*
   555 B.R. 369 (Bankr. S.D.N.Y. 2016)................................................67, 68

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,*
   404 F.3d 566 (2d Cir. 2005) .....................................................................37

*Alcoa S.S. Co. v. M/V Nordic Regent,*
   654 F.2d 147 (2d Cir. 1980) .....................................................................23

*Allstate Ins. Co. v. Hague,*
   449 U.S. 302 (1981) .................................................................................55

*In re AlphaStar Ins. Grp., Ltd.,*
   383 B.R. 231 (Bankr. S.D.N.Y. 2008).......................................................35

*Amaranth LLC v. J.P. Morgan Chase & Co.,*
   71 A.D.3d 40 (1st Dep't 2009)..................................................................56

*Ancile Inv. Co. v. Archer Daniels Midland Co.,*
   538 F. App'x 19 (2d Cir. 2013) ................................................................40

*In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine,*
   311 F.3d 488 (2d Cir. 2002)...............................................................25, 28

*Arnon Ltd. v. Beierwaltes,*
   125 A.D.3d 453 (1st Dep't 2015)..............................................................58

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.,*
   480 U.S. 102 (1987) .................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................14

*Babcock v. Jackson*,
    12 N.Y.2d 473 (1963)........................................................................49, 50

*Bancredit Cayman Ltd. v. Santana  (In re Bancredit Cayman Ltd.)*,
    2008 WL 5396618 (Bankr. S.D.N.Y. Nov. 25, 2008)......................22, 23

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*,
    2000 WL 1508873 (2d Cir. Oct. 11, 2000) ...........................................33

*Baylis v. Marriott Corp.*,
    843 F.2d 658 (2d Cir. 1988) ...................................................................54

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................14

*Benjamin v. Diamond  (In re Mobile Steel Co.)*,
    563 F.2d 692 (5th Cir. 1977) ............................................................66, 67

*Benz v. Compania Naviera Hidalgo*,
    353 U.S. 138 (1957) ................................................................................41

*Bristol-Myers Squibb Co. v. Superior Ct.*,
    137 S. Ct. 1773 (2017)............................................................................17

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016) ...................................................................17

*Bryant v. Silverman*,
    2017 WL 887043 (S.D.N.Y. Mar. 6, 2017)......................................37, 38

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................17

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
    491 B.R. 335 (S.D.N.Y. 2013) ...............................................................70

*Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc.*,
    256 F. Supp. 2d 249 (D.N.J. 2003) .......................................................34

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (2004).................................................................................57

*Catskill Dev., LLC v. Park Place Entm't Corp.*,
    547 F.3d 115 (2d Cir. 2008) ...................................................................55

*China Fishery Group Limited in Companies Winding-Up Proceedings No 367
  of 2015 in Hong Kong*,
  HCMP 134/2018, [2019] HKCFI 174, [2019] HKEC 151 ............................................ *passim*

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ............................................................................................. 14

*Coastal States Mktg., Inc. v. Hunt*,
  694 F.2d 1358 (5th Cir. 1983) .......................................................................................... 33

*Coca-Cola Co. v. Omni Pac. Co.*,
  1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) .................................................. 34

*Cohen v. S.A.C. Trading Corp.*,
  711 F.3d 353 (2d Cir. 2013) ............................................................................................. 35

*Cole v. NIBCO, Inc.*,
  2015 WL 2414740 (D.N.J. May 20, 2015) ....................................................................... 55

*Commodore Int'l, Ltd. v. Gould  (In re Commodore Int'l, Ltd.)*,
  262 F.3d 96 (2d Cir. 2001) ................................................................................................. 3

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
  801 F. Supp. 2d 211 (S.D.N.Y. 2011) .............................................................................. 25

*Cooney v. Osgood Mach., Inc.*,
  81 N.Y.2d 66 (1993) ......................................................................................................... 55

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
  699 F.2d 599 (2d Cir. 1983) .................................................................................. 68, 72, 74

*Cybernaut Capital Mgmt. Ltd. v. Partners Grp. Access Secondary 2008, L.P.*,
  2013 WL 4413754 (S.D.N.Y. Aug. 7, 2013) .................................................................... 31

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .......................................................................................................... 17

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .......................................................................................................... 64

*Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*,
  79 F. Supp. 2d 374 (S.D.N.Y. 2000) ................................................................................ 43

*Davis v. N.Y. State Bd. Of Elections*,
  689 F. App'x 665 (2d Cir. 2017) ...................................................................................... 64

*Davric Maine Corp. v. Rancourt*,
  216 F.3d 143 (1st Cir. 2000) ............................................................................................ 33

*de Fontbrune v. Wofsy*,
  838 F.3d 992 (9th Cir. 2016) ...............................................................................40

*Delphi Corp v. Appaloosa Mgmt. L.P. (In re Delphi Corp.)*,
  2008 WL 3486615 (Bankr. S.D.N.Y. Aug. 11, 2008) .............................................67

*In re Deutsche Bank AG Sec. Litig.*,
  2016 WL 4083429 (S.D.N.Y. July 25, 2016) ...............................................35, 37

*Edwards v. Erie Coach Lines Co.*,
  17 N.Y.3d 306 (2011) .........................................................................................50

*EEOC v. Arabian Am. Oil Co. (Aramco)*,
  499 U.S. 244 (1991) .....................................................................................41, 44

*Ellul v. Congregation of Christian Bros.*,
  774 F.3d 791 (2d Cir. 2014) ...............................................................................40

*Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*,
  379 B.R. 425 (S.D.N.Y. 2007) ......................................................................66, 76

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ...........................................................................................33

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ..............................................................................................14

*Erie R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ..............................................................................................54

*Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*,
  940 F. Supp. 528 (S.D.N.Y. 1996) ......................................................................29

*Exec. Sounding Bd. Assocs. Inc. v. Advanced Mach. & Eng'g Co. (In re Oldco M Corp.)*,
  484 B.R. 598 (Bankr. S.D.N.Y. 2012) .................................................................20

*Fabricators, Inc. v. Technical Fabricators (In re Fabricators, Inc.)*,
  926 F.2d 1458 (5th Cir. 1991) .............................................................................66

*Fin. One Pub. Co. v. Lehman Bros. Special Fin. Inc.*,
  414 F.3d 325 (2d Cir. 2005) .........................................................................50, 55

*First Hill Partners, LLC v. BlueCrest Capital Mgmt. Ltd.*,
  52 F. Supp. 3d 625 (S.D.N.Y 2014) .....................................................................50

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
  957 F. Supp. 477 (S.D.N.Y. 1997) ......................................................................57

*Frank v. Gaos*,
  No. 17-961, slip op. (U.S. Mar. 20, 2019) ...........................................................64

*Friends of Rockland Shelter Animals, Inc. v. Mullen*,
 313 F. Supp. 2d 339 (S.D.N.Y. 2004) ...................................................................34

*Germain v. Conn. Nat'l Bank*,
 988 F.2d 1323 (2d Cir. 1993) ..............................................................................19

*Geron v. Seyfarth Shaw, LLP (In re Thelen LLP)*,
 736 F.3d 213 (2d Cir. 2013) ................................................................................49

*Gilstrap v. Radianz Ltd.*,
 443 F. Supp. 2d 474 (S.D.N.Y. 2006) ..................................................................43

*G.K.A. Beverage Corp. v. Honickman*,
 55 F.3d 762 (2d Cir. 1995) ............................................................................57, 58

*Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*,
 310 F.3d 64 (2d Cir. 2002) ..................................................................................64

*In re Glob. Ocean Carriers Ltd.*,
 251 B.R. 31 (Bankr. D. Del. 2000).......................................................................15

*Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*,
 453 B.R. 499 (Bankr. S.D.N.Y. 2011)..................................................................76

*Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*,
 380 B.R. 677 (Bankr. S.D.N.Y. 2008)..................................................................38

*Gucci Am., Inc. v. Weixing Li*,
 768 F.3d 122 (2d Cir. 2014) ..........................................................................16, 17

*Gulf Oil Corp. v. Gilbert*,
 330 U.S. 501 (1947) .......................................................................................26, 28

*Hanson v. Denckla*,
 357 U.S. 235 (1958) .............................................................................................16

*Harbinger Capital Partners LLC v. Ergen (In re LightSquared Inc.)*,
 504 B.R. 321 (Bankr. S.D.N.Y. 2013)..................................................................77

*In re Head*,
 223 B.R. 648 (Bankr. W.D.N.Y. 1998) ................................................................15

*Helicopteros Nacionales De Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984) .............................................................................................17

*Herbert Constr. Co. v. Greater N.Y. Sav. Bank (In re 455 CPW Assoc.)*,
 2000 WL 1340569 (2d Cir. Sept. 14, 2000) .........................................................70

*In re Hercules Offshore, Inc.*,
 565 B.R. 732 (Bankr. D. Del. 2016)......................................................................78

*Hilton v. Guyot*,
    159 U.S. 113 (1895) ..........................................................................................30

*Hines v. Overstock.com, Inc.*,
    2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013) ..........................................................54

*Hirsch v. Pa. Textile Corp., Inc. (In re Centennial Textiles, Inc.)*,
    227 B.R. 606 (Bankr. S.D.N.Y. 1998)........................................................................75

*Hirschfeld v. Spanakos*,
    104 F.3d 16 (2d Cir. 1997) ........................................................................................33

*Hosking v. TPG Capital Mgmt, L.P. (In re Hellas Telecomms. (Luxembourg) II SCA)*,
    555 B.R. 323 (Bankr. S.D.N.Y. 2016)........................................................................25

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..................................................................................................16

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ..................................................................................23, 28

*Jacobs v. D'Alessandro (In re Dewey & LeBoeuf LLP)*,
    2014 WL 4746209 (Bankr. S.D.N.Y. Sept. 23, 2014)...............................................70

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ..................................................................................................16

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005) ......................................................................................30

*Kalisch v. Maple Trade Finance Corp. (In re Kalisch)*,
    413 B.R. 115 (Bankr. S.D.N.Y. 2008)........................................................................66

*Karlitz v. Regent Int'l Hotels, Ltd.*,
    1997 WL 88291 (S.D.N.Y. Feb. 28, 1997) ...............................................................29

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ................................................................................56, 58

*Kitaru Innovations Inc. v. Chandaria*,
    698 F. Supp. 2d 386 (S.D.N.Y. 2010) .......................................................................27

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
    Amministrazione Straordinaria*,
    937 F.2d 44 (2d Cir. 1991).........................................................................................21

*Koontz v. St. Johns River Water Mgmt. Dist.*,
    570 U.S. 595 (2013)...................................................................................................21

*L–7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ......................................................................................14

*LaMonica v. CEVA Group PLC (In re CIL Ltd.)*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018).........................................................49, 50, 54

*LaSala v. Bank of Cyprus Pub. Co.*,
    510 F. Supp. 2d 246 (S.D.N.Y. 2007) .......................................................28, 29, 30

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.*
    *(In re Lehman Bros. Holdings, Inc.)*,
    541 B.R. 551 (Bankr. S.D.N.Y. 2015).......................................................68, 70, 71

*Lehman Bros. Special Fin. Inc. v. Bank of Am. Nat'l Assoc.*
    *(In re Lehman Bros. Holdings Inc.)*,
    544 B.R. 16 (Bankr. S.D.N.Y. 2015)....................................................................19

*Levy v. Young Adult Inst., Inc.*,
    103 F. Supp. 3d 426 (S.D.N.Y. 2015) ..................................................................35

*LightSquared LP v. SP Special Opportunities LLC (In re LightSquared Inc.)*,
    511 B.R. 253 (Bankr. S.D.N.Y. 2014).......................................................67, 73, 74

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................67

*Luxpro Corp. v. Apple Inc.*,
    2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) .....................................................34

*Lyme Regis Partners LLC v. Icahn (In re Blockbuster Inc.)*,
    2011 WL 1042767 (Bankr. S.D.N.Y. Mar. 17, 2011) ...............................60, 61, 62

*Madonna v. United States*,
    878 F.2d 62 (2d Cir. 1989) ..................................................................................37

*In re Mall at One Assocs., L.P.*,
    185 B.R. 1009 (Bankr. E.D. Pa. 1995) .................................................................66

*Matsumura v. Benihana Nat'l Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008) ..................................................................37

*Maxwell Commc'n Corp. plc v. Societe Generale*
    *(In re Maxwell Commc'n Corp. plc by Homan)*,
    93 F.3d 1036 (2d Cir. 1996).................................................................................30

*McCulloch v. Sociedad Nacional de Marineros de Honduras*,
    372 U.S. 10 (1963) ...............................................................................................41

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007) .............................................................................................41

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ................................................................................38

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*,
   158 F. Supp. 2d 377 (S.D.N.Y. 2001)...............................................................27, 28

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) ..................................................................................42, 43, 76

*In re Mr. R's Prepared Foods, Inc.*,
   251 B.R. 24 (Bankr. D. Conn. 2000)........................................................................74

*Nat'l Bank of Anguilla (Private Banking Tr.) Ltd. v. Nat'l Bank of Anguilla*
   *(In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.)*,
   580 B.R. 64 (Bankr. S.D.N.Y. 2018).......................................................23, 24, 26, 27

*Nat'l Org. for Marriage, Inc. v. Walsh*,
   714 F. 3d 682 (2d Cir. 2013) ...................................................................64, 65, 66

*Nat'l Westminster Bank USA v. Century Healthcare Corp.*,
   885 F. Supp. 601 (S.D.N.Y. 1995) ...............................................................68, 69

*Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*,
   361 B.R. 369 (Bankr. S.D.N.Y. 2007)......................................................................74

*Norex Petroleum, Ltd. v. Access Indus.*,
   416 F.3d 146 (2d Cir. 2005) .....................................................................................24

*In re Nortel Networks, Inc.*,
   469 B.R. 478 (Bankr. D. Del. 2012).........................................................................44

*Official Comm. of Unsecured Creditors v. Morgan Stanley & Co. (In re Sunbeam Corp.)*,
   284 B.R. 355 (Bankr. S.D.N.Y. 2002)...............................................................69, 70

*Official Comm. of Unsecured Creditors v. Transpacific Corp.*
   *(In re Commodore Int'l, Ltd.)*,
   242 B.R. 243 (Bankr. S.D.N.Y. 1999)......................................................................23

*Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax, L.P.*
   *(In re AppliedTheory Corp.)*,
   493 F.3d 82 (2d Cir. 2007).......................................................................................60

*Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax, L.P.*
   *(In re AppliedTheory Corp.)*,
   345 B.R. 56 (S.D.N.Y. 2006)..........................................................................62, 63

*Official Comm. of Unsecured Creditors of Grumman Olson Indus., Inc. v. McConnell*
   *(In re Grumman Olson Indus., Inc.)*,
   329 B.R. 411 (Bankr. S.D.N.Y. 2005)............................................................70, 73

*Official Comm. of Unsecured Creditors of Lois/USA, Inc. v. Conseco Fin. Servicing Corp.*
   *(In re Lois/USA, Inc.)*,
   264 B.R. 69 (Bankr. S.D.N.Y. 2001)..............................................................66, 67

*Official Comm. of Unsecured Creditors of the Debtors v. Austin Fin. Servs., Inc.*
  *(In re KDI Holdings, Inc.)*,
  277 B.R. 493 (Bankr. S.D.N.Y. 1999)......................................................................64

*Online Payment Sols. Inc. v. Svenska Handelsbanken AB*,
  638 F. Supp. 2d 375 (S.D.N.Y. 2009) ...................................................................26

*Pain v. United Techs. Corp.*,
  637 F.2d 775 (D.C. Cir. 1980).............................................................................23

*Pan Am Corp. v. Delta Air Lines, Inc.*,
  175 B.R. 438 (S.D.N.Y. 1994) .........................................................................70, 71

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) ..................................................................................14

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019) .............................................................................30, 76

*Picard v. Estate (Succession) of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*,
  525 B.R. 871 (Bankr. S.D.N.Y. 2015) ..............................................................19, 21

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014).........................................................60, 75, 78

*Pinetree Partners Ltd. v. OTR (In re Pinetree Partners, Ltd.)*,
  87 B.R. 481 (Bankr. N.D. Ohio 1988).................................................................68

*Pollux Holding, Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003) ................................................................................22

*PT United Can Co. v. Crown Cork & Seal Co.*,
  138 F.3d 65 (2d Cir. 1998) ...............................................................................25

*Pyrenee, Ltd. v. Wocom Commodities, Ltd.*,
  984 F. Supp. 1148 (N.D. Ill. 1997)......................................................................29

*Redington v. Touche Ross & Co.*,
  612 F.2d 68 (2d Cir. 1979) .............................................................................20, 21

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
  53 F. Supp. 3d (S.D.N.Y. 2014) ..........................................................................57

*RFP LLC v. SCVNGR Inc.*,
  788 F. Supp. 2d 191 (S.D.N.Y. 2011) ..............................................................55, 56

*Ritchie Capital Mgmt., LLC. v. Gen. Elec. Capital Corp.*,
  121 F. Supp. 3d 321 (S.D.N.Y. 2015) .........................................................61, 62, 63

*RJR Nabisco, Inc. v. European Cmty.*,
  136 S. Ct. 2090 (2016) ........................................................................41, 42, 43, 76

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004) ..........................................................................35, 37, 38

*Ross v. Bank of Am., N.A.*,
  524 F.3d 217 (2d Cir. 2008) ..........................................................................65

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) ............................................................................39

*Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006) ............................................................................30

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ......................................................................................16

*In re Sabine Oil & Gas Corp.*,
  547 B.R. 503 (Bankr. S.D.N.Y. 2016) ..........................................................69

*In re Sage Enter., Inc.*,
  2006 WL 1722582 (Bankr. N.D. Ill. Apr. 28, 2006) ....................................61

*S. China Cosmetics (HK) Ltd. v. Steiner Leisure Ltd.*,
  2013 WL 25925 (S.D.N.Y. Jan. 2, 2013) ......................................................26, 28

*Schwartzco Enters. LLC v. TMH Mgmt., LLC*,
  60 F. Supp. 3d 331 (E.D.N.Y. 2014) .............................................................37

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*,
  429 B.R. 423 (Bankr. S.D.N.Y. 2010) ..........................................................61, 62

*Seidel v. Ritter (In re Kinbrace Corp.)*,
  2017 WL 1380524 (Bankr. S.D.N.Y. Apr. 17, 2017) ....................................23

*Small v. United States*,
  544 U.S. 385 (2005) ......................................................................................43

*Smith v. Assocs. Commercial Corp. (In re Clark Pipe & Supply Co.)*,
  893 F.2d 693 (5th Cir. 1990) .........................................................................68

*Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*,
  562 B.R. 601 (Bankr. S.D.N.Y. 2017) ..........................................................2

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) .........................................................................37

*Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*,
  673 F.3d 180 (2d Cir. 2012) ..........................................................................49, 50

*Steffel v. Thompson*,
415 U.S. 452 (1974) ..........................................................................................21

*Stern v. Marshall*,
564 U.S. 462 (2011) ..........................................................................................20

*Stewart v. World Wrestling Fed'n Entm't, Inc.*,
2005 WL 66890 (S.D.N.Y. Jan 11, 2005) ....................................................48, 49

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004) ............................................................................18, 21

*Tenn. Student Assistance Corp. v. Hood*,
541 U.S. 440 (2004)..........................................................................................20

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
312 F.3d 90 (2d Cir. 2002) ..............................................................................32

*The Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*,
2011 WL 5865193 (S.D.N.Y. Nov. 22, 2011)..................................................14

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985) ..........................................................................................66

*Torres v. S. Peru Copper Corp.*,
965 F. Supp. 899 (S.D. Tex. 1996)....................................................................29

*Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC*,
2010 WL 4739938 (S.D.N.Y. Nov. 5, 2010)...............................................56, 57

*Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc.)*,
855 F.3d 84 (2d Cir. 2017) ..............................................................................62

*In re Ultrafem Inc. Sec. Litig.*,
91 F. Supp. 2d 678 (S.D.N.Y. 2000) ................................................................37

*United Mine Workers v. Pennington*,
381 U.S. 657 (1965) ..........................................................................................33

*Unsecured Creditors Comm. of STN Enters. v. Noyes (In re STN Enters.)*,
779 F.2d 901 (2d Cir. 1985) ............................................................................65

*Valley Nat. Bank v. Greenwich Ins. Co.*,
254 F. Supp. 2d 448 (S.D.N.Y. 2003) ........................................................49, 54

*Victoriatea.com, Inc. v. Cott Bev. Canada*,
239 F. Supp. 2d 377 (S.D.N.Y. 2003) ..............................................................23

*Vigoda v. DCA Prods. Plus Inc.*,
293 A.D.2d 265 (1st Dep't 2002)......................................................................59

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ...................................................................16

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009) .........................................................54, 55

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
    567 B.R. 55 (Bankr. S.D.N.Y. 2017)..................................................43, 44

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001) .............................................................17, 18

*White Family Cos. v. PNC Bank (In re Dayton Title Agency, Inc.)*,
    527 B.R. 289 (Bankr. S.D. Ohio 2015) ............................................65, 66

*Wiwa v. Royal Dutch Petrol. Co.*,
    226 F.3d 88 (2d Cir. 2000) ...................................................................26

*Yung v. Lee*,
    2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002) ..................................25, 26

*Zito v. Leasecomm Corp.*,
    2003 WL 22251352 (S.D.N.Y. Sept. 30, 2003) ...................................38

## STATUTES & RULES

11 U.S.C. § 101(31) .................................................................................69, 70

11 U.S.C. § 108..........................................................................41, 42, 43, 44

11 U.S.C. § 109(a) .........................................................................................15

11 U.S.C. § 301(b) .........................................................................................42

11 U.S.C. § 502(b) ...................................................................................77, 78

11 U.S.C. § 510(c) .................................................................................. *passim*

11 U.S.C. § 523...............................................................................................20

28 U.S.C. § 157...............................................................................................15

28 U.S.C. § 1334.............................................................................................15

Fed. R. Bankr. P. 2004 ............................................................................ *passim*

Fed. R. Bankr. P. 7009 ....................................................................................3

Fed. R. Bankr. P. 7012 ................................................................................................14

Fed. R. Civ. P. 8 ........................................................................................................55

Fed. R. Civ. P. 9(b) ................................................................................3, 4, 35, 37, 38

Fed. R. Civ. P. 12(b)(2) .......................................................................................14, 18

Fed. R. Civ. P. 12(b)(6) .......................................................................................14, 40

Fed. R. Civ. P. 44.1 ....................................................................................................40

<u>OTHER AUTHORITIES</u>

Bankruptcy Act (Chandler Act) § 11(e), 52 Stat. 840, 849 (1938), *as amended* 11 U.S.C. §
    108(a) (1978) .......................................................................................................43

H.R. Rep. 95-595 (1977)............................................................................................43

The Hongkong and Shanghai Banking Corporation Limited ("**HSBC-HK**"), by and through its counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss the First Amended Complaint dated March 8, 2019 [Adv. Pro. No. 18-01575-JLG, ECF No. 27] (the "**First Amended Complaint**" or "**FAC**"), filed by William A. Brandt, Jr., the chapter 11 trustee (the "**Trustee**") for CFG Peru Investments Pte. Ltd. (Singapore) ("**CFG Peru**").

## PRELIMINARY STATEMENT

1.      Although the Trustee has had months to pore over more than 45,000 pages of documents produced by HSBC-HK in response to the Trustee's extensive Rule 2004 requests, the First Amended Complaint tells the unremarkable tale of a Hong Kong bank that obtained the appointment of provisional liquidators to wind up a defaulting borrower.

2.      The First Amended Complaint, though silent about the Debtors'[1] alleged fraud (allegations that led this Court to appoint the Trustee in the first place), is replete with claims regarding purported missteps by the court-appointed provisional liquidators.  However, the First Amended Complaint fails to allege the type of conduct that actually merits a claim for lender liability in the United States.  There is no allegation that HSBC-HK ever breached a credit

---

[1] The Debtors in these chapter 11 cases are: China Fishery Group Limited (Cayman), Pacific Andes International Holdings Limited (Bermuda), N.S. Hong Investment (BVI) Limited, South Pacific Shipping Agency Limited (BVI), China Fisheries International Limited (Samoa), CFGL (Singapore) Private Limited, Chanery Investment Inc. (BVI), Champion Maritime Limited (BVI), Growing Management Limited (BVI), Target Shipping Limited (HK), Fortress Agents Limited (BVI), Ocean Expert International Limited (BVI), Protein Trading Limited (Samoa), CFG Peru Investments Pte. Limited (Singapore), Smart Group Limited (Cayman), Super Investment Limited (Cayman), Pacific Andes Resources Development Limited (Bermuda), Nouvelle Foods International Ltd. (BVI), Golden Target Pacific Limited (BVI), Pacific Andes International Holdings (BVI) Limited, Zhonggang Fisheries Limited (BVI), Admired Agents Limited (BVI), Chiksano Management Limited (BVI), Clamford Holding Limited (BVI), Excel Concept Limited (BVI), Gain Star Management Limited (BVI), Grand Success Investment (Singapore) Private Limited, Hill Cosmos International Limited (BVI), Loyal Mark Holdings Limited (BVI), Metro Island International Limited (BVI), Mission Excel International Limited (BVI), Natprop Investments Limited, Pioneer Logistics Limited (BVI), Sea Capital International Limited (BVI), Shine Bright Management Limited (BVI), Superb Choice International Limited (BVI), and Toyama Holdings Limited (BVI).

agreement with a debtor. There is no allegation that HSBC-HK improperly called an event of default or engaged in unlawful self-help with respect to the Debtors. There is no allegation that HSBC-HK exercised remedies of any kind except those grounded in a creditor's legal right to petition a foreign court under the local laws of the jurisdiction. The Trustee acknowledges that U.S. law does not currently recognize any cause of action for the conduct he alleges when he boasts that "[t]his case will be cited for enforcing" the limits of creditor conduct. [FAC ¶ 1.]

3.      Instead, the Trustee looks to Peruvian law and Hong Kong law to redress HSBC-HK's alleged wrongdoing in a bankruptcy proceeding in the United States—a jurisdiction to which the Debtors and the instant facts have absolutely no ties other than the chapter 11 cases. The Trustee not only asks this Court to adjudicate foreign law claims, but, as discussed below and in the declarations of Alfredo Bullard González and Anthony Rogers that are filed contemporaneously herewith, he asks this Court to make novel rulings in order to do so, stretching these foreign causes of action beyond the factual circumstances to which they are found to apply in their home jurisdictions.

4.      While it is one thing for the Debtors to have manufactured venue to file their chapter 11 cases, it is another for this Court to become the venue in which matters so clearly involving foreign law and facts are channeled, and still another for foreign law to be stretched to unprecedented uses in an action between a foreign debtor and a foreign creditor pending before this Court.

5.      With this context in place, it is easy to see that the specific defects in the Trustee's First Amended Complaint are numerous—and require dismissal.

6.      *First*, this Court lacks personal jurisdiction over HSBC-HK. While this Court previously held that HSBC-HK was subject to Rule 2004 discovery because it filed proofs of

claim against other Debtors (a conclusion with which HSBC-HK still, respectfully, disagrees), this Court lacks personal jurisdiction to adjudicate the causes of action set forth in the First Amended Complaint.[2]

7.        *Second*, the First Amended Complaint should be dismissed on the basis of *forum non conveniens*.  The circumstances here are compelling—none of the parties (save the Trustee himself), nor the witnesses or other evidence, are located in the United States.  The Trustee asserts four causes of action under Peruvian and Hong Kong law, and the applicable choice of law principles preclude the Trustee from pleading a claim for tortious interference under New York law.  The allegation made throughout the First Amended Complaint—that HSBC-HK made misrepresentations in its application seeking to appoint joint provisional liquidators—occurred before a Hong Kong court.  To the extent CFG Peru has any viable claims based on the Trustee's allegations, Hong Kong is the forum to address them.

8.        *Third*, for similar reasons, principles of comity dictate that the Trustee's allegations be addressed before a Hong Kong court.  Indeed, the Hong Kong court recently expressed its dismay that the Debtors filed the chapter 11 cases at all.

9.        *Fourth*, under the *Noerr-Pennington* doctrine, HSBC-HK cannot be sued in federal court for engaging in lawful petitioning activity (even if outside the United States), as the Trustee seeks to do.

10.        *Fifth*, all of the Trustee's claims sound in fraud, yet the First Amended Complaint does not come close to satisfying the requirements of Rule 7009 of the Federal Rules of Bankruptcy Procedure ("**Fed. R. Bankr. P.**"), which makes Federal Rule of Civil Procedure

---

[2] As explained below, the Trustee has also failed to establish this Court's subject matter jurisdiction over his claims.

("**Fed R. Civ. P.**") 9(b) applicable here.  The First Amended Complaint includes scant

descriptions of alleged misstatements to the Hong Kong court, and does not even assert that the

Hong Kong court relied on those alleged misstatements in appointing the joint provisional

liquidators.  When alleging fraud in federal court, particularity is required.

11.     *Sixth*, the four foreign law causes of action (Counts One and Two for relief under

the Peruvian Civil Code; Count Three for breach of duty under Hong Kong law; and Count Four

for unlawful interference with business under Hong Kong law) fail under the laws of their

respective jurisdictions.  In support of this motion, HSBC-HK has submitted declarations from

two distinguished experts, one in the law of Peru and the other in the law of Hong Kong, as is

appropriate on a motion to dismiss.  As the Peruvian law declaration makes clear, the Peruvian

law claims are time barred, and Peru does not recognize causes of action for the conduct alleged

in the First Amended Complaint.  As for Hong Kong common law, there is no private right of

action for breaching the duty of full and frank disclosure—only the Hong Kong court may

impose damages for such misconduct (and only where a party previously gave an undertaking to

the court, which HSBC-HK did not).  In addition, the breach of duty owed by a lender over sale

of a security is applicable only where a secured lender injures a borrower.  HSBC-HK is an

unsecured lender and CFG Peru is not its borrower, rendering the duty inapplicable.  As for the

only new claim added to the First Amended Complaint—unlawful interference, purportedly

under Hong Kong law—the Trustee has failed to allege that HSBC-HK acted unlawfully or

exhibited the requisite intent to harm CFG Peru.

12.     *Seventh*, the Trustee's tortious interference claims in Counts Five and Six—which

the First Amended Complaint specifies are brought under "U.S. law"—likewise must be

dismissed.  Applicable choice of law principles require such claims to be brought in the forum

where the alleged injury occurred—Hong Kong.  But even if New York law applies and the

claim could be brought here, the Trustee has failed to meet any of the elements for such claims.

13.     *Finally*, the Trustee seeks to equitably subordinate HSBC-HK's claims with

respect to other Debtors (HSBC-HK did not file a proof of claim for CFG Peru).  Since he brings

this Count Seven in his capacity as a creditor, the Trustee must either allege a particularized

injury as to CFG Peru or seek derivative standing as to those Debtors.  The Trustee has done

none of these things.  The equitable subordination claim is also not yet ripe given the possibility

that—as the Trustee himself has suggested—the sale process may allow repayment to creditors

in full, which would render these contingent claims unnecessary.  Nor has the Trustee

demonstrated that HSBC-HK "controlled" the CF Group or the provisional liquidators (who, far

from being surrogates for HSBC-HK, were officers of the Hong Kong court and accountable

only to it) in a manner that would render HSBC-HK an insider.

14.     Accordingly, and as set forth in detail below, the First Amended Complaint

should be dismissed.

## **BACKGROUND**

15.     CFG Peru is part of the Pacific Andes group of companies (the "**Pacific Andes**

**Group**" or the "**Group**").  [FAC ¶ 19.]  The Pacific Andes Group includes Debtor Pacific Andes

International Holdings Limited ("**PAIH**").  [*Id*.]  In 2004, indirect subsidiaries of PAIH bought

an interest in the China Fishery Group (the "**CF Group**"), which is a group of companies owned

by China Fishery Group Limited ("**CFGL**").  [*Id.* ¶ 20.]  In 2013, the CF Group acquired

Corporacion Pesquera Inca S.A.C. ("**Copeinca**").  [*Id.* ¶ 21.]  The main operating entities of the

CF Group are non-Debtors CFG Investments S.A.C. ("**CFGI**") and Copeinca (together, the

"**Peruvian OpCos**").  [*Id.* ¶ 23.]  CFG Peru owns 100% of the equity of CFGI, which indirectly

owns 100% of the equity of Copeinca.  [*Id.* ¶ 24.][3]

16.    On March 20, 2014, Debtor China Fisheries International Limited (Samoa)

("**CFIL**") and the Peruvian OpCos entered into a $650 million unsecured term and revolving

credit facility (the "**Club Facility**") with lenders HSBC-HK, Coöperatieve Centrale Raiffeisen-

Boerenleenbank B.A., Hong Kong Branch ("**Rabobank**"), DBS Bank (Hong Kong) Limited

("**DBS**"), Standard Chartered Bank (Hong Kong) Limited ("**SCB**") and China CITIC Bank

International Limited ("**China CITIC**")  (collectively, the "**Club Lenders**").  [*Id.* ¶ 36.]  CFG

Peru is neither a borrower nor a guarantor with respect to the Club Facility.  [Trustee Dec. at 11–

12.]

17.    After the closing of the Club Facility, the CF Group began to experience liquidity

problems and the Club Lenders entered into a succession of extension and waiver agreements

relating to the Club Facility.  [FAC ¶ 38.]  Between April 30, 2014 and November 11, 2015, the

Club Lenders agreed to eight such amendments and extensions.  [*Id.*]

18.    While extension and waiver discussions were ongoing, HSBC-HK authorized the

retention of the Hong Kong office of FTI Consulting ("**FTI**") to investigate certain of the CF

Group's financial activities.  [*Id.* ¶ 41.]  FTI delivered a draft report (the "**FTI Report**") to

HSBC-HK on October 20, 2014.  [*Id.*]  The First Amended Complaint alleges that following the

issuance of the report, HSBC-HK considered seeking appointment of joint provisional

liquidators but did not do so.  [*Id.* ¶ 42.]

---

[3] HSBC-HK respectfully refers the Court to the charts set forth on pages 7-8 of the First Amended
Complaint for a depiction of the organizational structure of the Pacific Andes Group.  For more information
regarding the background of the Pacific Andes Group, the commencement of the chapter 11 cases and the
appointment of the Trustee, HSBC-HK respectfully refers the Court to the Memorandum Decision and Order
Granting Motion For Appointment Of A Chapter 11 Trustee [No. 16-11895, ECF No. 203] (the "**Trustee Dec.**"),
which is referred to in the First Amended Complaint.  [*See* FAC ¶ 30 n.9.]

19.    On December 30, 2014, Donna Duke, former head of the Asia Pacific Loan

Management Unit at HSBC-HK, met with Ng Joo Siang, former Vice Chairman and Managing

Director of the Pacific Andes Group, at the office of the Pacific Andes Group.  [*Id*. ¶ 45;

HSBCHK-TR-00045211.]  At the meeting, Ms. Duke informed Mr. Ng that ███████████

████████████████████████████████████████████████████████████████████

███████████ an apt description for the Club Facility given the number of waivers and

extensions to date.  [FAC ¶ 45; HSBCHK-TR-00045211.]  ███████████████████

████████████████████████████████████████████████████████████████████

███████████████ [HSBCHK-TR-00045211; *see* FAC ¶ 45.]  ████████████████

████████████████████████████████████████████ [HSBCHK-TR-

00045211; *see* FAC ¶ 45.]  ████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████ [HSBCHK-TR-00045212; *see* FAC ¶ 45.]  ████████

████████████████████████████████████████████████████████

█████████████████████████████████████████ [HSBCHK-TR-00045212; *see*

FAC ¶ 45.]

20.    On December 31, 2014, ████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████ [FAC ¶ 45.]  Over the next several days, the Group repaid its bilateral

facilities.  [*Id.* ¶ 43.]

21.    During the first 10 months of 2015, HSBC-HK and the other Club Lenders

negotiated and signed three additional waiver letters with the Group.  [*See id*. ¶ 38.]  On

November 24, 2015, an HSBC-HK employee, along with representatives from the other Club

Lenders, attended a presentation by Mr. Ng at which he described a sale process for the Group's

Peruvian assets.  [*See id.* ¶ 64; HSBCHK-TR-00039212.]  Although the Group had yet to find a

bank willing to advise on the deal, Mr. Ng stated that several buyers had expressed interest in

acquiring the assets.  [FAC ¶ 64; HSBCHK-TR-00039212.]  According to the Group, the assets

were valued at approximately $1.7 billion.  HSBC-HK was ████████████████████

███████████████  [HSBCHK-TR-00039214; *see* FAC ¶¶ 63–64.]  The Group's

presentation indicated that prospective purchasers would execute Memorandums of

Understanding by December 15, 2015.[4]  [FAC ¶ 64; HSBCHK-TR-00039213.]

22.     On November 25, 2015, approximately 19 months after the borrowers and the

Club Lenders entered into the first of eight amendment and waiver agreements, HSBC-HK

commenced *ex parte* winding-up proceedings before the Court of First Instance of the High

Court of Hong Kong (the "**Hong Kong Court**"), and sought the appointment of joint provisional

liquidators over CFIL and CFGL (the "**HK JPL Application**").  [FAC ¶¶ 51–52.]  HSBC-HK

simultaneously made a similar application in the Grand Court of the Cayman Islands (the

"**Cayman JPL Application**" and, together with the HK JPL Application, the "**JPL**

**Applications**").  [*Id.* ¶ 66.]  The First Amended Complaint does not allege that these actions

violated the terms of the Club Facility or any other credit agreement.

23.     In support of the HK JPL Application, HSBC-HK submitted the FTI Report to the

Hong Kong Court.  [*Id.* ¶ 58.]  The First Amended Complaint alleges that HSBC-HK had a duty

to disclose to the Hong Kong Court "all facts material" to the application, and that HSBC-HK

failed to do so.  [*Id.* ¶ 62.]  The First Amended Complaint asserts that HSBC-HK "should have

---

[4] Even after the JPL proceedings began, two of these contemplated purchasers did ultimately execute
Memorandums of Understanding with the Group.  [FAC ¶ 113.]

brought the following facts to the Hong Kong Court's attention": (i) the FTI Report focused on

PAIH and PARD, not CFGL or CFIL; (ii) ███████████████████████████████;

(iii) the "FTI Report was based on outdated and limited information"; (iv) "the FTI Report was

not prepared for purposes of the JPL Application" and was delivered to HSBC-HK more than 12

months prior; (v) other Club Lenders did not support the JPL Application; and (vi) appointment

of JPLs could be injurious to the operations of the Peruvian OpCos and the sale process.  [*Id.* ¶

65.]  Notably, however, the First Amended Complaint does not allege that any of the information

contained in the FTI Report was inaccurate.

24.     In connection with the HK JPL Application, HSBC-HK offered an undertaking to

the Hong Kong Court to pay damages if the HK JPL Application was ultimately dismissed.  [*See*

Rogers Decl., as defined *infra*, at ¶ 30.]  Ultimately, the Hong Kong Court did not require such

an undertaking.  [*See* FAC ¶¶ 52, 159, 174.]

25.     On November 25, 2015, the Hong Kong Court granted the HK JPL Application

and appointed three KPMG Hong Kong professionals to serve as JPLs over CFGL and CFIL in

Hong Kong (the "**HK JPLs**").  [FAC ¶ 53.]  Following a hearing on December 8, 2015, the

Cayman Court granted the Cayman JPL Application and appointed three KPMG Hong Kong

professionals (two of which were HK JPLs) to serve as JPLs over CFGL (the "**Cayman JPLs**").

[*Id.* ¶ 66.]

26.     The First Amended Complaint alleges that during the term of their appointment,

the HK JPLs "traveled to Peru to meet with local suppliers and lenders to the Peruvian OpCos,"

and that they likewise met with "BCP—the Peruvian OpCos' primary working capital

provider—without anyone from the CF Group present."  [*Id.* ¶¶ 84–85.]  The First Amended

Complaint alleges that BCP thereafter suspended its $100 million facility, that the "main reason"

it did so "was the appointment of the JPLs" [*id.* ¶ 86], and that as a result, the non-Debtor

Peruvian OpCos were forced to secure alternative financing at a higher cost.  [*Id.* ¶ 87.]

27.    On December 30–31, 2015, a different judge of the Hong Kong Court (the

original judge was unavailable) conducted a hearing, and on January 5, 2016, the second judge

dismissed the HK JPLs.  [*See id.* ¶ 91.]  The First Amended Complaint does not provide any

detail regarding the basis for the Hong Kong Court's decision—and for good reason.  As

described below, the decision remains under seal and the Hong Kong Court subsequently barred

the Trustee from using it to pursue claims against HSBC-HK in this Court.  [*See infra* ¶ 33.]

28.    Although the HK JPLs were dismissed, the Cayman JPLs remained in place.  [*See

id.* ¶ 95.]  HSBC-HK intended to appeal the Hong Kong Court's decision dismissing the HK

JPLs and to proceed with its winding up petition before the Cayman Court.  [*Id.*]  HSBC-HK,

CFIL, and CFGL thereafter entered into negotiations and ultimately reached an agreement,

which they memorialized in a settlement agreement known as the Deed of Undertaking (the

"**Deed of Undertaking**"), which was executed on January 20, 2016.  [*Id.* ¶ 97.]  Pursuant to the

Deed of Undertaking, HSBC-HK agreed to withdraw its appeal in Hong Kong and to the

dismissal of the Cayman JPLs, while CFGL and CFIL agreed to pursue a sale of the Peruvian

OpCos, appoint a chief restructuring officer to oversee the sale, and pay the HK JPLs' fees.  [*Id.*

¶¶ 96–97.]  CFGL and CFIL also agreed to consent to the reappointment of the Cayman JPLs in

the event of a breach.  [*Id.*]  The First Amended Complaint does not allege that the Deed of

Undertaking was in any way unenforceable.

29.    Prior to fulfilling their obligations under the Deed of Undertaking, the Debtors

filed for chapter 11 bankruptcy in New York on June 30, 2016.  [*Id.* ¶ 120.]  On November 10,

2016, following a two-day trial involving seven witnesses and 168 exhibits, this Court appointed

the Trustee.  [*Id.* ¶ 121.]

30.    Based on that evidence, this Court made several findings that bear directly on the

allegations set forth in the First Amended Complaint.  Specifically, this Court held:

- "None [of the Debtors] have assets in the United States except for their interests in retainers paid to their United States advisors."  [Trustee Dec. at 4.]

- "[T]he Debtors, even at the time the Deeds of Undertaking were entered into, did not intend to sell the Peruvian business that they committed to sell."  [*Id.* at 37.]

- "[O]n June 30, 2016, the Debtors deliberately breached all aspects of the Deeds of Undertakings by commencing these Chapter 11 cases and . . . by suspending the sales process."  [*Id*. at 38.]

- The Debtors likewise breached the Deed of Undertaking "by preventing HSBC and BANA from exercising their agreed upon remedy to reappoint a provisional liquidator in the Cayman Islands with the consent of the Debtors."  [*Id.*]

- Appointment of a chapter 11 trustee was necessary because of "management's deliberate and premeditated breach of the Deeds of Undertakings"; "management's surreptitious planning of global bankruptcy and insolvency filings"; "several billion dollars of unexplained intercompany transactions"; and "hundreds of millions of unexplained purported prepayments to Russian entities," among other things.  [*Id.* at 41.]

31.    Following the appointment of the Trustee, the Court set a bar date for the filing of

proofs of claim with respect to the Debtors.  [No. 16-11895, ECF No. 253.]  On January 12–13,

2017, HSBC-HK filed proofs of claim in the chapter 11 cases for CFGL, CFIL, N.S. Hong and

Smart Group (the "**Proofs of Claim**").  [FAC ¶ 123; No. 16-11895, ECF No. 634 at 8–9.]

HSBC-HK did not file a proof of claim against CFG Peru.

32.    On December 27, 2016, the Trustee filed a motion to authorize the issuance of

subpoenas to HSBC-HK pursuant to Rule 2004 of the Fed. R. Bankr. P. [No. 16-11895, ECF No.

299] (the "**Rule 2004 Motion**").  The Trustee's central argument to support this Court's exercise

of personal jurisdiction over HSBC-HK was the filing of the Proofs of Claim.  [No. 16-11895,

ECF No. 375, ¶¶ 43–53.] On July 19, 2017, the Court granted the Rule 2004 Motion over

HSBC-HK's objection. [No. 16-11895, ECF No. 634.] The Court held that "in filing the HSBC-

HK Proofs of Claim against CFIL, CFGL, Smart Group and N.S. Hong, HSBC-HK has

submitted itself to the jurisdiction of this Court in those cases and, in doing so, vested the Court

with the 'full power to inquire into the validity of any alleged debt or obligation upon which a

demand or a claim against the estate is based.'" [*Id.* at 16 (citation omitted).] The Court did not

rule on whether it had personal jurisdiction over any claims which might be asserted in the

future. Instead, the Court concluded only that its jurisdiction was "broad enough to include the

Rule 2004 discovery at issue herein." [*Id.* at 17.]

33.    On January 30, 2018, the Trustee filed an *ex parte* originating summons with the

Hong Kong Court seeking permission to use the decision dismissing the HK JPLs in this

adversary proceeding.[5] The matter was assigned to the Hong Kong judge who had initially

appointed the HK JPLs but had been unavailable for the December 2015 hearing. HSBC-HK

opposed the application, and the Hong Kong Court conducted a hearing on September 11, 2018.

The Hong Kong Court issued an order denying the Trustee's application on September 17, 2018,

and on January 14, 2019, the Hong Kong Court issued a detailed opinion, known in Hong Kong

as "reasons for decision." [*See* Declaration of Elliot Moskowitz, dated March 29, 2019

("**Moskowitz Decl.**"), Exhibit 3, Reasons for Decision, *China Fishery Group Ltd*, HCMP

134/2018, [2019] HKCFI 174, [2019] HKEC 151 (the "**Reasons for Decision**").]

34.    In the Reasons for Decision, the Hong Kong Court stated that it is "highly

probable" that had HSBC-HK continued with its appeal and litigation in Hong Kong, "CFG[L]

---

[5] Leave of the Hong Kong Court was required because the Hong Kong decision dismissing the HK JPLs was sealed by order of the Hong Kong Court.

would have been wound up along with CFI[L] on 27 January 2016 or possibly provisional liquidators reappointed for a period while the creditors considered alternatives to liquidation." [Reasons for Decision ¶ 16.] The Hong Kong Court concluded that CFGL and CFIL were only able to avoid this result by giving "undertakings to this Court that they had no intention of honouring" and thereafter filing for bankruptcy in the United States. [*Id.*] The Hong Kong Court explained: "Viewed from this Court's perspective the Chapter 11 filings by the Companies and the Group were, therefore, unconscionable and an abuse and it was only as a result of this objectionable conduct that the application to appoint the Trustee became possible." [*Id.*; *see also id.* ¶ 31 ("It is self-evidently objectionable and an affront to this Court for the Companies having submitted to this jurisdiction by signing the Deed which contains a Hong Kong governing law clause and given undertakings to this Court, to commence proceedings in another jurisdiction with a view to hindering enforcement of the Deed.").] Based on these concerns, the Hong Kong Court denied the Trustee's request for leave to use the decision dismissing the HK JPLs in his effort to bring claims against HSBC-HK.[6] [*Id.* ¶ 36.] As a result, that decision is not part of the First Amended Complaint or before this Court.[7]

---

[6] The Hong Kong Court also ordered the Trustee to pay for HSBC-HK's costs associated with the proceedings that led to the Reasons for Decision. [Reasons for Decision ¶ 36.]

[7] On October 12, 2018, the Trustee filed a notice of appeal of the Hong Kong Court's order denying the Trustee's application. [Notice of Appeal, *Brandt v. The Hongkong and Shanghai Banking Corporation Limited* (C.A. Oct. 12, 2018) (on appeal from HCMP No. 134/2018).]

## LEGAL STANDARDS

35.     "In order to survive a motion to dismiss for lack of personal jurisdiction [under Rule 12(b)(2)], a plaintiff must make a prima facie showing that jurisdiction exists." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010) (citation and quotations omitted).  To make such a showing, the plaintiff "must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (alteration in original) (citation omitted).

36.     To survive a motion to dismiss pursuant to Rule 12(b)(6), made applicable to these proceedings by Fed. R. Bankr. P. 7012, a complaint must contain factual allegations that plausibly suggest the defendant is liable for the conduct alleged.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  In ruling on a Rule 12(b)(6) motion, the court must accept as true all factual allegations contained in the pleading, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); however, a court is not "'bound to accept as true [any] legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The court must then determine if the well-pleaded factual allegations state a "plausible claim for relief." *Id.* at 679. To be sufficiently plausible, the complaint must contain "enough factual matter" to "raise [the] right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (2007). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *The Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 2011 WL 5865193, at *6 (S.D.N.Y. Nov. 22, 2011) (citing *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).

14

## ARGUMENT

**I.    The Trustee Has Not Established That This Court Has Subject Matter Jurisdiction Over His Claims**

37.    The First Amended Complaint asserts this Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 [FAC ¶ 10], but is silent about satisfaction of 11 U.S.C. § 109(a)'s requirement that, as relevant here, only a person who has "property in the United States" at the time a bankruptcy petition is filed may be a debtor.  *See In re Glob. Ocean Carriers Ltd.*, 251 B.R. 31, 37 (Bankr. D. Del. 2000) ("The Debtors must have property in the United States at the time they actually file their bankruptcy petition.").  There is reason to doubt that CFG Peru (for which the Trustee acts) had property in the United States when it commenced its bankruptcy proceeding, given that it had no operations or business in, or other connection to, the United States prior to these proceedings.  [*See* Reasons for Decision ¶ 30 ("[T]here is no relevant connection between CFG Peru . . . and the jurisdiction of the United States Bankruptcy Court for the Southern District of New York or any other court in the United States."); *see also* Trustee Dec. at 7–8.]  If CFG Peru did not have property in the United States at the time it filed its petition, this Court lacks subject matter jurisdiction over this adversary proceeding.  *See, e.g.*, *In re Head*, 223 B.R. 648, 651–54 (Bankr. W.D.N.Y. 1998) (finding debtors ineligible under § 109(a) due to their lack of "property in the United States," dismissing the underlying bankruptcy, and dismissing "all adversary proceedings pending in this case . . . as now lacking a jurisdictional predicate").

38.    Because the First Amended Complaint fails to allege facts which, if true, would satisfy 11 U.S.C. § 109(a), it should be dismissed.

## II.   The Court Lacks Personal Jurisdiction Over HSBC-HK With Respect to the Trustee's Claims

39.   Personal jurisdiction concerns a court's "authority over the parties," and is an "essential element" of the jurisdiction of a district court. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 584 (1999) (citation and quotations omitted). It must "be established as a threshold matter" because "without jurisdiction the court cannot proceed at all in any cause." *Id.* at 577 (citations omitted); *see also id.* at 584 ("Personal jurisdiction . . . 'represents a restriction on judicial power.'" (citation omitted)).

40.   The requirement that a court have personal jurisdiction over a defendant is grounded in constitutional due process principles, which guard against the deprivation of life, liberty, or property except by the exercise of lawful power. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 328 (2d Cir. 2016) ("Personal jurisdiction is 'a matter of individual liberty' because due process protects the individual's right to be subject only to lawful power." (citation omitted)). As a result, "[a] court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *J. McIntyre Mach. Co. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) ("[B]efore a court may exercise jurisdiction over a person or organization . . . that person or entity must have sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" (quoting *Int'l Shoe*, 326 U.S. at 316)).

"Specific jurisdiction . . . permits adjudicatory authority only over issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum."  *Id.* (alterations in original) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

41.     These due process concerns are amplified with respect to foreign parties.  The Supreme Court has rejected as "exorbitant" theories of general personal jurisdiction that would encompass "claims involving only foreign plaintiffs and conduct occurring entirely abroad." *Daimler AG v. Bauman*, 571 U.S. 117, 121–22, 125 (2014).  Because the "primary concern" of a personal jurisdiction analysis is "the burden on the defendant," *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1780 (2017) (citation omitted), courts must be exceedingly cautious when weighing personal jurisdiction over foreign defendants.  *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."); *id.* at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.") (citation and quotations omitted); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("[C]onstitutional due process principles generally restrict the power of a state to endow its courts with personal jurisdiction over foreign corporate parties— that is, entities neither organized under the state's laws nor operating principally within its bounds—with regard to matters not arising within the state.").

42.     As this Court previously recognized in connection with the Trustee's Rule 2004 Motion, "[t]he Trustee bears the burden of pleading and proving that this Court has jurisdiction over HSBC-HK."  [No. 16-11895, ECF No. 634 at 13]; *see also Whitaker v. Am. Telecasting,*

*Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) ("The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss."). Moreover, the Trustee must do so with respect to **each** claim in his Complaint. [No. 16-11895, ECF No. 634 at 13 (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).]

43.    The Trustee alleges this Court can exercise personal jurisdiction over HSBC-HK because it "(a) has filed proofs of claim in the chapter 11 cases of CFGL"; "(b) entered notices of appearance in each of those cases and the chapter 11 case of CFG Peru"; and "(c) requested affirmative relief from this Court, including sustaining its objection to the retention of . . . Quinn Emanuel." [FAC ¶ 18.] The Trustee's arguments are misguided, and fail to identify a valid basis for this Court to exercise personal jurisdiction over HSBC-HK with respect to the causes of action in the First Amended Complaint.

44.    The Trustee begins by mistakenly characterizing this Court's Rule 2004 Order. While the Trustee contends "this Court concluded that HSBC had submitted to its jurisdiction by filing the Proofs of Claim" [*id.*], the Court's actual holding was narrow:

> [I]n filing the HSBC-HK Proofs of Claim against CFIL, CFGL, Smart Group and N.S. Hong, HSBC-HK has submitted itself to the jurisdiction of this Court in those cases and in doing so, vested the Court with the 'full power to inquire into the validity of any alleged debt or obligation upon which a demand or a claim against the estate is based.'

[No. 16-11895, ECF No. 634 at 16 (citation omitted).]

45.    In the Court's view, its authority over HSBC-HK arising from submission of the Proofs of Claim was "broad enough" to include the Rule 2004 discovery at issue.[8] [*Id.* at 17.] The Court, however, did not find that HSBC-HK had submitted itself to personal jurisdiction for

---

[8] If the Trustee's interpretation of the Rule 2004 Order were correct, the Court's observation that its jurisdiction was "broad enough" to encompass the requested Rule 2004 discovery would have made no sense, since the Court's authority to exercise personal jurisdiction would have been unconstrained.

any purpose other than "inquir[ing] into the validity of any alleged debt or obligation upon which a demand or a claim against the estate is based."[9]  *Cf. Lehman Bros. Special Fin. Inc. v. Bank of Am. Nat'l Assoc. (In re Lehman Bros. Holdings Inc.)*, 544 B.R. 16, 36 (Bankr. S.D.N.Y. 2015) (holding that the "filing of [a] proof of claim . . . represents . . . submission to the jurisdiction of the Court only with respect to litigation concerning the claims allowance process" and that the filer of the proof of claim did not subject itself to jurisdiction with respect to an adversary proceeding that did not concern the claims allowance process); *Picard v. Estate (Succession) of Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*, 525 B.R. 871, 887–88 (Bankr. S.D.N.Y. 2015) (holding that "the submission to personal jurisdiction [by filing a proof of claim] is limited to litigation concerning the claims allowance process" and finding no personal jurisdiction over French citizens where the adversary proceeding against them would not affect their claims).

46.    Here, there can be no serious argument that Counts One–Six of the First Amended Complaint are inquiries into "the validity of any alleged debt or obligation upon which a demand or a claim against the estate is based."  [No. 16-11895, ECF No. 634 at 16 (citation omitted)]; *cf. Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993) (finding "lender liability actions," which "would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process").  Thus, the Court's finding in the Rule 2004 Order extends, at most, to Count Seven of the First Amended Complaint.

47.    But HSBC-HK maintains that its filing of Proofs of Claim did not give rise to personal jurisdiction over *any* of the Trustee's claims in the First Amended Complaint because

---

[9] The Trustee also inaccurately portrays the Second Circuit's actions with respect to the Rule 2004 Order. The Court of Appeals dismissed for lack of appellate jurisdiction—and did not "reject" HSBC-HK's appeal.  Motion Order, *The Hongkong & Shanghai Banking Corp. Ltd. v. Brandt (In re China Fishery Grp. Ltd (Cayman))*, No. 18-5 (2d Cir. May 21, 2018) [Doc. 41].

once the chapter 11 cases were permitted to proceed and a bar date order was entered [No. 16-11895, ECF No. 253], the submission of Proofs of Claim was effectively involuntary: HSBC-HK was forced to choose between forgoing repayment of money owed to it by the Debtors for which it was a creditor, or potentially subjecting itself to claims asserted against it in a forum with which it has no contacts and in which it engaged in no relevant conduct. *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("If a creditor chooses not to submit a proof of claim, once the debts are discharged, the creditor will be unable to collect on his unsecured loans."); *Stern v. Marshall*, 564 U.S. 462, 493 (2011) ("Pierce did not truly consent to resolution of Vickie's claim in the bankruptcy court proceedings. He had nowhere else to go if he wished to recover from Vickie's estate."); *id.* at 493 n.8 ("Creditors who possess claims that do not satisfy the requirements for nondischargeability under 11 U.S.C. § 523 have no choice but to file their claims in bankruptcy proceedings if they want to pursue the claims at all. That is why . . . the notion of 'consent' does not apply in bankruptcy proceedings as it might in other contexts."); *Exec. Sounding Bd. Assocs. Inc. v. Advanced Mach. & Eng'g Co. (In re Oldco M Corp.)*, 484 B.R. 598, 611 (Bankr. S.D.N.Y. 2012) ("Because a creditor in bankruptcy must file a proof of claim to recover against the estate, merely filing a proof of claim cannot be considered consent to a bankruptcy court's decision of matters unrelated to that claim or the bankruptcy. For this reason, the [Supreme] Court noted [in *Stern*] that the notion of jurisdictional 'consent' does not apply in bankruptcy proceedings as it might in other contexts."); *see also Redington v. Touche Ross & Co.*, 612 F.2d 68, 73 & n.7 (2d Cir. 1979) ("[T]he act of filing a proof of claim is not the kind of submission that courts have accepted in the past as constituting voluntary submission under [the statute], at least absent a closer nexus than is present here between the Trustee's claim and the claim filed . . . . Before concluding that a party has consented to the

exercise of plenary jurisdiction, courts have required such indicia of consent as a general

appearance and consent, or explicit concession of jurisdiction." (citations omitted)).

48.    Being forced to choose between waiving personal jurisdiction defenses and

abandoning the right to recovery on a valid debt would impose an unconstitutional condition on

HSBC-HK or any other similarly situated creditor.  The unconstitutional conditions doctrine

"vindicates the Constitution's enumerated rights by preventing the government from coercing

people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604

(2013); *see also Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (rejecting a course of action that

would put a litigant in a position to have to choose between "the Scylla . . . and the Charybdis"

of forgoing a constitutional right or exposing himself to legal sanctions).  The Court should

avoid adopting a rule that would give rise to constitutional infirmity.

49.    The Trustee's other purported bases for this Court's exercise of personal

jurisdiction over the specific causes of action alleged in the First Amended Complaint fare no

better.  *See Sunward*, 362 F.3d at 24 ("A plaintiff must establish the court's jurisdiction with

respect to *each* claim asserted." (citation omitted)).  HSBC-HK's entry of appearances in the

chapter 11 cases, with an express reservation that personal jurisdiction objections and defenses

are reserved and not waived [No. 16-11895, ECF No. 332 at 2–3], did not create personal

jurisdiction over HSBC-HK.  *See Madoff*, 525 B.R. at 888 (acknowledging effectiveness of

provisos preserving jurisdictional defenses against proceedings initiated by Trustee against

foreign individuals); *see also Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir.

1991) (a "party's consent to jurisdiction in one case . . . extends to that case alone").  Nor did

HSBC-HK's filing of a response to the Trustee's application for the retention of Quinn

Emanuel—which similarly reserved all personal jurisdiction objections and defenses [No. 16-

11895, ECF No. 333 at 4 n.5], and was submitted solely in response to the Trustee's request for

discovery, which HSBC-HK contended the Court lacked the power to compel.

### III.  This Adversary Proceeding Lacks Any Meaningful Connection to the United States and Should Be Dismissed on the Basis of *Forum Non Conveniens*

50.     It is difficult to conceive of a stronger case for dismissal on the basis of *forum non*

*conveniens*.  All of the alleged conduct occurred outside the United States; both CFG Peru and

HSBC-HK are located abroad, as are all imaginable witnesses based on the allegations; foreign

law should control all of the Trustee's non-bankruptcy claims; and an adequate alternative forum

exists in Hong Kong.  Indeed, the Hong Kong courts have an unusually direct interest in claims

that HSBC-HK misled a *Hong Kong judge*, in violation of an obligation purportedly owed to a

*Hong Kong court*.

51.     Under the *forum non conveniens* doctrine, a trial court may decline to exercise

jurisdiction over a matter "whenever it appears that such [a] case may be more appropriately

tried in another forum, either for the convenience of the parties or to serve the ends of justice."

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 67 (2d Cir. 2003).

52.     To determine whether dismissal on this basis is appropriate, courts consider

whether (i) the plaintiff's choice of forum is entitled to deference; (ii) an adequate alternative

forum exists; and (iii) the balance of public and private interests favors dismissal.  *Id.* at 70.

When deciding a motion to dismiss for *forum non conveniens*, the trial court can "decide [a]

*forum non conveniens* motion based on the existing record," *Pollux*, 329 F.3d at 76, and is not

bound by the plaintiff's allegations, *Bancredit Cayman Ltd. v. Santana (In re Bancredit Cayman*

*Ltd.)*, 2008 WL 5396618, at *1 n.1 (Bankr. S.D.N.Y. Nov. 25, 2008).[10]  Here, each of these

factors strongly favors dismissal.

      A.    *The Trustee's Decision to Sue in the United States Is Not Entitled to Any Deference*

    53.    To determine how much deference, if any, the plaintiff's choice of forum

deserves, courts employ a "sliding scale" based upon the totality of the circumstances.  *Iragorri*

*v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001).[11]  At one end of the scale, courts afford

deference to a plaintiff's choice to litigate in the jurisdiction where it filed for bankruptcy for

reasons of genuine "convenience."  *Iragorri*, 274 F.3d at 72.  At the other end, little to no

deference should be extended where the lawsuit lacks a "bona fide connection to the United

States" and "it appears that the plaintiff's choice of a U.S. forum was motivated by forum-

shopping."  *Id*.  Here, there is no basis to accord the Trustee's choice of forum any deference.

    54.    First, there is no bona fide connection between the adversary proceeding and the

United States.  As this Court previously found in appointing the Trustee, there is no meaningful

link between this forum and the chapter 11 cases at all.  [Trustee Dec. at 4.]  Moreover, the

---

[10] Indeed, a court may look outside the First Amended Complaint.  *See Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) ("The district court took the motion to dismiss on submission, based on the pleadings, affidavits and briefs of the parties—a practice long recognized as acceptable and followed from time immemorial in the busy Southern District of New York in determining *forum non conveniens* motions.").

[11] While a U.S. debtor is entitled to deference for bringing an adversary proceeding in the court where its chapter 11 case is pending, the same is not true for a foreign debtor.  *See, e.g.*, *VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 381 (S.D.N.Y. 2003) ("[T]he domestic forum choice of a 'nominally American plaintiff,' defined as subrogees, assignees, or representatives of foreign companies, is generally not given special deference." (quoting *Pain v. United Techs. Corp.*, 637 F.2d 775, 797–98 (D.C. Cir. 1980))); *see also Nat'l Bank of Anguilla (Private Banking Tr.) Ltd. v. Nat'l Bank of Anguilla (In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.)*, 580 B.R. 64, 75–76, 85–86 (Bankr. S.D.N.Y. 2018) (finding that foreign representatives forum shopped by filing adversary proceedings in the S.D.N.Y., even though the related bankruptcy petitions were also pending in that district).  Indeed, several courts in this jurisdiction have dismissed adversary proceedings commenced here by a foreign debtor on the basis of *forum non conveniens*.  *See, e.g.*, *Seidel v. Ritter (In re Kinbrace Corp.)*, 2017 WL 1380524 (Bankr. S.D.N.Y. Apr. 17, 2017) (dismissing adversary proceeding commenced by foreign debtor for *forum non conveniens*); *Bancredit Cayman Ltd.*, 2008 WL 5396618 (same); *Official Comm. of Unsecured Creditors v. Transpacific Corp. Ltd. (In re Commodore Int'l, Ltd.)*, 242 B.R. 243 (Bankr. S.D.N.Y. 1999) (same), *aff'd on other grounds*, 2000 WL 977681 (S.D.N.Y. July 17, 2000).

Debtor for which the Trustee was appointed—CFG Peru—is incorporated under the laws of

Singapore and has its principal place of business in Hong Kong.  [No. 16-11914, ECF No. 1 at 1,

7.]  The First Amended Complaint contains no allegations connecting any of the Debtors or the

conduct underlying this lawsuit to this District or the United States.

55.     Second, there is ample evidence that the Trustee's choice of a U.S. forum was

motivated by forum shopping.[12]  Courts consider a number of factors in determining whether a

plaintiff's choice indicates forum shopping, including:  (1) the convenience of the plaintiff's

residence in relation to the chosen forum, (2) the availability of witnesses or evidence to the

forum district, (3) the defendant's amenability to suit in the forum district, (4) the availability of

appropriate legal assistance, and (5) other reasons relating to convenience or expense.  *See, e.g.*,

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (citation and

quotations omitted); *see also Nat'l Bank of Anguilla*, 580 B.R. at 71, 85 (staying adversary

proceeding for *forum non conveniens* where "all of the evidence and witnesses for these cases

are located in the Eastern Caribbean or elsewhere, but not in the United States").

56.     These factors strongly suggest that the filing of this adversary proceeding was the

result of forum shopping.  First, CFG Peru is a Singaporean holding company whose subsidiaries

operate exclusively in Latin America.  [Trustee Dec. at 4–5, 50.]  Second, none of the purported

conduct set out in the First Amended Complaint is alleged to have occurred in the United

States—and there is no reason to think any witnesses or evidence would be in the United States.

Third, HSBC-HK has no presence in the United States,[13] and, as set forth in the personal

---

[12] This Court has already suggested that the decision to bring the underlying chapter 11 cases in this forum
was motivated by forum shopping.  [*See* Trustee Dec. at 5 (finding that the Debtors filed here for the "simple"
purpose of "utiliz[ing] the automatic stay").]

[13] This fact was raised by HSBC-HK and not contested in the Rule 2004 proceedings.  [*See* HSBC-HK
Objection to Chapter 11 Trustee Rule 2004 Motion, No. 16-11895, ECF No. 344, ¶¶ 29–36.]

jurisdiction section, *supra*, is not amenable to suit here.[14]  Finally, "appropriate legal assistance" is available to the Trustee in Hong Kong, as evidenced by the Trustee's recent legal proceedings in Hong Kong and his retention of Hong Kong–based counsel.

57.    Because the lawsuit lacks any bona fide connection with the United States and is the product of forum shopping, the Trustee's decision to bring suit here is entitled to no deference.

B.    *Hong Kong Is an Adequate Alternative Forum*

58.    The second step in a *forum non conveniens* analysis is determining whether there is an adequate alternative forum.  *See, e.g.*, *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Luxembourg) II SCA)*, 555 B.R. 323, 345 (Bankr. S.D.N.Y. 2016).  "An alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute."  *In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) (citation omitted).  "The availability of an adequate alternate forum does not depend on the existence of the identical cause of action in the other forum."  *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).

59.    As a company incorporated and headquartered in Hong Kong, HSBC-HK is amenable to service of process there.  *See, e.g.*, *Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*, 801 F. Supp. 2d 211, 219 (S.D.N.Y. 2011) (finding that Hong Kong entity was amenable to service in Hong Kong).  Moreover, "Hong Kong has uniformly been considered an adequate alternative forum for commercial disputes."  *Yung v. Lee*, 2002 WL

---

[14] The Trustee conceded as much when the Trustee served HSBC-HK in Hong Kong in connection with the Rule 2004 Subpoena.  [*See* Request for Service of Foreign Process for Rule 2004 Subpoena, No. 16-11895, ECF No. 713.]

31008970, at *2 (S.D.N.Y. Sept. 5, 2002), *aff'd in relevant part*, 432 F.3d 142 (2d Cir. 2005);

*see also, e.g.*, *S. China Cosmetics (HK) Ltd. v. Steiner Leisure Ltd.*, 2013 WL 25925, at *4

(S.D.N.Y. Jan. 2, 2013) ("[T]he courts in this Circuit have previously held that Hong Kong is an

adequate forum for contract and tort actions.").  This prong of the inquiry is clearly satisfied.

      C.    *The Public and Private Interests Uniformly Favor Litigation in Hong Kong*

      60.    In the third step of the *forum non conveniens* analysis, courts "balance a series of

factors involving the private interests of the parties in maintaining the litigation in the competing

fora and any public interests at stake."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100

(2d Cir. 2000) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).  Both sets of

factors overwhelmingly support dismissal in favor of litigation in Hong Kong.

      i.    The Public Interest Factors Favor Dismissal

      61.    The "public interest factors" are meant to capture each jurisdiction's interests in

the dispute and its resolution.  *Online Payment Sols. Inc. v. Svenska Handelsbanken AB*, 638 F.

Supp. 2d 375, 391 (S.D.N.Y. 2009).  These factors include: (1) the preference for settling local

disputes in a local forum; (2) the difficulty with the application of foreign law; (3) conserving

judicial resources and avoiding burdens on local citizens; and (4) administrative difficulties

related to court congestion.  *See Nat'l Bank of Anguilla*, 580 B.R. at 89–90 (citing *Gilbert*, 330

U.S. at 508–09).

      62.    The local interest in settling local disputes strongly favors dismissal in favor of

adjudication in Hong Kong.  This dispute has the Hong Kong courts at its center.  The First

Amended Complaint is grounded in alleged actions taken in Hong Kong by parties domiciled in

Hong Kong.  Specifically, the Trustee's claims derive from a proceeding for the appointment of

JPLs held before a Hong Kong judge in 2015.  [*See, e.g.*, FAC ¶¶ 2–5, 51–53, 139, 145–48, 175–

77, 181–83, 187, 191–92, 204–05.]  The Trustee asserts that the judge appointed JPLs in reliance

on misrepresentations by HSBC-HK.  [*See, e.g.*, *id.* ¶¶ 5, 53, 62, 65, 101, 136.]  The Trustee

contends that CFG Peru was injured by the appointment of the JPLs and actions taken by the

JPLs [*see, e.g.*, *id.* ¶¶ 139, 147–49], who were officers of the Hong Kong Court subject to that

court's supervision.  [*See infra* ¶ 156.]  Under these circumstances, Hong Kong courts have an

extraordinary interest in this dispute, and a unique capacity to adjudicate it.  *See Nat'l Bank of*

*Anguilla*, 580 B.R. at 102 (finding that Anguillan courts had a strong interest in resolving a

matter that involved Anguillan parties and the conduct of Anguillan banks in Anguilla).  Indeed,

as the Hong Kong Court recently observed: "It would have been the Hong Kong courts which

had to determine how to deal with the Companies [sic] failure to honour the Deed and new

winding-up proceedings."  [Reasons for Decision ¶ 34.]

      63.    By contrast, this dispute has no connection to the United States.  The only ties are

the filing of the chapter 11 cases here—which the Hong Kong Court found to be an "affront"—

and the appointment of the Trustee by this Court.  None of the parties to this lawsuit (other than

the Trustee as CFG Peru's representative) is American, and all relevant events occurred abroad.

[*See, e.g.*, FAC ¶¶ 2–7, 15–17, 19–24, 51–53, 66, 84–85, 90–92, 94–97.]  The stark contrast

between the lack of connection to this forum versus the centrality of Hong Kong to the dispute

weighs heavily in favor of dismissal.  *See Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d

386, 396 (S.D.N.Y. 2010) ("This jurisdiction has no connection to this litigation.  None of the

parties are New York residents or even U.S. citizens.").

      64.    Dismissal for *forum non conveniens* is further supported by the Trustee's

assertion of claims governed by foreign law.  United States "courts have a legitimate interest in

avoiding the difficulty with questions of conflicts of law and the application of foreign law."

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d

377, 387 (S.D.N.Y. 2001), *aff'd sub nom. In re Arbitration Between Monegasque de*

*Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488 (2d Cir. 2002).  The "mere

likelihood of the application of foreign law" supports dismissal for *forum non conveniens*.

*LaSala v. Bank of Cyprus Pub. Co.*, 510 F. Supp. 2d 246, 263 (S.D.N.Y. 2007).

ii.    <u>The Private Interest Factors Favor Dismissal</u>

65.    The "private interest factors" in a *forum non conveniens* analysis are designed to

compare the hardship to the defendant of the court retaining jurisdiction against the hardship to

the plaintiff of bringing suit in another country.  *Iragorri*, 274 F.3d at 74.  The private interest

factors include: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to

trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that

make the trial more expeditious or less expensive.  *Id*. at 73–74 (citing *Gilbert*, 330 U.S. at 508).

These factors demonstrate that litigating this matter in New York would be inconvenient and

wasteful for all parties.  *See S. China Cosmetics*, 2013 WL 25925, at *3 ("New York is

obviously both inconvenient and expensive for Plaintiffs based in Hong Kong.").

66.    "Where alleged misconduct is centered in the foreign forum and the majority of

evidence resides there, dismissal is favored."  *LaSala*, 510 F. Supp. 2d at 258 (collecting cases).

Here, every individual and entity referenced in the First Amended Complaint, save the Trustee

himself, is located outside the United States.[15]  Where, as here, most witnesses are located

abroad, an alternative forum is highly favored.  *Id*. at 259 ("That the overwhelming majority of

---

[15] The First Amended Complaint mentions 22 individuals by name.  According to the allegations, seven were Hong Kong, Cayman, or BVI JPLs; nine were employees or agents of Asia Pacific branches of investment banks; five were employees of entities within the Pacific Andes Group; and one, Judge Kenneth Kwok, is a judge on the Hong Kong High Court.  The First Amended Complaint does not allege that any of these individuals has a connection to the United States.

28

witnesses resides in Cyprus . . . weighs significantly in favor of Cyprus.").[16]  Even assuming all

witnesses would appear voluntarily or could be compelled to testify in the United States, this

factor would still favor dismissal given the unnecessary cost and hassle of transporting these

individuals to New York.  *See id*. at 259–60 ("[T]his private interest factor is about convenience

to the parties; thus the presence of the vast majority of witnesses in one forum weighs in favor of

that forum, even if the witnesses could be transported."); *Europe & Overseas Commodity*

*Traders, S.A. v. Banque Paribas London*, 940 F. Supp. 528, 538 (S.D.N.Y. 1996)

("[T]ransporting witnesses from England to the United States—even if they were within this

Court's subpoena power or would appear voluntarily—would be extremely inconvenient . . . ."),

*aff'd*, 147 F.3d 118 (2d Cir. 1998).

       67.    In the event witnesses in Hong Kong and Peru are unwilling to testify, this Court

likely could not compel their attendance.  *See, e.g.*, *Karlitz v. Regent Int'l Hotels, Ltd.*, 1997 WL

88291, at *3 (S.D.N.Y. Feb. 28, 1997) (noting that compulsory process would not be available to

bring a Hong Kong company into a New York court); *see also Pyrenee, Ltd. v. Wocom*

*Commodities, Ltd*., 984 F. Supp. 1148, 1165 (N.D. Ill. 1997) ("All of [defendant's] Hong Kong

employees are likely beyond our powers of compulsory process . . . ."); *Torres v. S. Peru Copper*

*Corp.*, 965 F. Supp. 899, 906 (S.D. Tex. 1996) (noting that Peruvian witnesses are not subject to

subpoena power), *aff'd*, 113 F.3d 540 (5th Cir. 1997).  The Hague Convention on Taking

Evidence Abroad, which is the Trustee's only option to compel testimony or the production of

---

[16] The First Amended Complaint notes that three foreign witnesses—who reside in either Hong Kong or Peru—previously gave testimony to this Court (albeit nearly three years ago).  Tellingly, the First Amended Complaint does not go further and assure the Court that these individuals will be available to travel to New York again for discovery and trial.  In any event, the fact that a small number of witnesses might one day voluntarily be convinced to reappear in New York does not outweigh the fact that every other potential witness also resides abroad, and it would be costly and inconvenient for them to travel to the United States.  *See LaSala*, 510 F. Supp. 2d at 258–60.

evidence outside this Court's jurisdiction, "is a poor substitute for live trial testimony," and is not

a basis to resist dismissal for *forum non conveniens*. *LaSala*, 510 F. Supp. 2d at 260.

68.     In sum, all of the relevant factors weigh strongly in favor of dismissal on the basis

of *forum non conveniens*, and the matter should be adjudicated in Hong Kong.

## IV.     Principles of International Comity Require Dismissal of This Case

69.     The doctrine of international comity also requires the dismissal of this case in

deference to the courts of Hong Kong, which have a strong interest in adjudicating claims

involving conduct arising out of judicial proceedings in that jurisdiction.

70.     The Supreme Court has defined international comity as "'the recognition which

one nation allows within its territory to the legislative, executive or judicial acts of another

nation, having due regard both to international duty and convenience.'"  *Royal & Sun All. Ins.

Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (quoting *Hilton v.

Guyot*, 159 U.S. 113, 163–64 (1895)).  As the Second Circuit has explained, international comity

is based on the "proper respect for litigation in and the courts of a sovereign nation, fairness to

litigants, and judicial efficiency," *id.* at 94, and is "concerned with maintaining amicable

working relationships between nations, a shorthand for good neighbourliness, common courtesy

and mutual respect between those who labour in adjoining judicial vineyards." *JP Morgan

Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005) (internal

quotation and citation omitted); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) (stating

that "[c]omity in bankruptcy proceedings is 'especially important'" (quoting *Maxwell Commc'n

Corp. plc v. Societe Generale (In re Maxwell Commc'n Corp. plc by Homan)*, 93 F.3d 1036,

1048 (2d Cir. 1996))).

71.     Here, the Trustee has alleged that HSBC-HK made misrepresentations to the

Hong Kong Court in seeking appointment of the HK JPLs.  [*See* FAC ¶ 134 (HSBC-HK had "a

duty to fully and frankly disclose all material facts to the deciding court"); ¶ 135 ("HSBC

breached its duty of candor with the Hong Kong Court and failed to inform the Hong Kong

Court of material facts"); ¶ 136 ("HSBC materially misrepresented (either directly or by

omission) to the Hong Kong Court its full knowledge of the evidentiary record underlying its

allegations, in violation of its obligations to that court").]  The First Amended Complaint

includes causes of action under Hong Kong law, and the other counts likewise arise from HSBC-

HK's application to the Hong Kong Court for the appointment of JPLs and the ensuing judicial

relief.  [*See* FAC ¶¶ 139–41, 147–49, 167–69, 174–77, 182–84, 186–93, 200–06.]  Comity

dictates that the Hong Kong Court is best situated to adjudicate claims related to conduct that

took place before it.  *Cf. Cybernaut Capital Mgmt. Ltd. v. Partners Grp. Access Secondary 2008,*

*L.P.*, 2013 WL 4413754, at *5 (S.D.N.Y. Aug. 7, 2013) ("[W]hen a foreign court rules on a

dispute first . . . on the same issues, involving the same parties—considerations of comity are at

their zenith.").

　　　72.　　　The Hong Kong Court's recent decision denying the Trustee's request to use in

this litigation the decision dismissing the HK JPLs reinforces this conclusion.  In making that

determination, the Hong Kong Court treated the Trustee's application as tantamount to a request

by a "foreign office holder" for assistance in an insolvency proceeding.  [*See* Reasons for

Decision ¶ 28.]  After reviewing the relevant factors, the Hong Kong Court held that it was

"clear that the Trustee could never have satisfied the relevant criteria."  [*Id.* ¶ 29.]  The Court

explained that "there is no relevant connection" between CFG Peru and "any . . . court in the

United States"; that the center of main interests—or "COMI"—"was not in the United States at

the time of filing the Chapter 11 proceedings and it is not suggested that the COMI has shifted to

the United States subsequently"; that the Chapter 11 proceedings "were commenced in order to

31

prevent enforcement by HSBC of the Deed"; and that "[i]t is self-evidently objectionable and an affront to this Court" for CFGL and CFIL to give undertakings in Hong Kong and then "commence proceedings in another jurisdiction with a view to hindering enforcement of the Deed." [*Id*. ¶¶ 30–31.]

73.    These comments from the Hong Kong Court strongly suggest that the Hong Kong Court is the proper forum for the adjudication of the dispute between HSBC-HK and the Trustee, and comity dictates that this Court—which lacks any connection to the dispute—defer to the Hong Kong Court.

## V.    The First Amended Complaint Should Be Dismissed Because It Seeks to Hold HSBC-HK Liable for Petitioning Activity That Is Protected Under the *Noerr-Pennington* Doctrine

74.    The Trustee's claims rest on HSBC-HK's application for appointment of JPLs in Hong Kong, and its subsequent application in the Cayman Islands, which the Trustee argues "was based in large part on, and depended on, the interim findings and rulings of the Hong Kong Court." [FAC ¶ 69; *see also id*. ¶¶ 2, 5, 50–67, 76, 78, 91–104, 113–16, 134–41, 145–49, 158–63, 165–71, 174–77, 181–83, 187, 190–92.] The Trustee alleges that CFG Peru was injured by these applications, as well as by HSBC-HK's subsequent good-faith settlement efforts with other lenders and Group companies, which ultimately resulted in a settlement (the Deed of Undertaking). [*Id*. ¶¶ 7–8, 86–89, 97–98, 101–05, 114–15.] These allegations, which comprise nearly the entire corpus of HSBC-HK's alleged wrongdoing, are barred under *Noerr-Pennington*.

75.    The *Noerr-Pennington* doctrine provides that petitioning a governmental entity, including the commencement of legal proceedings, may not serve as the basis for the petitioner's liability in a subsequent lawsuit. *See T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) (per curiam) (explaining that the doctrine "immunizes from liability a party's commencement of a prior court proceeding"). Although originally created in the context of

antitrust law,[17] *Noerr-Pennington* has been extended to preclude other claims based on

petitioning activity, including tortious interference.  *See Hirschfeld v. Spanakos*, 104 F.3d 16, 19

(2d Cir. 1997) ("The doctrine originated in the antitrust area, but it has been extended to provide

immunity from liability for bringing other suits."); *Bath Petroleum Storage, Inc. v. Mkt. Hub

Partners, L.P.*, 2000 WL 1508873, at *1 (2d Cir. Oct. 11, 2000) (summary order) ("Noerr

Pennington immunity is applicable to RICO actions and to state-law claims such as fraud and

tortious interference.").  It imposes "significant hurdles" to claims based on a defendant's

"efforts to influence governmental action through litigation, lobbying, and the like." *Bath

Petroleum*, 2000 WL 1508873, at *1; *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st

Cir. 2000) (stating that *Noerr-Pennington* applies to "petitions before legislatures, administrative

agencies, and courts").

76.    *Noerr-Pennington* immunity extends to litigation in foreign countries.  As the

Fifth Circuit has explained, there are "no reasons why acts that are legal and protected if done in

the United States should in a United States court become evidence of illegal conduct because

performed abroad." *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1366 (5th Cir. 1983)

("We reject the notion that petitioning immunity extends only so far as the first amendment right

to petition and then ends abruptly.").

77.    Here, the First Amended Complaint is grounded in the alleged impropriety of the

JPL Applications, and the effect HSBC-HK's "pursuit of such an extraordinary remedy" had on

the Group.  [FAC ¶¶ 2–3.]  All of this purportedly arose from the judicial remedies ordered in

Hong Kong and the Cayman Islands.  [*See id.* ¶¶ 134–41, 145–49, 158–63, 165–71, 174–77,

---

[17] *See E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) (recognizing that "the Sherman Act does not prohibit . . . persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly"); *accord United Mine Workers v. Pennington*, 381 U.S. 657, 669 (1965).

181–83, 187, 190–92.]  HSBC-HK's petitioning activity is cited as the root cause of a myriad of

downstream consequences resulting from the JPL appointments, including the Peruvian OpCos'

loss of trade financing facilities, "incurabl[e]" customer concerns about the implications of the

proceedings, and cross-defaults on bonds.  [*Id.* ¶¶ 6, 103.]

      78.     Numerous courts have held that the petitioning of foreign courts for relief such as

this—even where the petition was denied—constitutes protected activity under the *Noerr-*

*Pennington* doctrine.  *See Luxpro Corp. v. Apple Inc.*, 2011 WL 1086027, at *5 (N.D. Cal.

Mar. 24, 2011) (holding that *Noerr-Pennington* "protects parties' efforts to petition foreign

governments"); *Friends of Rockland Shelter Animals, Inc. v. Mullen*, 313 F. Supp. 2d 339, 344

(S.D.N.Y. 2004) (concluding that the majority view is that *Noerr-Pennington* applies to foreign

petitioning); *Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 256 F. Supp. 2d 249, 266

(D.N.J. 2003) (applying *Noerr-Pennington* to defendants' lobbying of Pakistani officials, which

could not serve as the basis for liability); *Coca-Cola Co. v. Omni Pac. Co.*, 1998 U.S. Dist.

LEXIS 23277, at *28–30 (N.D. Cal. Dec. 9, 1998) (rejecting argument that *Noerr-Pennington*

does not apply to petitions to foreign governments).  In *Luxpro Corp. v. Apple Inc.*, Luxpro

brought a number of claims against Apple, alleging that Apple's pursuit of injunctive relief

against Luxpro in Germany and Taiwan, and the resulting injunctions, had harmed its business.

2011 WL 1086027, at *4.  Apple moved to dismiss, arguing that this activity was protected

under *Noerr-Pennington*.  *Id.* at *3.  The district court agreed, dismissing Luxpro's claims that

were based on "Apple's pursuit of the injunctions in Germany and Taiwan."  *Id.* at *4–6.  Here,

as in *Luxpro*, where the plaintiff's allegations are solely predicated on actions undertaken in a

foreign proceeding, the First Amended Complaint should be dismissed.

## VI.   The Trustee Has Failed to Plead Claims With Requisite Specificity

79.   Each count of the Trustee's First Amended Complaint is subject to the heightened pleading standards of Fed. R. Civ. P. 9(b), but none has been pleaded with the requisite specificity.

80.   Rule 9(b) requires a party alleging fraud to state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b); *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also In re AlphaStar Ins. Group Ltd.*, 383 B.R. 231, 257, 276 (Bankr. S.D.N.Y. 2008) (finding that Rule 9(b) applied to equitable subordination claims based on fraudulent conduct).  Rule 9(b) is not limited in scope to only those allegations styled as fraud or expressed in terms of the elements of fraud.  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).  Where "the wording and imputations of the complaint are classically associated with fraud," Rule 9(b) governs non-fraud claims based on averments of fraud.  *Id.* at 172.  Allegations that statements were knowingly false or misleading when made fall within the scope of Rule 9(b) since they are "'classically associated with fraud.'"  *In re Deutsche Bank AG Sec. Litig.*, 2016 WL 4083429, at *20 (S.D.N.Y. July 25, 2016) (quoting, *inter alia*, *Rombach*, 355 F.3d at 171); *see also Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 443 (S.D.N.Y. 2015) ("Courts have found non-fraud claims to sound in fraud where the underlying conduct alleged has been fraud or closely linked with fraudulent behavior, such as claims for which fraud is a necessary element or claims that the other party has attempted to induce action through misrepresentations or material omissions.").

81.   The Trustee claims that HSBC-HK misrepresented to the Hong Kong Court facts relevant to its JPL Application to secure the appointment of the JPLs and, ultimately, repayment of the Club Facility.  [*See, e.g.*, FAC ¶¶ 5, 58–65, 136, 161, 176, 183, 191.]

82.     According to the Trustee, HSBC-HK allegedly misrepresented these facts as part

of a strategy developed to extract concessions, the effects of which HSBC-HK fully understood

and intended.  The Trustee has alleged that, "[u]nderstanding that all parties appreciated the

damage caused by ongoing liquidation proceedings, HSBC weaponized the JPLs' appointment,

its ability to continue the Cayman winding up petition, and its ability to appeal the Hong Kong

JPLs' dismissal, in order to secure repayment of its loan and specifically to extract concessions

in negotiating the HSBC Undertaking in January [by which] HSBC retained control over CFGL

and the entire CF Group by extension as well as the sale process for the Peruvian Business."  [*Id.*

¶ 101.]  In support of this summary allegation, the Trustee alleges that: HSBC-HK developed a

strategy to have KPMG installed as provisional liquidators a year before it filed the HK JPL

Application [*id.* ¶¶ 42, 56]; that KPMG's independence from HSBC-HK was compromised [*id.*

¶¶ 53–56]; that "[t]he Hong Kong JPLs wasted no time in proceeding as HSBC's surrogates to

wrest control . . . from local management" and cause a sale of the Peruvian Business [*id.* ¶ 83];

that given the "unresolved foreign liquidation proceedings, HSBC had put 'a gun to [the] head'

of the Pacific Andes Group," [*id.* ¶ 98 (alteration in original)]; and that "HSBC understood fully

the level of control the undertaking provided . . . ." [*Id.* ¶ 100.]  The Trustee also alleges HSBC-

HK's submission of the JPL Applications, which were supported by the FTI Report, was

motivated by its desire to "tak[e] control of the Peruvian OpCos," [*id.* ¶ 57], even though it

██████████████████████████████████████████████████████████████

████████ [*Id.* ¶ 63.]

83.     The foregoing allegations sound in fraud because they accuse HSBC-HK of

intentionally misrepresenting relevant facts to the Hong Kong Court to secure the appointment of

the JPLs and ultimately force the sale of the Peruvian Business to repay HSBC-HK's loan.  The

fact that the Trustee has not explicitly used the word "fraud" is irrelevant. Non-fraud claims have been found to sound in fraud where a party attempts to induce action through misrepresentations or material omissions. *See Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252 (S.D.N.Y. 2008) (holding that Rule 9(b) applied to a breach of fiduciary duty claim based on false omissions and representations intended to deceive and induce the plaintiffs to act); *see also Deutsche Bank AG Sec. Litig.*, 2016 WL 4083429, at *20; *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 350 (E.D.N.Y. 2014) ("[T]he Second Circuit [has] concluded in no uncertain terms . . . that claims for negligent misrepresentation under New York law 'must be pled in accordance with the specificity criteria of Rule 9(b)[]'" because negligent misrepresentation is a species of fraud (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d. Cir. 2005))).

84.    Moreover, in determining whether a claim sounds in fraud, courts reject plaintiffs' efforts to "characterize claims by the label used in the[ir] pleading[s]" and instead look at whether the "'gravamen of the complaint is plainly fraud[.]'" *Rombach*, 355 F.3d at 172 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996)); *see also In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) (holding that boilerplate disclaimer of fraud was not sufficient to make out a claim for negligence where allegations of misrepresentations and omissions were "classic fraud allegations"). Here, the "gravamen of the complaint" is the alleged misrepresentations in HSBC-HK's application to the Hong Kong Court for appointment of the JPLs. These are classic allegations of fraud and thus fall within Rule 9(b)'s scope.

85.    Similarly, fraud-on-the-court allegations are also subject to Rule 9(b). *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989); *see also Bryant v. Silverman*, 2017 WL 887043,

at *6 (S.D.N.Y. Mar. 6, 2017) (dismissing claim for fraud on the court for failure to satisfy Rule

9(b)); *Zito v. Leasecomm Corp.*, 2003 WL 22251352, at *23 (S.D.N.Y. Sept. 30, 2003)

(same).  Fraud-on-the-court requires that a party derive a benefit from a misrepresentation to the

court which the opposing party cannot discover or correct.  *Grubin v. Rattet (In re Food Mgmt.*

*Grp., LLC)*, 380 B.R. 677, 714–15 (Bankr. S.D.N.Y. 2008) (reciting elements of fraud on the

court).  The foregoing cases illustrate why Rule 9(b) should be applied broadly to allegations

concerning misrepresentations to a foreign court, like those the Trustee has raised here.

86.    In order to satisfy Rule 9(b), a complaint must "'(1) specify the statements the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent.'"  *Rombach*, 355

F.3d at 170 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  "To

succeed on [claims covered by Rule 9(b)], plaintiffs must do more than say that the statements . .

. were false and misleading; they must demonstrate with specificity why and how that is so."

*Rombach*, 355 F.3d at 174.  Even where a plaintiff sufficiently alleges that the defendants

intentionally fostered misrepresentations, they must still explain why those misrepresentations

are false.  *See id.* at 175 (finding claim was not pleaded with sufficient particularity where

plaintiff failed to explain why statements were fraudulent).

87.    The Trustee alleges that HSBC-HK "should have brought [certain identified] facts

to the Hong Kong Court's attention," [FAC ¶ 65], but does not identify what HSBC-HK said

about the topics to which those facts relate, much less explain why HSBC-HK's statements were

fraudulently misleading.  For example, with respect to the FTI Report, the Trustee criticizes

HSBC-HK for not bringing to the Hong Kong Court's attention facts concerning the purpose of

the FTI Report, the information on which the report was based, the entities analyzed in the

report, and the fact that the FTI Report did not pertain to the Peruvian Business, which ███

███████ [*Id.*]  However, HSBC-HK included the FTI Report in its JPL Application, and the

very first page of the report explains the parameters of its analysis, including the facts the

Trustee contends were not sufficiently highlighted for the Hong Kong Court.[18]  The Trustee has

not explained how HSBC-HK fraudulently misrepresented the FTI Report to the Hong Kong

Court when the document itself states on its face the very facts the Trustee claims were not

brought to the court's attention.

88.      Moreover, the First Amended Complaint does not allege that the Hong Kong

Court relied on any of the alleged misrepresentations or omissions in appointing the HK JPLs in

the first instance, or that its subsequent decision to dismiss the HK JPLs was based on any

misrepresentations or omissions by HSBC-HK.  As noted above, in the Reasons for Decision, the

Hong Kong Court denied the Trustee permission to use the earlier decision to make such claims

about HSBC-HK in the instant litigation.  [Reasons for Decision ¶ 36.]

**VII.   Each of The Non-Bankruptcy Causes of Action (Counts One–Six) Should Be**
      **Dismissed**

A.      *The Peruvian Law Claims Must Be Dismissed (Counts One and Two)*

89.      Counts One and Two of the First Amended Complaint seek relief under various

sections of the Peruvian Civil Code.  Even if the facts alleged by the Trustee for these counts are

taken as true, the claims are time-barred and also fail to plausibly allege a violation of Peruvian

law.  These arguments are set forth in greater detail in the declarations of Alfredo Bullard

---

[18] Documents that the Trustee expressly relied upon in his First Amended Complaint, such as the FTI Report, are deemed to be incorporated by reference and available to the Court on a motion to dismiss.  *See, e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit[.]").

González,[19] an expert in Peruvian law (the "**Bullard Declaration**" and "**Bullard Supplemental**

**Declaration**").  The Bullard Supplemental Declaration, which includes the Bullard Declaration

as an addendum, is attached as Exhibit 1 to the Moskowitz Declaration and is accompanied by

Mr. Bullard's CV, which details his decades of experience in Peruvian law.[20]

i.    The Peruvian Law Claims Are Time Barred

90.    First, the Peruvian law claims are barred by the applicable statute of limitations.[21]

As the Bullard Declaration explains, Peru applies a two-year limitation period ("*prescripción*")

to the claims asserted by the Trustee.  [Bullard Decl. ¶¶ 187, 198.]  This period runs from the

time a plaintiff is aware of the conditions that may give rise to a claim.  [*Id.* ¶¶ 187–88.]  Here,

the First Amended Complaint alleges a number of events that could have put the Company on

notice of its claims.  These events are bookended by two dates: November 25, 2015, when the

Hong Kong JPLs were appointed, and June 1, 2016, when the Company allegedly learned the

extent to which the value in the Peruvian business had diminished.  [*Id.* ¶¶ 195–98.]  The Trustee

filed his original complaint on June 29, 2018, more than two years after any plausible date of

---

[19] Federal courts often rely on expert testimony submitted by a party in deciding a motion to dismiss claims under foreign law, regardless of whether that testimony is admissible.  Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, *whether or not submitted by a party or admissible under the Federal Rules of Evidence*.  The court's determination must be treated as a ruling on a question of law." (emphasis added)); *de Fontbrune v. Wofsy*, 838 F.3d 992, 997–98 (9th Cir. 2016) (stating that courts may rely on "[i]ndependent research, plus the testimony of foreign legal experts, together with extracts of foreign legal materials," in determining foreign law "at any time," including the pleading stage); *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 538 F. App'x 19, 21–22 (2d Cir. 2013) (relying on expert opinions regarding Brazilian law submitted by parties in affirming district court's dismissal for failure to state a claim).

[20] Among other accomplishments, Mr. Bullard formerly served as President of the Tribunal for the Defense of the Competition and Intellectual Property at INDECOPI, a national agency in Peru, and has experience as both arbitrator and expert in dozens of matters involving the application of Peruvian law.  He has authored or co-authored numerous articles and books regarding extracontractual liability under Peruvian law.  He holds a Master of Laws (LL.M.) from Yale Law School and graduated first in his law school class at Pontificia Universidad Catolica Del Peru.  [*See* Bullard Decl. at Appendix I.]

[21] "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).

accrual. Regardless of when the Trustee's claims accrued during this period, they had expired by the time he filed this action.

91.    Moreover, the time for the Trustee to bring the Peruvian law claims was not tolled by U.S. bankruptcy law. Section 108(a) of the Code, which extends the time for a trustee to bring claims under "applicable nonbankruptcy law" once a petition is filed, does not affect the time for bringing a claim under foreign law.

92.    "It is a basic premise of our legal system that, in general, 'United States law governs domestically but does not rule the world.'" *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016) (quoting *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007)). Under the "canon of statutory construction known as the presumption against extraterritoriality," courts presume Congress intends federal laws to be "construed to have only domestic application." *Id.* The presumption is grounded in respect for the laws of other sovereign nations, and it "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *EEOC v. Arabian Am. Oil Co.* (*Aramco*), 499 U.S. 244, 248 (1991); *see also McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 22 (1963) (stating that Congress "alone has the facilities necessary to make fairly such an important policy decision" as whether federal law applies extraterritorially) (quoting *Benz v. Compania Naviera Hidalgo*, 353 U.S. 138, 147 (1957)).

93.    The Supreme Court has established a two-step framework for applying the presumption. First, courts "ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 136 S. Ct. at 2101. Second, if the statute itself does not affirmatively indicate extraterritorial effect, courts consider the "focus" of the provision at issue.

41

"If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.* When determining whether a statute applies extraterritorially, a court must read the statute provision by provision, not as a whole. *See id.* at 2103 (analyzing provisions individually to determine the focus of each).

94.     Here, nothing in the text of section 108(a) provides a "clear, affirmative indication" that Congress intended it to apply to foreign law claims or apply extraterritorially. By its plain terms, the statute extends the time for a trustee to commence actions under "applicable nonbankruptcy law" that had not expired before the filing of the petition.  11 U.S.C. § 108(a).[22]  The statute does not define "applicable nonbankruptcy law," nor does it reference foreign law or extraterritorial application.  Notably, other "provisions of the Bankruptcy Code and corresponding jurisdictional sections do contain clear statements that they apply extraterritorially." *Spizz v. Goldfarb Seligman & Co. (In re Ampal-Am. Israel Corp.)*, 562 B.R. 601, 612 (Bankr. S.D.N.Y. 2017); *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010) ("When a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms.").  In addition, the mere breadth of the phrase "applicable nonbankruptcy law" is insufficient to bring foreign law within

---

[22] This provision states, in full: "If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief."  11 U.S.C. § 108(a).  The "order for relief" was entered on June 30, 2016 when CFG Peru and 15 other debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court.  *See* 11 U.S.C. § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.").

its sweep. *Cf. RJR Nabisco*, 136 S. Ct. at 2108 ("The word 'any' ordinarily connotes breadth,

but it is insufficient to displace the presumption against extraterritoriality."); *Small v. United*

*States*, 544 U.S. 385, 394 (2005) (holding that statute with "convicted in any court" element does

not encompass convictions in foreign courts).  Because Congress did not provide a "clear,

affirmative indication" (or any indication at all) that section 108(a) should have extraterritorial

effect, "'it has none.'"  *RJR Nabisco*, 136 S. Ct. at 2100 (quoting *Morrison*, 561 U.S. at 255).[23]

95.    Moreover, an extension of time to bring claims under Peruvian law would

displace the general rule that "a foreign state's tolling rules apply in determining timeliness

under foreign law."  *Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d

374, 390 (S.D.N.Y. 2000) ("[T]he borrowing of either the Iraqi or the Kuwaiti statute [of

limitations] requires the borrowing of the entire relevant foreign statute, fully encumbered with

all of its 'accoutrements,' including tolling rules." (footnote omitted)).  Numerous courts have

cautioned against applying foreign law in ways that depart from the approach taken in the

foreign jurisdiction.  *See, e.g.*, *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 491 (S.D.N.Y.

2006) (stating that courts should be hesitant to apply foreign law "when doing so would

necessarily involve expanding, extending, or departing from well-settled and long established

principles of foreign law"); *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 567 B.R. 55, 127

(Bankr. S.D.N.Y. 2017) (stating in the context of deciding a novel claim under Luxembourg law

that "it is not the role of the Court to extend Luxembourg law where Luxembourg statutes and

---

[23] In addition, the predecessor of section 108 suggests Congress only intended it to toll claims under "Federal or State law."  The previous law stated, in pertinent part, that a "trustee may, within two years subsequent to the date of adjudication or within such further period of time *as the Federal or State law may permit*, institute proceedings in behalf of the estate upon any claim against which the *period of limitation fixed by Federal or State law* had not expired at the time of the filing of the petition in bankruptcy."  Bankruptcy Act (Chandler Act) § 11(e), 52 Stat. 840, 849 (1938) (emphasis added), *as amended* 11 U.S.C. § 108(a) (1978).  Nothing in the legislative history of section 108(a) suggests Congress intended to expand the scope of the previous provision to include foreign law.  *See* H.R. Rep. 95-595 (1977) (noting that section 108 is derived from section 11 of the Bankruptcy Act of 1938).

case law have not done so"); *In re Nortel Networks, Inc.*, 469 B.R. 478, 504 (Bankr. D. Del.
2012) (declining to "usurp the function of the legislative authorities of … foreign sovereign
nations" by recognizing a novel theory of recovery under foreign law). As the Bullard
Declaration explains, a Peruvian court would apply a two-year statute of limitations to the
Peruvian law claims, and no tolling provision would apply on these facts. [*See* Bullard Decl.
¶¶ 144, 187, 198 (statute of limitations is two years); ¶¶ 148, 193, 194 (Trustee would not be
entitled to suspension of the limitations period under Peruvian law).] Tolling or extending the
time for bringing the Peruvian law claims would effectively resuscitate these expired causes of
action, which could not have been brought in a Peruvian court when the Trustee's original
Complaint was filed. Thus, permitting the claims to proceed in this court would cause a clash
between U.S. and Peruvian law that "could result in international discord," which the
presumption against extraterritoriality is designed to avoid. *Aramco*, 499 U.S. at 248.

96.    Because section 108(a) did not extend the time for bringing the Peruvian law
claims, the claims were time-barred when the Trustee filed his original Complaint.

ii.    The Trustee Fails to State a Claim Under Peruvian Law

97.    Even if the claims were timely, they would be subject to early dismissal in a
Peruvian court on a number of additional grounds. As Mr. Bullard explains, (i) the Trustee lacks
standing ("legitimacy to act") to bring either claim as a shareholder of the Peruvian entities,[24] (ii)
HSBC-HK was engaged in the "regular exercise" of its right to petition in seeking the
appointment of provisional liquidators over CFGL and CFIL,[25] (iii) the Trustee does not
adequately allege that HSBC-HK exercised legal or contractual control over the JPLs, such that

---

[24] [Bullard Decl. ¶¶ 204–06; Bullard Supp. Decl. ¶ 4.c.]

[25] [Bullard Decl. ¶¶ 210–19, 223–25; Bullard Supp. Decl. ¶ 4.d.]

HSBC-HK may be held vicariously liable for the JPLs actions,[26] (iv) the Trustee fails to adequately allege in Count Two that HSBC-HK assisted the JPLs in the manner of an accomplice,[27] and (v) as to Count Two specifically, the Trustee fails to plausibly allege that the JPLs engaged in illegal conduct or otherwise abused their position as liquidators. [28]  These arguments are set out in detail in the Bullard declarations with citations to relevant Peruvian authority.  In addition to the statute of limitations, each of these grounds provides a separate and independent basis for dismissal on the pleadings.

B.   *The First Amended Complaint Fails to State a Claim Under Hong Kong Common Law (Count Three)*

98.   The third count of the First Amended Complaint asserts a claim for "Breach of Duty Causing Loss Under Hong Kong Common Law."  [FAC at 47.]  The First Amended Complaint does not recite the elements for this purported cause of action.  Instead, the balance of the count alleges that HSBC-HK breached two other duties: first, the duty that "a lender exercising its power of sale over security owes the borrower . . . to obtain the true market value of the asset," and second, the duty to "fully and frankly disclose all material facts" when HSBC-HK filed the HK JPL Application.  [*Id.* ¶¶ 151–61.]  Essentially, the Trustee is attempting to use these alleged breaches not as stand-alone claims, but to support the assertion of the "breach of duty causing loss."  This attempt fails for several reasons, which are set forth in greater detail in the declaration of Anthony Rogers, an expert in Hong Kong law and former justice of the Hong Kong Court of Appeal (the "**Rogers Declaration**").  The Rogers Declaration is attached as

---

[26] [Bullard Decl. ¶¶ 226–35; Bullard Supp. Decl. ¶¶ 4.e, 11.]

[27] [Bullard Decl. ¶¶ 244–51; Bullard Supp. Decl. ¶ 4.f.]

[28] [Bullard Decl. ¶¶ 253–54; Bullard Supp. Decl. ¶¶ 4.g, 10.]

Exhibit 2 to the Moskowitz Declaration and is accompanied by Mr. Rogers' CV, which details

his 43 years of experience in Hong Kong law.[29]

99.    First, Hong Kong law does not recognize a generic claim for "breach of duty

causing loss." [Rogers Decl. ¶ 1.] Hong Kong law requires a specific cause of action to be

pleaded, such as in a particular tort or by reference to a particular contract. [*Id.* ¶¶ 1–3.]

Moreover, the Trustee's attempt to support this nebulous claim by alleging a breach of two

unrelated duties would be dismissed if the claim were brought in this manner in a Hong Kong

court. [*Id.* ¶ 4.]

100.    Second, the Trustee misstates the duty of full and frank disclosure to the Hong

Kong Court. As a matter of Hong Kong law, an *ex parte* applicant's failure to make full and

frank disclosure is not a basis for tort or other civil liability and does not give rise to any private

right of action.[30] [Rogers Decl. ¶ 20, 22–25, 37.] Rather, the obligation is a duty of the applicant

that is owed to the court in Hong Kong, and not to the defendant or any other private party. [*Id.*

¶ 20.] The duty is intended to protect *the court* from issuing or maintaining an order for which it

did not have knowledge of all facts that might have influenced its decision. Accordingly, where

a violation is found, the remedy is that the order will be set aside. [*Id.* ¶ 18.]

101.    Importantly, only the court to which the disclosure was given is authorized to

adjudicate a violation of the duty of full and frank disclosure, and even that court does not have

---

[29] Among other accomplishments, Mr. Rogers was appointed as Queen's Counsel, served as Chairman of the Standing Committee on Company Law for over a decade, during which time he oversaw a full review of Hong Kong company law, served as a judge on the Hong Kong High Court and Hong Kong Court of Appeal, and served as Vice-President of the Court of Appeal. He presently serves as the Chairman of the Clearing and Settlement Systems Appeals Tribunal of Hong Kong. He has experience as an arbitrator, mediator, and expert in numerous matters involving the application of Hong Kong law. [*See* Rogers Decl. at Appendix I.]

[30] Additionally, the First Amended Complaint alleges that these duties are "ongoing in nature, and apply even after the appointment of liquidators." [FAC ¶ 153.] However, this "allegation is without foundation in law or practice" in Hong Kong. [*Id.* ¶ 21.]

*per se* authority to award damages. [Rogers Decl. ¶¶ 29–31.] Damages may only be awarded by

that court when, in connection with the *ex parte* order, the applicant made a specific undertaking

to the court to pay damages in the event the order is subsequently found to have been wrongly

granted. [*Id.* ¶¶ 25–27, 37.] Undertakings for damages are commonly given, but they are not

universal and are generally subject to the court's discretion. [*Id.* ¶¶ 26–31.] Accordingly, a

failure to give full and frank disclosure does not give rise to any private right of action. [*Id.* ¶ 20,

31–34, 37.] Instead, if and only if an undertaking was given to the court, that court has

discretion to order compensatory relief pursuant to the undertaking. [*Id.* ¶ 31.]

102.    Notably, in this case, HSBC-HK gave no such undertaking in respect of the

appointment of JPLs over CFGL and CFIL. [*Id.* ¶ 29.] However, even if HSBC-HK had given

an undertaking to the Hong Kong Court in connection with the *ex parte* order granting the HK

JPL Application, that undertaking would be enforceable only in the discretion of the Hong Kong

Court. [*Id.* ¶¶ 31, 37].] Moreover, an undertaking to pay damages would inure only to the

benefit of the companies subject to the *ex parte* order (*i.e.*, CFGL and CFIL), and there is no

precedent under Hong Kong law for an undertaking to be given or enforced for the benefit of an

affiliated party such as CFG Peru. [*Id.* ¶¶ 35–36.]

103.    Finally, there is no basis to impose tort liability for breach of the duty owed by "a

lender exercising its power of sale over security." [FAC ¶¶ 151–52.] The duty to obtain market

value for the sale of an asset applies only to a secured lender exercising its power of sale "over

security," such as foreclosing on mortgaged assets. [Rogers Decl. ¶¶ 5, 8–9.] The Club Facility

is an unsecured facility, and neither the appointment of the JPLs nor the Deed of Undertaking

created any security interest in favor of HSBC-HK over the Debtors, the Peruvian OpCos, or

their assets. [*Id.* ¶ 6.] In addition, as the First Amended Complaint itself concedes, this duty is

owed only to "the borrower." [FAC ¶¶ 151–52.] Here, CFG Peru is not a borrower (or even a guarantor) under the Club Facility, so it cannot sue HSBC-HK for breach of this duty. [Rogers Decl. ¶¶ 6–7.]

104.    Thus, there is no basis for HSBC-HK to be liable to the Trustee under Hong Kong law based on a creditor's duties to its borrower or to the Hong Kong Court. [*Id.* ¶¶ 15, 37.]

C.    *The Trustee's Unlawful/Tortious Interference Claims Should Be Dismissed (Counts Four, Five and Six)*

105.    The Trustee asserts three claims for unlawful/tortious interference:  unlawful interference with business, under Hong Kong law (Count Four); tortious interference with business relationships, under "U.S. Law" (Count Five); and tortious interference with prospective economic advantage, also under "U.S. Law." (Count Six).

106.    Each claim relies on the same allegedly wrongful conduct in connection with HSBC-HK's *ex parte* application to the Hong Kong Court to appoint JPLs:

> HSBC breached its duty of candor with the Hong Kong Court and failed to inform the Hong Kong Court of material facts . . . that it knew or should have known. . . . HSBC . . . misrepresented (either directly or by omission) to the Hong Kong Court its full knowledge of the evidentiary record underlying its allegations, in violation of its obligations to that court.

[FAC ¶ 191 (Count Six); *accord id.* ¶¶ 176 (Count Four), 183 (Count Five).]  The Trustee alleges that this conduct interfered with CFG Peru affiliates' relationships with financing entities (Counts Four and Five) and with prospective purchasers of the Peruvian Business (Counts Four and Six).  [*See* FAC ¶¶ 177, 182, 190, 192.]

107.    By using the same allegations to attempt to plead claims under both Hong Kong law and "U.S. Law," the Trustee appears to be seeking two bites at the apple.  But *only one* jurisdiction's law governs the issue of whether HSBC-HK's alleged conduct before the Hong Kong Court wrongfully interfered with any of CFG Peru's business relationships.  *Stewart v.*

*World Wrestling Fed'n Entm't, Inc.*, 2005 WL 66890, at *1 (S.D.N.Y. Jan. 11, 2005) (a court

choosing between the laws of more than one jurisdiction "may apply only one of the laws");

*Valley Nat. Bank v. Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 456 (S.D.N.Y. 2003) (choice of

law is "definitive and exclusive," so "only one body of substantive rules" can govern a disputed

issue); *see generally Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963) (using interest analysis to

choose the law applicable to tort claims "gives to the place having the most interest in the

problem *paramount control* over the legal issues arising out of a particular factual context"

(emphasis added) (quotation omitted)).

108.    As shown below, the applicable choice of law analysis unequivocally points to

Hong Kong as the jurisdiction whose laws govern the Trustee's allegations of wrongful

interference—to the exclusion of any "U.S. Laws."  This conclusion is not surprising because the

transactions and occurrences underlying the Trustee's claims have no tie at all to the United

States.  Further, the Trustee's allegations fail to state a claim under Hong Kong law.  For these

reasons, among others, Counts Four–Six should be dismissed.

      i.      Under the Governing Choice of Law Principles, Hong Kong Law Applies
            to the Allegations Underlying Counts Four, Five and Six

109.    A bankruptcy court generally "must apply the choice of law rules of the forum

state."  *Geron v. Seyfarth Shaw, LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013)

(quotation omitted); *see also LaMonica v. CEVA Group PLC (In re CIL Ltd.)*, 582 B.R. 46, 119

(Bankr. S.D.N.Y. 2018) ("In adjudicating state law claims, federal courts apply the choice-of-law

rules of the state in which [they sit]."), *amended on reconsideration*, 2018 WL 3031094 (Bankr.

S.D.N.Y. June 15, 2018).[31]

---

[31] The only exception—which is inapplicable here—is that a federal conflicts rule will be applied if a significant federal policy calls for its imposition.  *See Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros.* (….continued)

110.     Under New York choice of law rules for torts, courts undertake an "interest analysis," which gives "controlling effect" to the law of the jurisdiction which "has the greatest concern with the specific issue raised in the litigation." *Fin. One Pub. Co. v. Lehman Bros. Special Fin. Inc.*, 414 F.3d 325, 337 (2d Cir. 2005) (quotation omitted). Interest analysis divides rules applicable to torts into two types: "those involving the appropriate standards of conduct" and "those that relate to allocating losses that result from admittedly tortious conduct." *CIL Ltd.*, 582 B.R. at 121 (citations and quotations omitted).

111.     "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.* (citations and quotations omitted). As the New York Court of Appeals has explained, "it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place." *Edwards v. Erie Coach Lines Co.*, 17 N.Y.3d 306, 319 (2011) (quoting *Babcock*, 12 N.Y.2d at 483).

112.     Tortious interference claims are "conduct-regulating." *See, e.g.*, *First Hill Partners, LLC v. BlueCrest Capital Mgmt. Ltd.*, 52 F. Supp. 3d 625, 636 (S.D.N.Y. 2014). For the same reasons, the Trustee's unlawful interference claim (Count Four), which relies on the same allegations as his tortious interference claims (Counts Five and Six), is "conduct regulating." Therefore, they are governed by the law of the place of the tort. *Edwards*, 17 N.Y.3d at 319.

---

(continued....)

*LLP*), 673 F.3d 180, 188 (2d Cir. 2012) ("[F]ederal choice of law rules must be regarded as a species of federal common law. And because federal common law should be applied only where there is a significant conflict between some federal policy or interest and the use of state law, [state choice of law rules apply] unless there [is] an important federal interest or policy concern that would justify application of federal choice of law rules in place of state choice of law[.]") (quotations, citations omitted).

113.    There can be no dispute that HSBC's allegedly unlawful or tortious conduct under

Counts Four–Six took place in Hong Kong.  [FAC ¶¶ 176, 183, 191.]  Therefore, Hong Kong

law, and not "U.S. Law," governs the issue of whether or not allegedly wrongful conduct by

HSBC-HK before the Hong Kong Court unlawfully or tortiously interfered with CFG Peru

affiliates' relationship with lenders, inventory financiers and prospective purchasers.

        ii.     Because Count Four Is Not Cognizable Under Hong Kong Law, It Should
               Be Dismissed

114.    The fourth count of the First Amended Complaint asserts a claim for "Unlawful

Interference with Business Under Hong Kong Law."  [FAC ¶¶ 172–77.]  The gravamen of this

claim is the Trustee's allegations that HSBC-HK "used unlawful means to have the JPLs

appointed" because HSBC-HK allegedly failed to discharge its duty of full and frank disclosure

on the *ex parte* application.  [*Id.* ¶ 174.]  The Trustee claims that HSBC-HK engaged in unlawful

interference that was "intended to cause loss."  [*Id.* ¶¶ 176–77.]

115.    This claim fails as a matter of Hong Kong law.  Under Hong Kong law, the

elements of unlawful interference with business (also known as the "tort of causing loss by

unlawful means") include both independently actionable conduct and an intention to cause loss

to the claimant.  [Rogers Decl. ¶¶ 40–43.]

116.    First, the Trustee's claims that HSBC-HK "intended to cause loss" are insufficient

as a matter of law.  As Rogers explains, actual intent to cause loss is an essential element of the

tort of interference.  [*Id.* ¶ 43.]  If the defendant intended merely to further its own interests, even

if a "loss to the claimant was . . . a known or foreseeable result," so long as the action was "not

the means by which the defendant derived benefit," a claim of unlawful interference with

business cannot be sustained as a matter of Hong Kong law.  [*Id.* Summary ¶ 13; *see also id.*

¶¶ 43–48.]  Even viewing the Trustee's allegations in the light most favorable to him, his claim

fails to meet this standard.  The Trustee alleges that "HSBC knew its actions would depress the
values that could be obtained for the Peruvian Business through a deliberate sale process" and
that the action would ██████████████████████████████████████████████████

████████ [FAC ¶ 115.]  However, the Trustee never alleges that the interruption of the
deliberate sale process was the means by which HSBC-HK derived benefit.  The Trustee does
not because he cannot: The alleged interrupted sales process was, at most, a byproduct of HSBC-
HK's efforts to protect its own interests.  Even if it were a "known or foreseeable result" of
HSBC-HK's decision to initiate liquidation proceedings, that would not be sufficient to give rise
to liability under Hong Kong law.  Indeed, support for this position can be found in the Trustee's
own language describing the allegations.  Though paragraph 177 of the First Amended
Complaint begins with a conclusory statement about HSBC-HK's intent, the remainder of the
paragraph militates against that conclusion.  The Trustee alleges that HSBC-HK, "[h]aving
obtained repayment on its bilateral facilities . . . no longer had an interest in a value-maximizing
sale process . . . [and instead] was content to have the JPLs consummate an expedited liquidation
of the Peruvian Business even though that liquidation would yield . . . less than [what] would be
realized [through an alternate sales process]."  [*Id.* ¶ 177.]  Thus, according to the Trustee, rather
than setting out to cause injury as a means to effectuate its recovery, HSBC-HK protected its
own interests and then exhibited less concern regarding subsequent events regarding the status of
the debtors.

117.    Second, even assuming, *arguendo*, that HSBC-HK did intend to cause loss, the
Trustee has failed to state a claim under the Hong Kong law tort of unlawful interference with
business because the Trustee has alleged no unlawful conduct on the part of HSBC-HK as
against the Plaintiff.  The Trustee alleges that HSBC-HK "breached its duty of candor with the

Hong Kong Court" and made various other misrepresentations to the Court, which caused the court to appoint the JPLs. [FAC ¶ 176.] However, as Rogers notes, these allegations are insufficient under Hong Kong law. A decision of the House of Lords of the United Kingdom, which is persuasive authority in Hong Kong, "has held that to constitute unlawful means for the purposes of [the tort of unlawful interference with business] the conduct must be independently actionable." [Rogers Decl. Summary ¶ 12; *see also id.* ¶¶ 41–42.] Here, HSBC-HK is alleged to have breached duties it owed to the Hong Kong Court. However, even if HSBC-HK did breach this duty, "[t]he failure to make full and frank disclosure is regarded as a failure of duty and obligation to the Court, not to the party that is the subject of the [Court's] order or any other party." [*Id.* ¶ 20.] Thus, "no cause of action can be found on a failure to meet the obligation of full and frank disclosure to the Court. [*Id.*] Because the conduct alleged by the Trustee is not actionable under Hong Kong law, the Trustee has failed to meet this second essential element of the Hong Kong law tort of unlawful interference with business.

118.    As the Trustee has not alleged that HSBC-HK intended to cause loss, and indeed has alleged no independently actionable conduct on the part of HSBC-HK, the First Amended Complaint fails to meet the standard set forth under Hong Kong law to maintain a claim of unlawful interference with business.

        iii.    Counts Five and Six Should Be Dismissed for Several Independent <u>Reasons</u>

119.    As pleaded by the Trustee, his claims for tortious interference with business relationships (Count Five) and tortious interference with prospective economic advantage (Count Six) purportedly arise under "U.S. Law." As shown above, however, Hong Kong law has "controlling effect" over the issue of whether or not HSBC-HK, through conduct before the Hong Kong Court, wrongfully interfered with CFG Peru's relationships with sources of

financing and prospective purchasers.  [*See supra* ¶¶ 107–13.]  Because the tortious interference

claims that the Trustee asserts under "U.S. Law" (Counts Five and Six) present an issue

controlled by Hong Kong law, those "U.S. Law" claims are not cognizable, and should be

dismissed.  *See Valley Nat. Bank*, 254 F. Supp. 2d at 455–56 ("[W]hich law applies is a question

that has only one answer . . . . What that choice of law is may be subject to debate, but in the end,

the choice is definitive and exclusive."); *id.* at 456 ("[O]nly one body of substantive rules can

actually serve as the applicable law to govern final adjudication of the merits of a dispute."); *see,

e.g.*, *CIL Ltd.*, 582 B.R. at 122 (granting motion to dismiss New York law claim where "Dutch

law applie[d]" to that claim).

120.    There are several other independent reasons that the Trustee's "U.S. Law"

tortious interference claims should be dismissed.  First, there is no freestanding federal common

law claim for tortious interference.  *See Baylis v. Marriott Corp.*, 843 F.2d 658, 664 (2d Cir.

1988); *see generally Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal

general common law.").  Therefore, the Trustee's tortious interference claims are not cognizable

under "U.S. Law."

121.    Second, it is improper for the Trustee to employ "U.S. Law" as a non-committal

reference to unspecified state law, thereby leaving HSBC-HK (and the Court) to guess as to

which state law he purports to invoke.  That failure alone is a basis for dismissal.  *See, e.g.*,

*Hines v. Overstock.com, Inc.*, 2013 WL 4495667, at *12 (E.D.N.Y. Aug. 19, 2013) ("[T]he

failure to cite to the law of a particular state in alleging common law claims deems them so

vague that defendant cannot reasonably prepare a response."); *In re Wellbutrin XL Antitrust

Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) ("The plaintiffs fail to link their [unjust enrichment]

claim to the law of any particular state.  As a result . . . the plaintiffs fail to state a cause of

action."); *see also Cole v. NIBCO, Inc.*, 2015 WL 2414740, at \*5 n.2 (D.N.J. May 20, 2015)

("[T]he [plaintiffs'] failure to specify which state's laws apply to their common law claims may

not meet the Rule 8 pleading standard.").

122.    Third, it would violate the Due Process Clause of the Fifth Amendment for this

Court to apply any U.S. state's laws to the Trustee's claims.  HSBC-HK's alleged conduct before

the Hong Kong Court has no connection whatsoever to any U.S. state.  Where "a State has only

an insignificant contact with the parties and the occurrence or transaction, application of its law

[would be] unconstitutional." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310–11 (1981); *see also*

*Fin. One Pub. Co.*, 414 F.3d at 337–39 (finding "contacts with New York are virtually

nonexistent," notwithstanding that New York was one party's principal place of business, and

applying Thai law).  *A fortiori*, the Constitution prohibits application of the law of a state with *no*

connection to the parties and the occurrence or transaction.  *See, e.g.*, *Cooney v. Osgood Mach.,*

*Inc.*, 81 N.Y.2d 66, 70–71 (1993) ("A State may lack sufficient nexus with a case so that choice

of its law is arbitrary or fundamentally unfair." (citations omitted)).

123.    For all these reasons, Counts Five and Six should be dismissed.

iv.    In Any Event, the Trustee's Allegations Fail to State a Claim for Tortious
Interference Under New York Law

124.    Even if New York law governed the Trustee's tortious interference claims, which

it does not, the Trustee has failed to state a claim.

125.    Under New York law, tortious interference with business relationships and

tortious interference with prospective economic advantage are merely two different names for

the same cause of action.  *See, e.g.*, *Catskill Dev., LLC v. Park Place Entm't Corp.*, 547 F.3d

115, 132 (2d Cir. 2008) (describing "tortious interference with prospective economic advantage"

as an "alternative name" for "tortious interference with business relations"); *RFP LLC v.*

*SCVNGR, Inc.*, 788 F. Supp. 2d 191, 195 n.2 (S.D.N.Y. 2011) ("Tortious interference with business relationship is sometimes called 'tortious interference with prospective economic advantage'; no matter the term used, the elements are the same." (citation omitted)).

126.    The elements of that cause of action are:  (1) the plaintiff "had a business relationship with a third party"; (2) "the defendant knew of that relationship and intentionally interfered with it"; (3) "the defendant acted solely out of malice, or used dishonest, unfair, or improper means"; and (4) "the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (citation omitted); *see Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 47 (1st Dep't 2009).

127.    The Trustee's claims for tortious interference are deficient under New York law in at least three independent respects.  First, the indispensable prerequisite for any tortious interference claim is an existing or prospective business relationship or contract between the plaintiff and a third party.  *See Kirch*, 449 F.3d at 400.  The Trustee fails to plead that CFG Peru, as opposed to its affiliates, had any existing or prospective "business relationship" with any third party.  Instead, the First Amended Complaint relies on "the Peruvian OpCos' relationship with their lenders" [FAC ¶ 181], and the relationship between "the Pacific Andes Group" and "two investors interested in acquiring the CF Group."  [*Id.* ¶ 190.]  A relationship between *an affiliate* of the plaintiff fails, as a matter of law, to satisfy the "relationship" element of a claim for tortious interference with business relationship.  *See, e.g.*, *Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC*, 2010 WL 4739938, at *10 (S.D.N.Y. Nov. 5, 2010) (holding that corporate parent "lack[ed] standing . . .  to assert its claims for tortious interference with contract and tortious interference with business relationships").

128.    The Trustee attempts to sidestep this fatal defect by arguing that CFG Peru

suffered "actual losses" attributable to HSBC-HK's alleged interference with the OpCos' lending

relationships with its Peruvian lenders and with the Group's negotiations with potential

purchasers.  [FAC ¶¶ 184, 188, 193.]  But no entity can be liable to CFG Peru for tortious

interference with a particular business relationship unless CFG Peru itself was a party to that

relationship.  Nowhere does the Trustee plead that CFG Peru was actually a party to, or an

intended third-party beneficiary of, the OpCos' lending relationship with Peruvian banks (Count

Five) or the Group's sale process (Count Six).  Therefore, the Trustee has failed to state a claim

for tortious interference.  *See, e.g.*, *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d

705, 727 (S.D.N.Y. 2014) ("Courts in the Circuit have consistently denied tortious interference

with contract claims where the plaintiff was neither a party to, nor an intended third-party

beneficiary of, the contract in question.") (collecting cases); *see also Tradition Chile Agentes de

Valores*, 2010 WL 4739938, at *10 ("[A] benefit received through corporate ownership is

insufficient to establish rights as a third-party beneficiary." (citation omitted)).

129.    Second, the Trustee has failed to plead facts showing that HSBC-HK's allegedly

wrongful conduct—*i.e.*, the application for the appointment of JPLs over CFGL and CFIL—was

directed at the Peruvian lenders (Count Five) or potential purchasers (Count Six).  It is black

letter law that "conduct constituting tortious interference with business relations is, by definition,

conduct directed . . . at the party with which the plaintiff has or seeks to have a relationship."

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004) (citing *G.K.A. Beverage Corp. v. Honickman*,

55 F.3d 762, 768 (2d Cir. 1995)); *see also Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.

Supp. 477, 482 (S.D.N.Y. 1997) ("[T]he defendant must direct some activities towards the third

party and convince the third party not to enter into a business relationship with the plaintiff."

(citing *G.K.A. Beverage*, 55 F.3d at 768)).  In the context of an allegedly interfering civil lawsuit, the lawsuit must be directed at the third party, and not the plaintiff.  *See, e.g.*, *Arnon Ltd. v. Beierwaltes*, 125 A.D.3d 453, 454 (1st Dep't 2015) (dismissing counterclaim for tortious interference because "the interfering lawsuit was not directed at the [counterclaimants'] customers so as to induce or cause them to terminate business relations with [counterclaimants]").  Here, HSBC-HK's application for appointment of JPLs was directed at CFGL and CFIL, and not at the Peruvian lenders or potential purchasers.

130.    Third, the Trustee has failed to plead facts showing that HSBC-HK "acted solely out of malice, or used dishonest, unfair, or improper means."  *Kirch*, 449 F.3d at 400; *see also Arnon Ltd.*, 125 A.D.3d at 453 (claim for tortious interference with prospective economic relations "requires a showing that the interference was accomplished by wrongful means or with malicious intent.") (citation omitted).  The Trustee does not assert that HSBC-HK acted "solely out of malice."  Nor could he, consistent with his acknowledgement that HSBC-HK viewed the application to the Hong Kong Court as a means to "maximise [HSBC-HK's] recovery" on its exposure to the Pacific Andes Group.  [FAC ¶ 50.]

131.    Instead, the Trustee asserts that HSBC-HK's *ex parte* application for the appointment of JPLs was "improper" and "unfair."  [*Id.* ¶¶ 183, 191.]  Under New York law, however, initiating legal action may support tortious interference claims only if the action is frivolous.  *See, e.g.*, *Arnon Ltd.*, 125 A.D.3d at 453–54 ("Where the interfering conduct is a civil suit, it must be shown that the suit was frivolous.") (quotation omitted); *10 Ellicott Square Court Corp. v. Violet Realty, Inc.*, 81 A.D.3d 1366, 1367 (4th Dep't 2011) ("[C]ivil suits and threats

thereof constitute 'improper means' only if such tactics are frivolous." (quotation omitted)).  The

Trustee has not alleged, and cannot, that the JPL applications were frivolous.[32]

132.    Finally, with respect to Count Six, the Trustee has failed to plead that "but for"

HSBC-HK's application to appoint the JPLs, the CF Group would have been sold to the two

allegedly interested investors.  *See Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265, 266 (1st

Dep't 2002) ("Tortious interference with prospective economic relations requires an allegation

that plaintiff would have entered into an economic relationship but for the defendant's wrongful

conduct." (citations omitted)).  Instead, the Trustee merely alleges that "[a] memorandum of

understanding"—and not a binding contract—"was *expected* to be signed" the day after HSBC-

HK filed the JPL Application in Hong Kong.  [FAC ¶ 190 (emphasis added).]  Further, as the

Trustee's own allegations demonstrate, a memorandum of understanding was in fact signed by

the same interested purchasers after the JPLs were appointed, and those investors nevertheless

declined to ultimately purchase the Peruvian business.  [FAC ¶ 113 ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████.]  Thus, the Trustee

fails to state a claim under New York law.  *See Vigoda*, 293 A.D.2d at 267 ("As plaintiffs cannot

name the parties to any specific contract they would have obtained . . . they have failed to satisfy

the 'but for' causation required by this tort.").[33]

---

[32] Valid bases existed for HSBC-HK to file the JPL Application.  [*See* Reasons for Decision ¶ 17 ("I would . . . note that the Companies did not dispute before the DHCJ that the first of the two criteria, which a petitioner has to satisfy before the Companies Court will appoint provisional liquidators, namely, that the evidence demonstrated a prima facie case for granting of a winding-up order[,] had been satisfied.").]

[33] The Trustee's allegation that HSBC-HK's JPL Application "caused" harm to any likely sale is particularly suspect in light of the Trustee's continued inability to sell the CF Group over the past two years, and in spite of a highly successful 2018 fishing season.

**VIII.    The Court Should Dismiss the Trustee's Claims for Equitable Subordination and Equitable Disallowance (Count Seven)**

  A.    *The Trustee Lacks Standing to Bring Equitable Subordination Claims Against HSBC-HK*

133.    There is no general right of creditors to assert an equitable subordination claim under Section 510(c) of the Bankruptcy Code.  Instead, "the remedy of equitable subordination . . . with limited exception, can only be brought by the debtor." *Lyme Regis Partners LLC v. Icahn (In re Blockbuster Inc.)*, 2011 WL 1042767, at *2 (Bankr. S.D.N.Y. Mar. 17, 2011) (citing *Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax, L.P. (In re AppliedTheory Corp.)*, 493 F.3d 82, 86 (2d Cir. 2007)).  In the Second Circuit, a creditor may bring an equitable subordination claim only where (i) the creditor can "allege a particularized injury resulting from the defendant's inequitable conduct," *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 159 (Bankr. S.D.N.Y. 2014) (citing *Blockbuster*, 2011 WL 1042767, at *2) or (ii) where, prior to bringing suit, the creditor "obtain[s] derivative standing from the bankruptcy court." *Blockbuster*, 2011 WL 1042767, at *1.  The Trustee fails to satisfy any of these threshold requirements.

  i.    The Trustee Brings Count Seven on Behalf of CFG Peru in Its Capacity as a Creditor

134.    In his First Amended Complaint, the Trustee seeks to equitably subordinate "any claim or interest of HSBC asserted against the Debtors' estates, including those asserted in the HSBC Proofs of Claim."  [FAC ¶ 207.]  The Trustee is an estate fiduciary only for CFG Peru—a Debtor against which HSBC-HK has not filed any proofs of claim or had claims scheduled in its name—and the terms of his appointment do not extend to other Debtors.[34]

---

[34] [*See* Trustee Dec. at 48 ("[T]he Court directs that a trustee be appointed for Debtor CFG Peru Singapore and, at this time, for no other Debtor."); Declaration of William A. Brandt, Jr. in Support of Notice of Sale of Non-Debtor Real Estate in Accordance with Non-Debtor Asset Sale Order, No. 16-11895, ECF No. 1286, Ex. A ¶ 10 ("I (….continued)

135.    Indeed, the First Amended Complaint acknowledges that the Trustee is asserting

his claim for equitable subordination against HSBC-HK as a "creditor and party in interest in the

chapter 11 cases of CFGL, CFIL and Smart Group," the Debtors against which HSBC-HK has

filed proofs of claim.[35]  [FAC ¶ 196.]  Because he is pursuing equitable subordination on behalf

of CFG Peru as a creditor, the Trustee must allege a particularized injury to CFG Peru in that

capacity or obtain derivative standing in order to sustain his claim.  He has done neither.

ii.    The Trustee Cannot Demonstrate That CFG Peru Has Suffered a
       Particularized Injury

136.    "[A] particularized injury is an 'injury significantly different from the injuries to

creditors in general.'"  *Blockbuster*, 2011 WL 1042767, at *2 (quoting *Sec. Inv'r Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC (In re Madoff)*, 429 B.R. 423, 431 (Bankr. S.D.N.Y. 2010).

"[W]here the creditors' injury, while having some personal elements, overlaps with the injury

suffered by other creditors . . . the question to be answered is whether the injury to the creditor is

'significantly different' from the injuries to other creditors in general."  *Madoff*, 429 B.R. at 431

(quoting *In re Sage Enter., Inc.*, 2006 WL 1722582, at *15 (Bankr. N.D. Ill. Apr. 28, 2006)).

The alleged harm cannot be "general and common to the corporation and creditors."  *Ritchie*

*Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 335 (S.D.N.Y. 2015)

(citation and quotation omitted).  Instead, the creditor plaintiff must demonstrate that the

---

(continued….)
have taken the Court's decision to appoint me only at CFG Peru Singapore and to keep the Ng family in place as
management at the Other Debtors to heart . . . .").]

[35] Whether CFG Peru is a bona fide creditor of the aforementioned Debtors remains an unresolved issue.
The proofs of claim that CFG Peru has filed against the foregoing debtors relate to contingent contribution and
reimbursement claims related to the CFGI Notes that are unliquidated and may ultimately be for no amount at all.
Moreover, subsequent to the filing of the original complaint, the Trustee withdrew his proof of claim against
N.S. Hong and therefore has no standing even as a creditor to pursue equitable subordination of claims at that estate.
[*See* Stipulation by and Between Certain Debtors and Chapter 11 Trustee Withdrawing Proofs of Claim Nos. 145,
171, 350, 371, 1517, 1527, 1528, 1771, and 1773 and Withdrawing PAIH Debtors' Objection to Such Claims, No.
16-11895, ECF No. 1327, Ex. A.]

defendant creditor "caused a separate harm, particularly to them," *id.* at 336, and that their

resulting claims are "of no interest to the other[]" creditors. *Tronox Inc. v. Kerr-McGee Corp.*

*(In re Tronox Inc.)*, 855 F.3d 84, 100 (2d Cir. 2017).

137.    In determining whether an injury is "particularized," courts look to whether

"[a]ny unsecured creditor could assert identical allegations to those in the [plaintiff's]

[c]omplaint." *Blockbuster*, 2011 WL 1042767, at *2 (denying an individual creditor's standing

to pursue equitable subordination, as the court "could not identify a single instance alleging an

injury truly specific to [the creditor] that was distinct from other creditors"); *see also Madoff*,

429 B.R. at 431 (denying to grant standing to a creditor seeking to bring fraudulent transfer

claims, as creditor sought "to redress a harm common to" estate claimants).   Courts have focused

on whether there was a "direct relationship or communication between the plaintiffs and

defendants" or whether "a defendant violated an independent legal duty in its dealing with

plaintiffs." *Ritchie Capital Mgmt.*, 121 F. Supp. 3d at 336 (citation and quotation omitted).

138.    The Trustee contends that CFG Peru suffered a particularized injury because it is

the "100% equity holder of the Peruvian OpCos," and that HSBC-HK's conduct directly

damaged the Peruvian OpCos' operations and impacted their sale process.   [FAC ¶ 202.]

However, to reiterate, CFG Peru brings its equitable subordination claim as a creditor of the

Debtors at which HSBC-HK has filed proofs of claim, and its equity ownership of the

Peruvian OpCos does not bear on any injury it could have suffered in its capacity as a creditor of

such Debtors.   "The fundamental aim of equitable subordination is to undo or offset any

inequality in the claim position of a creditor that will produce injustice or unfairness to other

*creditors* in terms of *bankruptcy results*."   *Official Comm. of Unsecured Creditors of*

*AppliedTheory Corp. v. Halifax, L.P. (In re AppliedTheory Corp.)*, 345 B.R. 56, 59 (S.D.N.Y.

2006) (citation and quotation omitted) (emphasis added).  It is not a mechanism for a shareholder to seek redress for alleged harm to its equity interests.  Therefore, that CFG Peru, in its non-creditor capacity, is also an affiliate of other Debtors and holds equity in the Peruvian OpCos is of no moment.

139.    The Trustee has conceded in his own pleading that HSBC-HK's alleged conduct "resulted in harm to CFG Peru *and the creditor body* in [the] Chapter 11 cases [of CFGL, CFIL and Smart Group] because *creditors* are less likely to recover the full amounts due to them." [FAC ¶ 200 (emphasis added).]  Accordingly, by the terms of the First Amended Complaint, the Trustee's alleged harm is "general and common to the corporation and creditors" and not particular to CFG Peru.  *Ritchie Capital Mgmt.*, 121 F. Supp. 3d at 335 (quotations omitted).

       iii.    The Trustee Has Not Obtained Derivative Standing to Bring Equitable Subordination Claims

140.    Nor has the Trustee obtained—or even sought—derivative standing to pursue equitable subordination.  Under Second Circuit precedent, in order to obtain derivative standing, the Trustee must make a motion, upon proper notice, that successfully demonstrates: first, the "debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing"; second, the "action asserting the proposed claims would be likely to benefit the reorganized estate"; and third, "there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of the litigation will likely produce."  *Adelphia Commc'ns Corp. v. Bank of Am. (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364, 374 (Bankr. S.D.N.Y. 2005) (citing *Unsecured Creditors Comm. of STN Enters. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904–05 (2d Cir. 1985)); *see also Commodore Int'l, Ltd. v. Gould (In re Commodore Int'l, Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001) (requiring a creditors' committee to establish that derivative standing was in the best interests of the estate and

"necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings" even

where the debtor consented to such standing) (internal citations omitted); *Glinka v. Murad (In re*

*Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 71 n.7 (2d Cir. 2002) ("Although *STN* and

*Commodore* both involved creditors' committees, the holdings of those cases also apply to

individual creditors . . . .").

141.    The Trustee has made no showing that he can meet the substantive requirements

under *STN Enterprises*, and even if he could do so, he has not brought a motion or provided the

Debtors and other parties in interest with an opportunity to respond.  His attempted prosecution

of an equitable subordination claim against HSBC-HK is thus procedurally improper.

142.    Because the Trustee has not alleged (and cannot allege) particularized injury and

has not been granted derivative standing to bring equitable subordination claims against HSBC-

HK, Count Seven should be dismissed for lack of standing.

B.    *The Trustee's Equitable Subordination Cause of Action Should Be Dismissed as*
*Unripe*

143.    As the Supreme Court recently reiterated, federal courts "'have an obligation to

assure [themselves] of litigants' standing under Article III.'"  *Frank v. Gaos*, No. 17-961, slip.

op. at 5 (U.S. Mar. 20, 2019) (per curiam) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S.

332, 340 (2006)).  It is the plaintiff's burden to "demonstrate standing separately for each form

of relief sought."  *DaimlerChrysler*, 547 U.S. at 352 (quotation omitted).  This requirement

applies with equal force to equitable subordination causes of action.  *See Official Comm. of*

*Unsecured Creditors of the Debtors v. Austin Fin. Servs., Inc. (In re KDI Holdings, Inc.)*, 277

B.R. 493, 502–03 (Bankr. S.D.N.Y. 1999) (stating in the context of equitable subordination that

"[s]tanding is a jurisdictional requirement that must be met in order to have claims litigated in

federal court.")  One requirement for constitutional standing is ripeness, which "is best thought

of as 'a specific application of the actual injury aspect of Article III standing.'" *Davis v. N.Y.*

*State Bd. of Elections*, 689 F. App'x 665, 668 (2d Cir. 2017) (summary order) (quoting *Nat'l*

*Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013)).  The ripeness requirement

"prevents a federal court from entangling itself in abstract disagreements over matters that are

premature for review because the injury is merely speculative and may never occur."  *Ross v.*

*Bank of Am., N.A.*, 524 F.3d 217, 226 (2d Cir. 2008).

144.    The Trustee's equitable subordination cause of action is precisely the kind of

"abstract disagreement" referred to by the Second Circuit in *Ross*.  At this point in the

proceedings, HSBC-HK's claims against the Debtors are contingent and unliquidated, and any

decision as to their priority is premature.  Whether a claim should be equitably subordinated

needs to be decided only if the claim is allowed in an amount that entitles it to a distribution

under a plan of reorganization.  Since HSBC-HK has direct claims against the non-Debtor

entities operating the Peru businesses and, as the Trustee has recognized,[36] the total amount

recovered in any sale may result in payment in full of such claims, the allowed amount of HSBC-

HK's claims at the CF Group level could be zero.  Such an outcome, which presumably all

parties in these cases hope for, would render any decision on subordination of HSBC-HK's

claims unnecessary.  *See White Family Cos. v. PNC Bank (In re Dayton Title Agency, Inc.)*, 527

B.R. 289, 297 (Bankr. S.D. Ohio 2015) (concluding that because "there was no need to pursue

the subordination of [one creditor's] claim unless or until the estate recovered on the claims

against" other creditors, adjudication of a subordination claim "would have been a purely

---

[36] [*See, e.g.*, Chapter 11 Trustee Motion for Order (i) Approving the Settlement Agreement Netting Certain
Intercompany Claims Between CFG Peru Singapore and CFGI, and Between CFG Peru Singapore and SFR, (ii)
Authorizing Corporate Governance Actions, and (iii) Granting Related Relief, No. 16-11895, ECF No. 1489 ¶ 14
("The [Trustee] anticipates that third party creditors of the Peruvian OpCos will be paid in full in cash as part of the
[sale of the Peruvian OpCos].").]

academic exercise, potentially wasting unnecessary judicial resources"). Because a critical

future event in these cases—the sale of the Peru operations—must precede determination of the

allowed amount of HSBC-HK's claims and allocation of the CF Group estate under any plan of

reorganization, the Trustee's equitable subordination cause of action is unripe. *See Nat'l Org.*

*for Marriage*, 714 F.3d at 687 ("A claim is not ripe if it depends upon 'contingent future events

that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Thomas v. Union*

*Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985))); *cf. In re Mall at One Assocs., L.P.*,

185 B.R. 1009, 1016 (Bankr. E.D. Pa. 1995) (stating that bankruptcy courts should "generally

refrain from deciding any issues which constitute disputes between creditors which will have

little, if any, effect on the administration of the debtor's [estate].")

145.    Because the Trustee has not yet satisfied the "irreducible constitutional minimum

of standing" as to Count Seven of the First Amended Complaint, it must be dismissed. *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

C.      *The Allegations in the First Amended Complaint Are Insufficient to Establish a*
        *Basis for the Equitable Subordination of HSBC-HK's Claims*

146.    In addition to lacking standing and having an unripe claim, the Trustee has failed

to allege the degree of conduct necessary to warrant application of the "drastic and unusual

remedy" of equitable subordination. *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron*

*Corp.)*, 379 B.R. 425, 434 (S.D.N.Y. 2007); *see also Kalisch v. Maple Trade Fin. Corp. (In re*

*Kalisch)*, 413 B.R. 115, 133 (Bankr. S.D.N.Y. 2008) ("Equitable subordination is an

extraordinary remedy that is to be used sparingly." (citing *Fabricators, Inc. v. Tech. Fabricators*

*(In re Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir. 1991))).

147.    Although there is no universal standard for equitable subordination, the three-

pronged test articulated in *Benjamin v. Diamond (In re Mobile Steel Corp.)*, 563 F.2d 692 (5th

Cir. 1977) "has been widely adopted by courts as the proper test for equitable subordination under [section] 510(c)." *Official Comm. of Unsecured Creditors of Lois/USA, Inc. v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R. 69, 132, n.160 (Bankr. S.D.N.Y. 2001); *see also In re Aéropostale*, 555 B.R. 369, 397 (Bankr. S.D.N.Y. 2016) ("In determining whether to apply equitable subordination, bankruptcy courts have looked to the test articulated in [*Mobile Steel*]"); *LightSquared LP v. SP Special Opportunities LLC (In re LightSquared, Inc.)*, 511 B.R. 253, 347 (Bankr. S.D.N.Y. 2014) ("The test for equitable subordination was originally articulated in [*Mobile Steel*] and has since been adopted by Courts in the Southern District of New York"). Under the *Mobile Steel* test, first, the "claimant must have engaged in some type of inequitable conduct" sufficient to merit equitable subordination; second, the "misconduct must have resulted in injury to the creditors of the bankrupt" and "conferred an unfair advantage on the claimant"; and third, equitable subordination of a claim "must not be inconsistent with the provisions of the Bankruptcy Act." *LightSquared*, 511 B.R. at 347 (citing, *inter alia*, *Mobile Steel*, 563 F.2d at 700 and *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994)). The facts alleged by the Trustee do not satisfy any of these three elements.

    i.  HSBC-HK's Alleged Conduct Was Not Inequitable and Does Not Warrant <u>Equitable Subordination</u>

       a.  The Trustee Has Not Alleged That HSBC-HK Engaged in "Gross and Severely Unfair" Conduct

148.  The threshold for conduct necessary to warrant equitable subordination against a non-insider is high and "rarely if ever met." *80 Nassau Assocs.*, 169 B.R. at 839. To sustain such a claim, the creditor must have engaged in conduct that is "gross and egregious" and, if not illegal, "shocks one's good conscience." *LightSquared*, 511 B.R. at 347–48. Indeed, courts frequently find that even plainly inequitable conduct is not sufficiently egregious to warrant

equitable subordination as a remedy.  *See, e.g.*, *Delphi Corp. v. Appaloosa Mgmt. L.P. (In re Delphi Corp.)*, 2008 WL 3486615, at *22 (Bankr. S.D.N.Y. Aug. 11, 2008) (finding that an intentional breach of a contract "does not rise to the level of misconduct sufficient to support a claim for equitable subordination").  No such gross misconduct by HSBC-HK exists on the face of the Trustee's First Amended Complaint.

149.    Particularly relevant here, a creditor's lawful enforcement of rights and remedies is generally insulated from charges of equitable subordination.  "[T]here is generally no objection to a creditor's using his bargaining position . . . to improve the status of his existing claims."  *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings, Inc.)*, 541 B.R. 551, 583 (Bankr. S.D.N.Y. 2015) (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 610 (2d Cir. 1983)); *see also Aéropostale*, 555 B.R. at 409 ("[A] creditor can even 'us[e] his bargaining position . . . to improve the status of his existing claims' without triggering a claim for equitable subordination" (quoting *Lehman Bros.*, 541 B.R. at 583)); *Nat'l Westminster Bank USA v. Century Healthcare Corp.*, 885 F. Supp. 601, 608–09 (S.D.N.Y. 1995) ("Lenders are afforded substantial leeway in dealing with a debtor in default . . . .").  Courts have declined to impose the remedy of equitable subordination even in the face of aggressive creditor actions to enforce a debt.  *See, e.g.*, *Smith v. Assocs. Commercial Corp. (In re Clark Pipe & Supply Co.)*, 893 F.2d 693, 702 (5th Cir. 1990) (finding that a creditor's "control over [debtor's] finances, admittedly powerful and ultimately severe, . . . [and] close watch over [debtor's] affairs does not, by itself . . . amount to such control as would justify equitable subordination."); *Pinetree Partners Ltd. v. OTR (In re Pinetree Partners, Ltd.)*, 87 B.R. 481, 490 (Bankr. N.D. Ohio 1988) (finding lender's threats to foreclose and refusal to provide additional credit to debtor did not warrant equitable subordination).  The opening paragraph of

the First Amended Complaint seemingly admits that such a remedy is without precedent,

predicting that "[t]his case will be cited" if the Court imposes relief on the facts presented here.

[FAC ¶ 1.]

150.    At its essence, the First Amended Complaint alleges that, for a limited period of

time, HSBC-HK took steps that were more aggressive than other creditors in exercising its legal

rights as an unsecured creditor outside the United States.  HSBC-HK is accused of (a) making an

insufficient factual presentation to the Hong Kong Court as part of a lawful *ex parte* proceeding

for the provisional appointment of the JPLs, which were later dismissed, and (b) continuing to

pursue its rights through the arm's length negotiation of the Deed of Undertaking—a settlement

agreement that the Hong Kong Court reviewed and approved.  Neither of these actions comes

close to approximating the "unbridled overreach" claimed by the Trustee, let alone egregious and

severely unfair misbehavior necessary to sustain a claim for equitable subordination.  *See In re*

*Sabine Oil & Gas Corp.*, 547 B.R. 503, 517 (Bankr. S.D.N.Y. 2016) (finding that "[t]here is

nothing inequitable about" conduct involving "contentious, arm's-length negotiations . . . with

both sides protecting their respective interests to the best of their abilities . . . [and] claims for

equitable subordination [in such contexts] are not colorable."), *aff'd*, 562 B.R. 211 (S.D.N.Y.

2016).

b.    HSBC-HK Was Never an Insider of the Debtors

151.    The Trustee argues in conclusory fashion that HSBC-HK was either a "statutory

insider" of the Debtors under 11 U.S.C. § 101(31) of the Bankruptcy Code or qualified as a

"non-statutory insider" under federal common law.  [*See* FAC ¶¶ 127–29, 199.]  Although

equitable subordination is typically applied to non-insider creditors in only the most severe cases

of misconduct, courts have applied section 510(c) of the Bankruptcy Code to the claims of

"insiders" upon lower evidentiary showings.  *See, e.g., Official Comm. of Unsecured Creditors v.*

*Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 363 (Bankr. S.D.N.Y. 2002) ("A higher level of proof is required to equitably subordinate the claim of a party that is n[ot] an insider of the debtor . . . ." (citing *ABF Capital Mgmt. v. Kidder Peabody & Co. (In re Granite Partners)*, 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997))).  By labeling HSBC-HK an "insider," the Trustee seeks to skirt the burden of establishing gross or egregious conduct by asking the Court to apply a lower bar or relaxed burden of proof in evaluating HSBC-HK's actions.

152.    The Trustee alleges that HSBC-HK was a "statutory insider" of the Debtors as a "person in control" of the Debtors pursuant to 11 U.S.C. § 101(31)(B).  [FAC ¶ 199.]  The Bankruptcy Code does not define "person in control," but courts have defined the term as "one who controls the debtor's day-to-day financial, personnel and business operations."  *Official Comm. of Unsecured Creditors of Grumman Olson Indus., Inc. v. McConnell (In re Grumman Olson Indus., Inc.)*, 329 B.R. 411, 428 (Bankr. S.D.N.Y. 2005) (collecting cases).  When assessing statutory insider status, "courts generally require evidence of 'actual management' or 'extensive control.'"  *Jacobs v. D'Alessandro (In re Dewey & LeBoeuf LLP)*, 2014 WL 4746209, at *6 (Bankr. S.D.N.Y. Sept. 23, 2014) (quoting *Herbert Constr. Co. v. Greater N.Y. Sav. Bank (In re 455 CPW Assoc.)*, 2000 WL 1340569, at *5 (2d Cir. Sept. 14, 2000) (unpublished decision)).

153.    The Trustee alternatively alleges that HSBC-HK is a "non-statutory insider." [FAC ¶ 199.]  In evaluating whether an entity is a "non-statutory insider," courts consider "(1) the closeness of the relationship between the debtor and the [alleged insider], and (2) whether the transactions between the [alleged insider] and the debtor were conducted at arm's length." *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 351 (S.D.N.Y. 2013) (citations and quotations omitted).  Whether based on the statutory categories or not, "an

'insider' must, *in every case*, exercise dominion and control sufficient to create a 'merger of identity' to the point where the 'creditor has become, in effect, the *alter ego* of the debtor.'" *Lehman Bros.*, 541 B.R. at 582 (emphasis added) (quoting *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 499 (S.D.N.Y. 1994)).

154.   In support of his contention that HSBC-HK was an "insider" of the "Pacific Andes Group," the Trustee makes four allegations, none of which—even if true—would suffice to show that HSBC-HK was an insider of the Debtors.  [FAC ¶¶ 127–29.]

155.   First, the Trustee alleges that HSBC-HK was an insider because it acted "in concert" with the Pacific Andes Group to obtain repayment of its loans and not disclose to other lenders that it was managing its Pacific Andes position from a workout group within the bank. [FAC ¶ 128.]  However, HSBC-HK's efforts to terminate its loans and utilize its workout functions are simply examples of HSBC-HK behaving like a bank lender.  The Trustee does not plead that HSBC-HK exercised "actual management" or "extensive control" over the Debtors in relation to the repayment of its bilateral facilities, or that the negotiations did not occur at arm's length.  [*Id.*]  Moreover, the record makes clear that HSBC-HK was acceding to the request of Pacific Andes Group management ██████████████████████████████████████████████ ████████████████████████████████████████████████   [*See* FAC ¶ 45; HSBCHK-TR-00045211.]  Therefore, the Trustee fails to sufficiently plead that HSBC-HK acted as an insider, or "alter ego," of the Debtors on this basis.

156.   Second, the Trustee contends that HSBC-HK was an insider because it "started developing an internal strategy" to have JPLs appointed and then "fortified" that role when it sought legal remedies in Hong Kong and the Cayman Islands to actually have the JPLs appointed.  [*See* FAC ¶ 128.]  By definition, "internal" planning could not cause HSBC-HK to

become an insider of the Debtors. Nor did HSBC-HK subsequently become an insider when it sought the appointment of the JPLs. Notwithstanding the Trustee's conclusory statements regarding HSBC-HK's alleged "control" over the "surrogate" JPLs [*see, e.g.*, FAC ¶¶ 57, 83, 128, 141, 146, 170], Hong Kong law unequivocally states that provisional liquidators are officers of the court that appoints them and *per se* not surrogates or under the control of the petitioning creditor or any other private party. [*See* Rogers Decl. ¶¶ 50–54.] The Trustee's allegations therefore fail to establish a relationship of surrogacy and control between the JPLs and HSBC-HK, let alone support the assertion that HSBC-HK was an insider of any of the Debtor entities.

157.    Third, the Trustee alleges that HSBC-HK was an insider because it "wielded the 'life or death' power it obtained by virtue of the JPLs' appointment (and its ability to appeal from the decision dismissing the JPLs)" to negotiate the Deed of Undertaking. [FAC ¶ 128.] Here, again, the Trustee's contentions are facially deficient. The Trustee pleads that the source of HSBC-HK's influence was its use of judicial process to exercise a legal creditor remedy, and the specter that it might pursue further judicial relief by taking an appeal. [*See, e.g.*, *id.* ¶¶ 51, 66, 95–96, 101.] But under Hong Kong law, once a debt has become due and payable, a creditor is "entitled to pursue all available judicial remedies to obtain payment of the debt." [Rogers Decl. ¶ 11.] The Trustee does not allege that HSBC-HK's bargaining position derived from anything other than its exercise of, or option to exercise, appropriate judicial remedies under Hong Kong law, and it would run counter to Second Circuit precedent and sensible policy to base a finding of "insider" status solely on this fact. *See W.T. Grant Co.*, 699 F.2d at 610 (noting that a creditor is generally permitted to use "his bargaining position . . . to improve the status of his existing claims.") Furthermore, in arguing that HSBC-HK's negotiation of the Deed of Undertaking made it an insider, the Trustee's arguments appear to advance the untenable

position that a restructuring support agreement or a forbearance agreement, with customary

terms such as milestones and consent and notice rights, would cause a signatory creditor to

become an insider.  That is not what the law provides.  *See Grumman Olson Indus., Inc.*, 329

B.R. at 428 ("[N]either superior bargaining power nor the contractual right of oversight over the

debtor or its operations transforms an outsider into an insider." (citations omitted)).

158.    Fourth, the Trustee makes the unsupported, and irrelevant, allegation that HSBC-

HK was an insider of the Pacific Andes Group because representatives of FTI allegedly used

reports it initially prepared on behalf of HSBC-HK in support of applications in the British

Virgin Islands ("BVI") to become liquidators over certain non-Debtor Pacific Andes affiliates.

[FAC ¶ 129.]  However, the First Amended Complaint does not allege that HSBC-HK

participated in the BVI proceedings or the appointment of FTI personnel in those proceedings.

Furthermore, the outcome of the BVI proceedings could not cause HSBC-HK to be an insider

with respect to any of the Debtors because none of the entities subject to liquidation proceedings

in the BVI is a Debtor in the chapter 11 cases, or an equity holder in any of the Debtors at which

HSBC-HK filed proofs of claim.  [*Id.* ¶¶ 21, 129 & n.81.]  The BVI liquidators were also

appointed well after the chapter 11 cases had commenced, and indeed, after appointment of a

trustee for CFG Peru had been authorized.  [*See id.* ¶ 129; Trustee Dec. at 49.]

159.    Accordingly, the Trustee has failed to establish (and cannot establish) that

HSBC-HK was an insider of the Debtors.

ii.    HSBC-HK's Conduct Neither Resulted In Harm to Other Creditors Nor Conferred a Benefit Upon HSBC-HK

160.    "Equitable subordination requires that a party prove unfair advantage *and* injury

to creditors because subordination is a remedial measure designed to offset the harm resulting

from the inequitable conduct; it is not penal in nature."  *LightSquared*, 511 B.R. at 349 (emphasis

added).[37]  Absent proof of injury and unfair advantage, inequitable conduct on its own does not

merit equitable subordination.

161.    The First Amended Complaint alleges that HSBC-HK was able to "wrestle

control" of the Peruvian OpCos through appointment of the JPLs.  [FAC ¶ 203.]  However, the

First Amended Complaint does not identify any tangible benefit that HSBC-HK received as a

result of such purported control (let alone an unfair advantage over other creditors).  To the

contrary, the very filing of the chapter 11 cases, and the fact that "the Debtors deliberately

breached all aspects of the Deed of Undertaking" in order to file the chapter 11 cases is evidence

that HSBC-HK neither gained control of the Debtors nor ultimately saw any benefits from its

efforts to pursue relief as a creditor in the Hong Kong and Cayman courts.  [Trustee Dec. at 38.]

Indeed, the principal, interest and other obligations owed to HSBC-HK (and to the other Club

Lenders) under the Club Facility remain outstanding.  Moreover, even if the JPLs' appointment

over CFGL and CFIL had continued and resulted in a sale of the Peruvian OpCos and repayment

of the Club Facility—or if the Debtors performed in good faith and sold the Peruvian business

under the Deed of Undertaking—any benefit would have inured ratably to creditors at each

estate, and not to HSBC-HK exclusively or disproportionately.  The Trustee has thus failed to

show any unfair advantage (or any advantage, for that matter) that was received by HSBC-HK as

a result of its alleged acts.

---

[37] Courts in this Circuit have found this test to be conjunctive, requiring both harm to creditors and a benefit
to the claimant.  *See, e.g.*, *LightSquared*, 511 B.R. at 347 (citing *Nisselson v. Softbank AM Corp. (In re MarketXT
Holdings Corp.)*, 361 B.R. 369, 388 (Bankr. S.D.N.Y. 2007)); *In re Mr. R's Prepared Foods, Inc.*, 251 B.R. 24, 29
(Bankr. D. Conn. 2000) ("In [the Second] Circuit, the second requirement for equitable subordination involves a
conjunctive test, requiring a showing of both unfair advantage to one creditor and harm to the debtor or its other
creditors." (citing *W.T. Grant Co.*, 699 F.2d at 611)).

iii.    Equitably Subordinating HSBC-HK's Claims in the Present Case Would
Be Inconsistent With the Bankruptcy Code

162.    Equitable subordination of HSBC-HK's claims would be inconsistent with the

Bankruptcy Code.  As set forth above, the alleged wrongful conduct set forth in the First

Amended Complaint relates to HSBC-HK's petitioning of a foreign court, prior to the

commencement of bankruptcy in the United States, to impose a local law remedy (the

appointment of provisional liquidators) to which creditors in Hong Kong are ordinarily entitled.

[See Rogers Decl. ¶¶ 11–12, 14–15.]  For a United States bankruptcy court to find the basis for

misconduct and equitable subordination in such an action would be to impermissibly punish a

creditor for exercising its rights under foreign law in a foreign jurisdiction.  Equitable

subordination in this instance would thus violate principles of international comity and of

deference to a creditor's pre-bankruptcy exercise of its local law rights.  Both of these concepts

are fundamental to the Bankruptcy Code, and accordingly, the Court should not countenance

equitable subordination of HSBC-HK's claims on the basis of the Trustee's allegations.

163.    In addition, equitable subordination in this case is inconsistent with the

Bankruptcy Code to the extent the Trustee seeks to subordinate HSBC-HK's claims as an

*additional* remedy to money damages in connection with the same alleged harm.  "[Equitable

subordination] is an alternative remedy to monetary recovery from the wrongdoing

claimant . . . .  Consequently, a trustee cannot recover damages and equitably subordinate a claim

based upon the same wrong."  *Hirsch v. Pa. Textile Corp., Inc. (In re Centennial Textiles, Inc.)*,

227 B.R. 606, 611 (Bankr. S.D.N.Y. 1998) (citing *Granite Partners*, 210 B.R. at 517); *see also*

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R. 117, 160 (Bankr. S.D.N.Y.

2014) ("It is well-settled that equitable subordination is an alternative to a monetary recovery for

the creditor's wrongdoing, and the trustee cannot recover damages and equitably subordinate a

claim based on the same wrong."); *Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*, 453 B.R. 499, 517 (Bankr. S.D.N.Y. 2011) ("Even when a complaint alleges gross and egregious conduct, equitable subordination is only an alternative to a monetary recovery for the creditor's wrongdoing, and the trustee cannot recover damages and equitably subordinate a claim based on the same wrong.").  Here, the Trustee seeks equitable subordination as an additive remedy, and not merely as an alternative.  Such a result would be in contravention of the Bankruptcy Code.

D.    *Section 510(c) of the Bankruptcy Code Does Not Apply Extraterritorially and Cannot Be Applied to Regulate HSBC-HK's Foreign Conduct*

164.    The Trustee argues that HSBC-HK's claims should be equitably subordinated under section 510(c) as a result of alleged conduct that took place outside the United States. However, as discussed in Section VII(a)(i), *supra*, federal statutes are presumed not to apply extraterritorially, and that presumption is only rebutted by a "clear indication of extraterritorial effect."  *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2102 (2016) (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010)); *accord In re Picard*, 917 F.3d 85, 95 (2d Cir. 2019).  No such indication exists on the face of section 510(c).  Accordingly, under the *Morrison* test, section 510(c) is actionable in this case only if its application is determined not to be extraterritorial by examination of the "focus" of the statute.  *See id.* at 96 (citing *RJR Nabisco*, 136 S. Ct. at 2101).  Because section 510(c) applies only where inequitable conduct is present, regulation of such conduct is its identifiable focus.  *See, e.g.*, *Enron Corp.*, 379 B.R. at 434 (equitable subordination is "remedial, not penal, and should be applied only to the extent necessary to offset specific harm that creditors have suffered . . . .").  In the present case, where all of the purported wrongdoing occurred abroad, application of the statute would necessarily serve to regulate foreign conduct and would thus constitute an impermissible extraterritorial application of federal law.

E.    *Equitable Subordination Cannot Be Used to Compromise or Change the Priority of HSBC-HK's Claims Against Non-Debtors*

165.    Although the First Amended Complaint seeks to equitably subordinate (and disallow) HSBC-HK's Club Facility claims, the Trustee has not disputed HSBC-HK's rights to payment from Peruvian OpCos CFGI and Copeinca, both of which are borrowers and guarantors liable for the full amount owing under the Club Facility.  [FAC ¶ 36; Netting Reply[38] ¶ 14.] Indeed, section 510(c) provides no authority whatsoever for a court to modify the priorities of, or otherwise compromise, non-debtor obligations.  As the Trustee has stated, "the Club Lenders . . . will be entitled to recover" irrespective of the chapter 11 plan process "because they are creditors of the non-Debtor subsidiaries . . . whose debts will be repaid as a condition to closing" the Trustee's sale transaction.  [Netting Reply ¶ 15.]  HSBC-HK thus respectfully reminds the Court that the equitable subordination sought by the Trustee will have no impact on HSBC-HK's (or the other Club Lenders') structurally senior claims against the non-Debtor Peruvian OpCos and, by the Trustee's accounting, will not ultimately impact creditor recoveries at all.

F.    *"Equitable Disallowance" Is Not a Remedy Recognized Under the Bankruptcy Code*

166.    The Trustee further argues in Count Seven for "equitable disallowance" of HSBC-HK's claim.  [FAC ¶¶ 207–08.]  However, as numerous courts—including those in the Southern District of New York—have recognized, no such remedy exists under the Bankruptcy Code.  "[T]he Bankruptcy Code, pursuant to section 510(c) or otherwise, does not permit equitable disallowance of claims that are otherwise allowable under section 502(b) of the

---

[38] "**Netting Reply**" means that certain Omnibus Reply to the Objection of Bank of America, N.A. and to the Limited Objection of the Senior Noteholder Committee to the Chapter 11 Trustee and the Other Debtors' Agreement Netting Intercompany Claims Among and Between CFG Peru Singapore, the other Debtors, and the Non-Debtor Affiliates, Including the CFG Peru Singapore Subsidiaries.  [No. 16-11895, ECF No. 1027.]

Bankruptcy Code." *Harbinger Capital Partners LLC v. Ergen (In re LightSquared Inc.)*, 504

B.R. 321, 339 (Bankr. S.D.N.Y. 2013); *see also Madoff*, 515 B.R. at 157 ("§ 510(c) provides for

the remedy of equitable subordination, not equitable disallowance. Equitable disallowance is

inconsistent with equitable subordination, and frankly, would eviscerate the principle of

equitable subordination by disallowing a claim under the same set of facts.") (citations omitted).

Indeed, bankruptcy courts "routinely reject equitable disallowance as a remedy under the

[Bankruptcy] Code" due to the fact that there is no equitable exception to allowance of a claim

under Section 502(b). *In re Hercules Offshore, Inc.*, 565 B.R. 732, 760 (Bankr. D. Del. 2016).

Accordingly, HSBC-HK's claims against the Debtors cannot be disallowed on equitable

grounds.

## **CONCLUSION**

167.     For the reasons set forth above, HSBC-HK respectfully requests that the Court

dismiss the First Amended Complaint with prejudice.[39]

---

[39] The Trustee received a substantial document production from HSBC-HK in response to extensive Rule 2004 requests and has already amended his complaint. Notwithstanding this, as demonstrated above, his claims fail as a matter of law. Consequently, any further amendment would be futile and the Court should dismiss the First Amended Complaint with prejudice.

Dated:   New York, New York
         March 29, 2019

DAVIS POLK & WARDWELL LLP                    BOIES SCHILLER FLEXNER LLP

By:   */s/ Elliot Moskowitz*                  By:   */s/ Scott E. Gant*
Donald S. Bernstein                           Scott E. Gant (admitted *pro hac vice*)
Elliot Moskowitz                              1401 New York Avenue, NW
450 Lexington Avenue                          Washington, DC 20005
New York, New York 10017                      Telephone:     (202) 237-2727
Telephone:     (212) 450-4000
                                              - and -

                                              Damien J. Marshall
                                              55 Hudson Yards
                                              New York, New York 10001
                                              Telephone:     (212) 446-2300

*Counsel to The Hongkong and Shanghai Banking Corp. Ltd.*