| | |
|---|---|
| DAVIS POLK & WARDWELL LLP | BOIES SCHILLER FLEXNER LLP |
| Donald S. Bernstein | Scott E. Gant (admitted *pro hac vice*) |
| Elliot Moskowitz | 1401 New York Avenue, NW |
| 450 Lexington Avenue | Washington, DC 20005 |
| New York, New York 10017 | Telephone:     (202) 237-2727 |
| Telephone:     (212) 450-4000 | - and - |
| | Damien J. Marshall |
| | 55 Hudson Yards |
| | New York, New York 10001 |
| | Telephone:     (212) 446-2300 |

*Counsel to The Hongkong and Shanghai Banking Corp. Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CHINA FISHERY GROUP LIMITED (CAYMAN), *et al.*,<br><br>                    Debtors. | Case No. 16-11895 (JLG)<br><br>Chapter 11 (Jointly Administered) |
| In re:<br><br>CFG PERU INVESTMENTS PTE. LTD. (SINGAPORE),<br><br>                    Debtor. | Case No. 16-11914 (JLG)<br><br>Chapter 11 |
| WILLIAM A. BRANDT, JR., AS TRUSTEE OF CFG PERU INVESTMENTS PTE. LTD. (SINGAPORE),<br><br>                    Plaintiff,<br><br>                    v.<br><br>THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED,<br><br>                    Defendant. | Adv. Pro. No. 18-01575-JLG |

**REPLY BRIEF IN SUPPORT OF DEFENDANT**
**THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...............................................................................................................3

I.     The Trustee Has Not Met His Burden of Establishing Subject Matter Jurisdiction ...........3

II.    The Court Lacks Personal Jurisdiction Over HSBC-HK with Respect to the Trustee's
Claims .......................................................................................................................5

III.   This Adversary Proceeding Lacks Any Meaningful Connection to the
United States and Should Be Dismissed on the Basis of *Forum Non Conveniens* ..............8

     A.      The Trustee's Decision to Sue in the United States Is Not Entitled to Any
Deference .........................................................................................................8

     B.      Hong Kong Is an Adequate Alternative Forum .....................................................11

     C.      The Public and Private Interests Uniformly Favor Litigation in Hong Kong ........12

         i.       The Public Interest Factors Favor Dismissal ..............................................12

         ii.      The Private Interest Factors Favor Dismissal .............................................14

IV.   Principles of International Comity Dictate Dismissal Notwithstanding the Lack of a
Pending Foreign Insolvency Proceeding .......................................................................16

V.    The Trustee's Claims Are Impermissibly Based on Petitioning Activity Protected by the
Noerr-Pennington Doctrine .........................................................................................20

     A.      Noerr-Pennington Covers the JPL Applications ...................................................20

     B.      The Sham Exception Is Inapplicable to the Trustee's Allegations .......................22

VI.   Each of the Non-Bankruptcy Causes of Action (Counts One Through Six) Should Be
Dismissed .................................................................................................................24

     A.      The Trustee Is Not Entitled to a "Relaxed" Pleading Standard ...........................24

     B.      The Peruvian Law Claims Are Time-Barred and Fail to State a Claim (Counts
One and Two) .................................................................................................27

         i.       The Peruvian Law Claims Are Time-Barred ..............................................27

         ii.      The Trustee Fails to State a Claim Under Peruvian Law ............................31

     C.      Count Three Fails to State a Claim Under Hong Kong Law .................................33

i

    i.  There Was No Implied Undertaking ........................................................... 33

    ii.  Even If an Undertaking Were Implied, the Plaintiff Could Not Recover .. 36

    iii.  There Is No Tort Based on a Wrongfully Obtained *Ex Parte* Order ......... 38

    iv.  There Is No General Duty to Act in "Good Faith" .................................... 39

  D.  Count Four Fails to State a Claim Cognizable Under Hong Kong Law ................ 40

    i.  The Trustee Has Not Sufficiently Alleged That Unlawful Means Were Employed ................................................................................................... 40

    ii.  The Trustee Has Not Alleged that HSBC-HK Intended to Cause Damage 41

  E.  The Trustee's U.S. Tortious Interference Claims Should Be Dismissed (Counts Five and Six) ....................................................................................................... 42

    i.  Count Five Should Be Dismissed ............................................................. 44

    ii.  Count Six Should Be Dismissed ............................................................... 45

VII. The Court Should Dismiss the Trustee's Claims for Equitable Subordination and Equitable Disallowance ............................................................................................... 48

  A.  The Trustee Lacks Standing to Bring Equitable Subordination Claims Against HSBC-HK ........................................................................................................... 48

    i.  The Trustee Is Not an Estate Fiduciary of Any Debtor Other than CFG Peru ........................................................................................................... 48

    ii.  The Trustee Does Not Have Standing as a Creditor to Pursue Equitable Subordination Against HSBC-HK ............................................................. 49

    iii.  CFG Peru Has Not Suffered a Particularized Injury ................................ 50

    iv.  The Trustee Does Not Have Derivative Standing to Pursue Equitable Subordination of HSBC-HK's Claims ....................................................... 53

CONCLUSION ........................................................................................................................ 68

# TABLE OF AUTHORITIES

### CASE(S)

PAGE(S)

*16 Casa Duse, LLC v. Merkin*,
    791 F.3d 247 (2d Cir. 2015) .........................................................................................46, 47

*ABF Capital Mgmt. v. Kidder Peabody & Co.* (*In re Granite Partners, L.P.*),
    210 B.R. 508 (Bankr. S.D.N.Y. 1997)...........................................................................50, 51

*Adams v. Zarnel* (*In re Zarnel*),
    619 F.3d 156 (2d Cir. 2010) ..................................................................................................4

*Adelphia Commc'ns Corp. v. Bank of Am. N.A.* (*In re Adelphia Commc'ns Corp.*),
    365 B.R. 24 (Bankr. S.D.N.Y. 2007), *aff'd in part sub nom.*
    *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 64 (S.D.N.Y. 2008)...............62, 67, 68

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988) ............................................................................................................21

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
    823 F.3d 51 (2d Cir. 2016) ..................................................................................................23

*In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*,
    311 F.3d 488 (2d Cir. 2002)................................................................................................11

*Arnon Ltd. v. Beierwaltes*,
    125 A.D.3d 453 (1st Dep't 2015) ........................................................................................46

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*,
    480 U.S. 102 (1987)...............................................................................................................6

*Associated Container Transp. (Australia) Ltd. v. United States*,
    705 F.2d 53 (2d Cir. 1983) ............................................................................................20, 23

*Bancredit Cayman Ltd. v. Santana* (*In re Bancredit Cayman Ltd.*),
    2008 WL 5396618 (Bankr. S.D.N.Y. Nov. 25, 2008)..........................................................9

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*,
    2000 WL 1508873 (2d Cir. Oct. 11, 2000) ........................................................................21

*In re B.D. Int'l Disc. Corp.*,
    15 B.R. 755 (Bankr. S.D.N.Y. 1981)....................................................................................4

*Benjamin v. Diamond* (*In re Mobile Steel Co.*),
    563 F.2d 692 (5th Cir. 1977) ..............................................................................................56

*BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC* (*In re BH Sutton Mezz LLC*),
   2016 WL 8352445 (Bankr. S.D.N.Y. Dec. 1, 2016) ...............................................................57

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016) ............................................................................................ 6

*C=Holdings B.V. v. Asiarim Corp.*,
   992 F. Supp. 2d 223 (S.D.N.Y. 2013) .....................................................................44

*Cameron v. LR Credit 22, LLC*,
   998 F. Supp. 2d 293 (S.D.N.Y. 2014) ....................................................................24

*Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n*,
   256 F. Supp. 2d 249 (D.N.J. 2003)...................................................................20, 21

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (2004)......................................................................................45, 47

*Catskill Dev., LLC v. Park Place Entm't Corp.*,
   547 F.3d 115 (2d Cir. 2008) ............................................................................ 44

*CCS Int'l, Ltd. v. ECI Telesystems, Ltd.*,
   1998 WL 512951 (S.D.N.Y. Aug. 14, 1998).........................................................11

*In re Cell C Proprietary Ltd.*,
   571 B.R. 542 (Bankr. S.D.N.Y. 2017).....................................................................4

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
   499 U.S. 365 (1991) ....................................................................................22

*Coastal States Mktg., Inc. v. Hunt*,
   694 F.2d 1358 (5th Cir. 1983) ..................................................................20, 21

*Coca-Cola Co. v. Omni Pac. Co.*,
   1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998)....................................20, 21

*Commodore Int'l, Ltd. v. Gould* (*In re Commodore Int'l, Ltd.*),
   262 F.3d 96 (2d Cir. 2001) ............................................................................55

*In re Condor Ins. Ltd.*,
   601 F.3d 319 (5th Cir. 2010) ..........................................................................30

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
   699 F.2d 599 (2d Cir. 1983) ....................................................................57, 59

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ....................................................................................6

*Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu*,
   2017 WL 3328239 (S.D.N.Y. Aug. 3, 2017)..........................................................29

*Deak & Co. v. R.M.P. Soedjono (In re Deak & Co.)*,
63 B.R. 422 (Bankr. S.D.N.Y. 1986) ...................................................................8

*Devaney v. Chester*,
813 F.2d 566 (2d Cir. 1987) ..............................................................................25

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
423 F. Supp. 2d 173 (S.D.N.Y. 2006) ...............................................................22

*Dover v. British Airways, PLC (UK)*,
2017 WL 4358726 (E.D.N.Y. Sept. 29, 2017) ...................................................63

*EDF Renewable Dev., Inc. v. Tritec Real Estate Co.*,
147 F. Supp. 3d 63 (E.D.N.Y. 2015) ............................................................23, 24

*In re Elysium Health-Chromadex Litig.*,
354 F. Supp. 3d 330 (S.D.N.Y. 2019) ..........................................................22, 24

*Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.)*,
333 B.R. 205 (Bankr. S.D.N.Y. 2005) ................................................................64

*F. Hoffmann-La. Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004) ...........................................................................................27

*First Fid. Bank, N.A., v. Hooker Invs., Inc.  (In re Hooker Invs., Inc.)*,
937 F.2d 833 (2d Cir. 1991) ............................................................................... 6

*Fort Bend Cty. v. Davis*,
139 S. Ct. 1843 (2019) ...................................................................................... 4

*GMAM Inv. Funds Tr. I v. Globo Comunicacoes E Participacoes S.A.  (In re Globo Comunicacoes E Participacoes S.A.)*,
317 B.R. 235 (S.D.N.Y. 2004)  .......................................................................... 16

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)  ........................................................................................... 6

*Gredd v. Bear, Stearns Sec. Corp.  (In re Manhattan Inv. Fund Ltd.)*,
310 B.R. 500 (Bankr. S.D.N.Y. 2002).................................................................25

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014)...................................................................................6

*Hanson v. Denckla*,
357 U.S. 235 (1958)  ......................................................................................... 6

*Harbinger Capital Partners LLC v. Ergen  (In re Lightsquared Inc.)*,
504 B.R. 321 (Bankr. S.D.N.Y. 2013).............................................................67, 68

*In re Hercules Offshore, Inc.*,
565 B.R. 732 (Bankr. D. Del. 2016).....................................................................68

*Hirschfeld v. Spanakos*,
　　104 F.3d 16 (2d Cir. 1997) ...............................................................................23

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*,
　　304 F. Supp. 3d 392 (S.D.N.Y. 2018) ..............................................................43

*Hosking v. TPG Capital Mgmt., LP (In re Hellas Telecomms. (Luxembourg) II SCA)*,
　　524 B.R. 488 (Bankr. S.D.N.Y. 2015)..............................................................30

*Hosking v. TPG Capital Mgmt., LP (In re Hellas Telecomms. (Luxembourg) II SCA)*,
　　535 B.R. 543 (Bankr. S.D.N.Y. 2015)..............................................................25

*Hosking v. TPG Capital Mgmt., LP (In re Hellas Telecomms. (Luxembourg) II SCA)*,
　　555 B.R. 323 (Bankr. S.D.N.Y. 2016)..............................................................13

*I.E. Liquidation, Inc. v. Litostroj Hydro, Inc.  (In re I.E. Liquidation, Inc.)*,
　　2009 WL 1586706 (Bankr. N.D. Ohio Mar. 18, 2009) ............................................9

*Int'l Shoe Co. v. Washington*,
　　326 U.S. 310 (1945) ........................................................................................ 6

*In re Inversora Eléctrica de Buenos Aires S.A.*,
　　560 B.R. 650 (Bankr. S.D.N.Y. 2016)................................................................4

*Iragorri v. United Techs. Corp.*,
　　274 F.3d 65 (2d Cir. 2001) ...............................................................................14

*Jhirad v. Ferrandina*,
　　536 F.2d 478 (2d Cir. 1976) ...............................................................................17

*J. McIntyre Mach., Ltd. v. Nicastro*,
　　564 U.S. 873 (2011) ........................................................................................ 6

*Jota v. Texaco Inc.*,
　　157 F.3d 153 (2d Cir. 1998) .......................................................................18, 19

*Katchen v. Landy*,
　　382 U.S. 323 (1966) ........................................................................................ 6

*Kiobel v. Royal Dutch Petroleum Co.*,
　　569 U.S. 108 (2013) .......................................................................................29

*Kirch v. Liberty Media Corp.*,
　　449 F.3d 388 (2d Cir. 2006) .......................................................................44, 45

*LaMonica v. Tilton  (In re TransCare Corp.)*,
　　592 B.R. 272 (Bankr. S.D.N.Y. 2018)...............................................................65

*Langenkamp v. Culp*,
　　498 U.S. 42 (1990)  ........................................................................................ 6

*LaSala v. Lloyds TSB Bank*,
514 F. Supp. 2d 447 (S.D.N.Y. 2007) ...............................................................11

*LaSala v. UBS, AG*,
510 F. Supp. 2d 213 (S.D.N.Y. 2007) ...............................................................14

*Law v. Siegel*,
571 U.S. 415 (2014) .........................................................................................68

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.* (*In re Lehman Bros. Holdings Inc.*),
469 B.R. 415 (Bankr. S.D.N.Y. 2012)..............................................................61

*Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.* (*In re Lehman Bros. Holdings Inc.*),
541 B.R. 551 (S.D.N.Y. 2015) ................................................................56, 57, 59

*LightSquared LP v. SP Special Opportunities LLC* (*In re LightSquared Inc.*),
511 B.R. 253 (Bankr. S.D.N.Y. 2014)............................................. *passim*

*Lions Gate Entm't Corp. v. Icahn*,
2011 WL 1217245 (S.D.N.Y. Mar. 30, 2011) .........................................47

*Liquidation Tr. v. Daimler AG* (*In re Old CarCo LLC*),
435 B.R. 169 (Bankr. S.D.N.Y. 2010).............................................................25

*Luan Inv. S.E. v. Franklin 145 Corp.* (*In re Petrie Retail, Inc.*),
304 F.3d 223 (2d Cir. 2002) ..................................................................... 5, 6

*Luxpro Corp. v. Apple Inc.*,
2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) ...............................................21

*Lyme Regis Partners, LLC v. Icahn* (*In re Blockbuster Inc.*),
2011 WL 1042767 (Bankr. S.D.N.Y. Mar. 17, 2011)..............................49, 50, 53

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ................................................................................4

*In re Maxwell Commc'n Corp. plc*,
186 B.R. 807 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 1036 (2d Cir. 1996)............................19, 20, 28

*McPhee v. Gen. Elec. Int'l, Inc.*,
736 F. Supp. 2d 676 (S.D.N.Y. 2010), *aff'd*, 426 F. App'x 33 (2d Cir. 2011) .......................43

*In re Millennium Global Emerging Credit Master Fund Ltd.*,
458 B.R. 63 (Bankr. S.D.N.Y. 2011).................................................................30

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) ..............................................................................25

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
139 S. Ct. 1652 (2019).......................................................................................21

*In re Mr. R's Prepared Foods, Inc.*,
    251 B.R. 24 (Bankr. D. Conn. 2000) ................................................................64

*Nat'l Australia Bank Ltd. and others v. Bond Brewing Holdings Ltd. and others*
    [1991] 1VR 386 (Austl.) ...............................................................................38, 39

*Nat'l Bank of Anguilla (Private Banking Tr.) Ltd. v. Nat'l Bank of Anguilla*
    *(In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.)*,
    580 B.R. 64 (Bankr. S.D.N.Y. 2018)........................................................9, 11, 13

*Nat'l Westminster Bank USA v. Century Healthcare Corp.*,
    885 F. Supp. 601 (S.D.N.Y. 1995) ...................................................................62

*Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*,
    340 B.R. 1 (Bankr. E.D.N.Y. 2006) ...................................................................61

*Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*,
    361 B.R. 369 (Bankr. S.D.N.Y. 2007)................................................................61

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    416 F.3d 146 (2d Cir. 2005) ..............................................................................8

*OBG Limited v. Allan*
    [2007] UKHL 21 ........................................................................................40, 41

*O'Connell v. Arthur Andersen, LLP  (In re AlphaStar Ins. Grp., Ltd.)*,
    383 B.R. 231 (Bankr. S.D.N.Y. 2008)................................................................65

*Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.)*,
    299 B.R. 732 (Bankr. D. Del. 2003)................................................58, 59, 61, 62

*Official Comm. of Unsecured Creditors v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*,
    345 B.R. 56 (S.D.N.Y. 2006) ......................................................................51, 52

*Official Comm. of Unsecured Creditors v. Transpacific Corp. (In re Commodore Int'l, Ltd.)*,
    242 B.R. 243 (Bankr. S.D.N.Y. 1999)................................................................10

*Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P.*
    *(In re AppliedTheory Corp.)*,
    493 F.3d 82 (2d Cir. 2007) ..............................................................................50

*Official Comm. of Unsecured Creditors of Champion Enters., Inc. v. Credit Suisse*
    *(In re Champion Enters., Inc.)*,
    2010 WL 3522132 (Bankr. D. Del. Sept. 1, 2010)..............................................57

*Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v.*
    *Chinery*,
    330 F.3d 548 (3d Cir. 2003) ............................................................................54

*Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P.* (*In re Fedders N. Am., Inc.*),
405 B.R. 527 (Bankr. D. Del. 2009) ...................................................................65

*Official Comm. of Unsecured Creditors of Grumman Olson Indus., Inc. v. McConnell* (*In re Grumman Olson Indus., Inc.*),
329 B.R. 411 (Bankr. S.D.N.Y. 2005) ...............................................................25

*Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co.* (*In re Sunbeam Corp.*),
284 B.R. 355 (Bankr. S.D.N.Y. 2002) ...............................................................65

*Official Comm. of Unsecured Creditors of the Debtors v. Austin Fin. Servs.* (*In re KDI Holdings, Inc.*),
277 B.R. 493 (Bankr. S.D.N.Y. 1999) ........................................................ *passim*

*Pain v. United Techs. Corp.*,
637 F.2d 775 (D.C. Cir. 1980) .............................................................................9

*Pan Am Corp. v. Delta Air Lines, Inc.*,
175 B.R. 438 (S.D.N.Y. 1994) .....................................................................56, 58

*Penrose Computer Marketgroup, Inc. v. Camin*,
682 F. Supp. 2d 202 (N.D.N.Y. 2010) ...............................................................47

*In re Picard*,
917 F.3d 85 (2d Cir. 2019) ...............................................................18, 19, 20

*Picard v. Merkin* (*In re Bernard L. Madoff Inv. Sec. LLC*),
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ..........................................................67, 68

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ...........................................................................................11

*Premium Mortg. Corp. v. Equifax, Inc.*,
583 F.3d 103 (2d Cir. 2009) ..............................................................................47

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus.*,
508 U.S. 49 (1993) ...............................................................................21, 22, 23

*PW Enters. v. N.D. Racing Comm'n* (*In re Racing Servs., Inc.*),
540 F.3d 892 (8th Cir. 2008) .............................................................................54

*Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*,
121 F. Supp. 3d 321 (S.D.N.Y. 2015) ..........................................................62, 63

*RJR Nabisco, Inc. v. Eur. Cmty.*,
136 S. Ct. 2090 (2016) ........................................................................27, 28, 29, 30

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ..........................................................................24, 25

*Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006) ...................................................................................16

*Ruhrgas Ag v. Marathon Oil Co.*,
  526 U.S. 574 (1999) ............................................................................................. 5

*Schubert v. Lucent Techs. Inc  (In re Winstar Commc'ns, Inc.)*,
  554 F.3d 382 (3d Cir. 2009) ...........................................................................57, 58

*Schuler v. Rainforest All., Inc.*,
  684 F. App'x 77 (2d Cir. 2017)............................................................................17

*Scott v. Nat'l Century Fin. Enters.  (In re Balt. Emerg. Servs. II, Corp.)*,
  432 F.3d 557 (4th Cir. 2005) ...............................................................................54

*Seidel v. Ritter  (In re Kinbrace Corp.)*,
  2017 WL 1380524 (Bankr. S.D.N.Y. Apr. 17, 2017) ............................................9

*Sequihua v. Texaco, Inc.*,
  847 F. Supp. 61 (S.D. Tex. 1994).........................................................................19

*SmartStream Techs., Inc. v. Chambadal*,
  2018 WL 1870488 (S.D.N.Y. Apr. 4, 2018) .........................................................63

*Smith v. Assocs. Commercial Corp. (In re Clark Pipe & Supply Co.)*,
  893 F.2d 693 (5th Cir. 1990).................................................................................59

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist.*,
  482 U.S. 522 (1987) ..............................................................................................16

*Stern v. Marshall*,
  564 U.S. 462 (2011) ................................................................................................7

*Tenn. Student Assistance Corp. v. Hood*,
  541 U.S. 440 (2004) ................................................................................................7

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
  312 F.3d 90 (2d Cir. 2002) ...................................................................................23

*Tradition Chile Agentes De Valores Ltda v. ICAP Sec. USA LLC*,
  2010 WL 4739938 (S.D.N.Y. Nov. 5, 2010).........................................................46

*Ungaro-Benages v. Dresdner Bank AG*,
  379 F.3d 1227 (11th Cir. 2004) ............................................................................18

*Unsecured Creditors Comm. of STN Enters. v. Noyes (In re STN Enters.)*,
  779 F.2d 901 (2d Cir. 1985) .......................................................................52, 53, 54

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*,
  455 F. App'x 102 (2d Cir. 2012).............................................................................45

x

*Victoriatea.com, Inc. v. Cott Beverages, Canada*,
   239 F. Supp. 2d 377 (S.D.N.Y. 2003) ...................................................................9

*In re Vitamin C Antitrust Litig.*,
   837 F.3d 175 (2d Cir. 2016) ...............................................................................19

*In re Wash. Mut., Inc.*,
   461 B.R. 200 (Bankr. D. Del. 2011).....................................................................67

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*,
   543 B.R. 428 (Bankr. S.D.N.Y. 2016)..................................................................10

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S. Ct. 2129 (2018).........................................................................................28

*White Family Cos. v. PNC Bank (In re Dayton Title Agency, Inc.)*,
   527 B.R. 289 (Bankr. S.D. Ohio 2015) ...............................................................51

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) .............................................................................................6

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998) ...............................................................................38

*Yung v. Lee*,
   2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002) .....................................................11

STATUTES & RULES

11 U.S.C. § 105(a) ...................................................................................................68

11 U.S.C. § 108.................................................................................................*passim*

11 U.S.C. § 109(a) ................................................................................................3, 4

11 U.S.C. § 109(h) ...................................................................................................4

11 U.S.C. § 502(b) ............................................................................................67, 68

11 U.S.C. § 510(c) ........................................................................................64, 65, 67

11 U.S.C. § 523.......................................................................................................7

11 U.S.C. § 1104(a) ................................................................................................48

Fed. R. Civ. P. 9(b) ........................................................................................*passim*

Fed. R. Civ. P. 12(b) .............................................................................................65

Other Authorities

Alan M. Ahart, *The Limited Scope of Implied Powers of a Bankruptcy Judge: A Statutory Court of Bankruptcy, Not a Court of Equity*, 79 Am. Bankr. L.J. 1 (2005)........................................5

Marcia Krieger, *"The Bankruptcy Court is a Court of Equity": What Does that Mean?*, 50 S.C. L. Rev. 275 (1999) ........................................................................................................5

Robert Miller, *Nothing New: Consent, Forfeiture, and Bankruptcy Court Final Judgments*, 65 Drake L. Rev. 89 (2017) ........................................................................................................7

The Hongkong and Shanghai Banking Corporation Limited ("**HSBC-HK**"), by and through its counsel, respectfully submits this reply brief in support of its Motion to Dismiss [Adv. Pro. No. 18-01575-JLG, ECF No. 31] ("**Motion**" or "**Mot.**") the First Amended Complaint dated March 8, 2019 [Adv. Pro. No. 18-01575-JLG, ECF No. 27] (corrected version filed April 18, 2019 [Adv. Pro. No. 18-01575-JLG, ECF No. 34]) (the "**First Amended Complaint**" or "**FAC**"), filed by William A. Brandt, Jr., the chapter 11 trustee (the "**Trustee**") for CFG Peru Investments Pte. Ltd. (Singapore) ("**CFG Peru**").

## PRELIMINARY STATEMENT

1.      The Trustee has failed to answer a fundamental question regarding the First Amended Complaint: why does this action belong in a United States court?  In its Motion, HSBC-HK identified several reasons why the FAC should be dismissed and any action should proceed in Hong Kong:  *forum non conveniens* (because none of the facts, witnesses or foreign law causes of action have any connection to the United States); international comity (because the Hong Kong courts have taken a strong interest in this matter); and lack of personal jurisdiction (because filing proofs of claim did not give rise to jurisdiction over HSBC-HK for all purposes). Instead of articulating a valid connection to the United States, the Trustee only reinforces the case for dismissal, submitting nearly 700 pages of expert reports and exhibits on foreign law, demonstrating that foreign law issues—and Hong Kong law in particular—dominate this dispute. Rather than wade into this thicket of foreign law, the Court should dismiss the action and allow the Trustee to proceed in Hong Kong, where this dispute belongs.

2.      Should the Court nonetheless consider the substance of the Trustee's allegations, it should dismiss the First Amended Complaint on the merits.  As a threshold matter, given the amount of discovery he has already taken and his access to information across the Debtors, the Trustee is not entitled to a "relaxed" pleading standard and must satisfy the strictures of Rule

1

9(b), which he has failed to do.  Moreover, his claims are based on lawful petitioning activity subject to dismissal under the Noerr-Pennington doctrine, which numerous courts have held applies to activity before foreign courts, and are not covered by the narrow "sham exception" to the doctrine.

3.      Turning to the individual counts of the FAC, the Peruvian law claims (Counts One and Two) are time-barred, and section 108 of the Bankruptcy Code does not revive untimely foreign law claims that foreign courts themselves would not recognize.  The claims fare no better on the merits.  As for Hong Kong law, the Trustee—recognizing that damages from an *ex parte* order can only be sought from an applicant's undertaking to the Hong Kong courts, and none was required here—argues that this Court should nonetheless rule that HSBC-HK gave an "implied" undertaking.  However, as explained by former Hong Kong judge Anthony Rogers, there is no such thing as an "implied" undertaking except in limited circumstances not remotely applicable here.  Nor is there an independent tort available to the Trustee in connection with the appointment of joint provisional liquidators.  Indeed, the Trustee's own foreign law declarant concedes he has never seen such a cause of action brought outside of Hong Kong, yet the Trustee asks this Court to be the first to allow it.  The Trustee's attempt to transform the cause of action he pleaded in the FAC—breach of duty causing loss (Count Three)—into a different tort is an implicit concession that the claim actually pleaded is not viable.  In any event, the tort he replaces it with—the general duty to act in good faith—is not recognized in Hong Kong, and the Trustee likewise fails to allege the elements of the tort of unlawful interference (Count Four) because HSBC-HK's actions were neither unlawful nor intended to cause harm.

4.      The Trustee does not even respond to HSBC-HK's argument that his tortious interference claims under U.S. law (Counts Five and Six) must be dismissed because applicable choice of law principles require the application of Hong Kong law.

5.      Finally, the Trustee's claims for equitable subordination and equitable disallowance (Count Seven) fail because the Trustee lacks standing to bring such claims.  He is not an estate fiduciary for other Debtors; he has not sought derivative standing; and CFG Peru has not suffered a particularized injury that would allow him to obtain standing if he tried. Moreover, the facts alleged by the Trustee fail to satisfy the elements of the prevailing test for equitable subordination and, in this jurisdiction, there is no such thing as a claim for equitable disallowance.

6.      This action does not belong here, and the claims are not viable in any event.[1]

## ARGUMENT

## I.    The Trustee Has Not Met His Burden of Establishing Subject Matter Jurisdiction

7.      The Trustee barely responds to HSBC-HK's argument that the FAC is silent about satisfaction of 11 U.S.C. § 109(a).  Instead, he focuses almost entirely on whether the Court has jurisdiction over his claims because they are either core or they are "related to" the bankruptcy cases.  [Trustee's Opposition to HSBC-HK's Motion to Dismiss [Adv. Pro. No. 18-01575-JLG, ECF No. 36] ("**Opposition**" or "**Opp.**") ¶ 42.]

8.      With regard to satisfaction of 11 U.S.C. § 109(a), other than citing to a first-day declaration that makes the conclusory statement—without providing further support—that "the

---

[1] In his Opposition, the Trustee violated an order of the Hong Kong Court (as defined below) by purporting to characterize the original decision dismissing the HK JPLs. [*E.g.*, Opp. ¶ 6.]  The Trustee had commenced a proceeding before that Court seeking permission to use the decision in this litigation, and the Court denied the Trustee's application.  HSBC-HK has asked the Hong Kong Court to enjoin the Trustee from further violating its ruling—a violation compounded by the Trustee's inaccurate and self-serving characterization of the original decision dismissing the HK JPLs.

Debtors have property located in this judicial district." [Opp. ¶ 44 n.73.]  However, the Trustee

has not pointed to any statement in the FAC alleging, or other factual support showing, what

property, if any, *CFG Peru* actually had in the United States at the time it commenced its

bankruptcy proceeding.[2]  Nor does the Trustee provide any authority for his assertion that

HSBC-HK cannot raise this argument on a motion to dismiss and instead "should submit that

application separately." [Opp. ¶ 44.]  The Trustee has the burden to affirmatively establish this

Court's subject matter jurisdiction over each of his claims, *Makarova v. United States*, 201 F.3d

110, 113 (2d Cir. 2000), and he has failed to do so.

9.      As for the Trustee's argument about whether his claims are core or "related to"

the bankruptcy cases, he appears to concede—as he must—that HSBC-HK did not file proofs of

claim against CFG Peru, and thus the causes of action in the FAC cannot properly be

characterized as counterclaims that come within the ambit of a core proceeding.  [Opp. ¶¶ 42–

43.]  He then provides a string cite of cases defining "related to" jurisdiction without offering

any argument or detail as to how those cases apply to his claims.  Accordingly, the Trustee has

failed to carry his burden of establishing this Court's jurisdiction.

---

[2] The Trustee also asserts that section 109(a) is "irrelevant" to the question of jurisdiction.  [Opp. ¶ 44.]
However, the case he cites in support pertains to a different provision, section 109(h) [Opp. ¶ 44 (citing *Adams v.
Zarnel (In re Zarnel)*, 619 F.3d 156, 168 (2d Cir. 2010))] , and does not address section 109(a), which circumscribes
"the classes of cases a [bankruptcy] court may entertain" under chapter 11, *see Fort Bend Cty. v. Davis*, 139 S. Ct.
1843, 1848 (2019) (describing subject matter jurisdiction).  Section 109(h), which requires a debtor to undergo
credit counseling before filing, is irrelevant to the present dispute.  Section 109(a) is relevant, and the FAC does not
adequately allege it was satisfied.  Moreover, numerous courts have described section 109(a) as jurisdictional.  *See,
e.g.*, *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 552 (Bankr. S.D.N.Y. 2017) ("Both the retainer and the Euro
Notes (governed by New York law) are independently sufficient bases for jurisdiction." (internal quotation marks
omitted)); *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 654 (Bankr. S.D.N.Y. 2016) (considering
"whether the debtor has sufficient property present in the United States to form the basis for jurisdiction"); *In re B.
D. Int'l Disc. Corp.*, 15 B.R. 755, 765 n.28 (Bankr. S.D.N.Y. 1981) (describing section 109(a) and other provisions
as "jurisdictional predicates").

## II.    The Court Lacks Personal Jurisdiction Over HSBC-HK with Respect to the Trustee's Claims

10.    The Trustee does not dispute that personal jurisdiction is an "essential element" of the jurisdiction of a district court,[3] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999), or that he "bears the burden of pleading and proving that this Court has jurisdiction over HSBC-HK" with respect to **each** claim in his First Amended Complaint.  [Mot. ¶ 42.]

11.    Apparently recognizing there is no basis for general or specific personal jurisdiction over HSBC-HK, the Trustee continues to insist that "creditors claiming estate assets in chapter 11 cases subject themselves to the bankruptcy court's **personal** jurisdiction."  [Opp. ¶ 45.]  While the Trustee claims this proposition is "axiomatic," noticeably absent among the cases he cites in support is any decision by the Supreme Court or Second Circuit.[4]  That is because neither court has directly addressed whether the submission of a proof of claim by a creditor (especially a foreign creditor) submits the creditor to the jurisdiction of the bankruptcy court for purposes of adjudicating a claim asserted *against the creditor*.  *Cf. Luan Inv. S.E. v.*

---

[3] While several decades-old Supreme Court cases refer to a bankruptcy court's "equitable jurisdiction" or "equitable powers," more recent decisions largely eschew this language and call into doubt the utility of those constructs given the contemporary understanding of bankruptcy courts as a creation of statute, and bankruptcy judges as units of the district courts.  As Judge Marcia Krieger has explained about the notion that "the bankruptcy court is a court of equity," the oft-repeated phrase was a product of a "historical mistake" in early twentieth century precedent that had become "judicial lore."  *See* Marcia Krieger, *"The Bankruptcy Court is a Court of Equity": What Does that Mean?*, 50 S.C. L. Rev. 275, 299–300 (1999); *see also* Alan M. Ahart, *The Limited Scope of Implied Powers of a Bankruptcy Judge: A Statutory Court of Bankruptcy, Not a Court of Equity*, 79 Am. Bankr. L.J. 1, 1 (2005) ("a bankruptcy judge has scant prerogative to invoke inherent powers, formulate federal common law or imply private rights of action under the Bankruptcy Code, and *no* general equitable power").  Whatever "equitable jurisdiction" means today, it is not the same thing as personal jurisdiction.

[4] The Trustee relies on a statement made by the District Court in ruling on HSBC's motion for leave to appeal this Court's order granting Rule 2004 discovery that "the filing of a proof of claim waives an individual's due process rights . . . ."  [Opp. ¶ 45 & n.75.]  However, the only issue before the District Court was the propriety of Rule 2004 discovery—not the existence of personal jurisdiction over HSBC-HK for all purposes.  The District Court's comments beyond the Rule 2004 issue—made without the benefit of any hearing or oral argument—were *dicta* and made without citation to any controlling case law.  The Trustee also once again inaccurately portrays the Second Circuit's actions with respect to the Rule 2004 Order (as defined below).  Having previously falsely claimed it "reject[ed]" HSBC-HK's appeal [FAC ¶ 18], he now claims the court of appeals "ratified" the District Court's decision, when it actually dismissed for lack of appellate jurisdiction.  [Opp. ¶ 13.]

*Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 231 (2d Cir. 2002) ("Luan argues that it did not consent to determination of its claim in bankruptcy court because it was forced either to file a proof of claim or risk losing its claim against the debtors. . . .  However, we need not decide whether filing the proof of claim was alone sufficient to invoke the bankruptcy court's jurisdiction in this case . . . .").[5]

12.    However, the core principles and logic of existing, controlling case law strongly support HSBC-HK's view that the filing of its Proofs of Claim did not subject it to personal jurisdiction in this Court with respect to the Trustee's claims against it.[6]  Once this chapter 11 proceeding was allowed to proceed—despite the almost non-existent connection of the Debtors to the United States—the submission of HSBC-HK's Proofs of Claim was effectively

---

[5] Courts have observed that the filing of a proof of claim "triggers the process of allowance and disallowance of claims." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (quotations, citation omitted); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58−59 (1989); *Katchen v. Landy*, 382 U.S. 323, 327−28 (1966); *First Fid. N.A., N.J. v. Hooker Invs. Inc. (In re Hooker Invs. Inc.)*, 937 F.2d 833, 838 (2d Cir. 1991) ("[A] creditor who invokes the bankruptcy court's equitable jurisdiction to establish a claim against a debtor's estate is also subject to the procedures of equity in the determination of preference actions brought on behalf of the estate."). However, none of these cases resolved the legal question of the jurisdictional effect of a foreign corporation's filing of a proof of claim. Those cases also predate more recent Supreme Court decisions which highlight the concern with efforts to turn the United States into a forum for adjudicating alleged wrongdoing unrelated to the United States. *See, e.g., Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). In any event, these cases at most address jurisdiction over Count Seven, not over any of the Trustee's non-bankruptcy claims.

[6] "Jurisdiction is the power to declare the law." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (citation and quotation omitted). "A court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *McIntyre*, 564 U.S. at 880 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of it laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014).

"[C]onstitutional due process principles generally restrict the power of a state to endow its courts with personal jurisdiction over foreign corporate parties—that is, entities neither organized under the state's laws nor operating principally within its bounds—with regard to matters not arising within the state." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016); *see also Daimler*, 571 U.S. at 139; *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

compelled and therefore involuntary.  HSBC-HK's Proofs of Claim had to be submitted (and by

the deadline specified by the Court), or HSBC-HK's legal right to repayment would be forfeited

in the United States, *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) ("If a

creditor chooses not to submit a proof of claim, once the debts are discharged, the creditor will

be unable to collect on his unsecured loans.")—and very likely in any jurisdiction outside of the

United States.  *See Stern v. Marshall*, 564 U.S. 462, 493 (2011) ("Pierce did not truly consent to

resolution of Vickie's claim in the bankruptcy court proceedings.  He had nowhere else to go if

he wished to recover from Vickie's estate."); *id.* at n.8 ("Creditors who possess claims that do

not satisfy the requirements for nondischargeability under 11 U.S.C. § 523 have no choice but

to file their claims in bankruptcy proceedings if they want to pursue the claims at all.  That is

why . . . the notion of 'consent' does not apply in bankruptcy proceedings as it might in other

contexts.").

13.    Admittedly, *Stern's* holding addressed an issue other than personal jurisdiction.

The Trustee dismisses *Stern* on that basis.  [Opp. ¶ 51.]  But the Supreme Court's clear

observations regarding the non-consensual nature of filing a proof of claim under threat of a bar

date should not be ignored.  A fair reading of *Stern* makes clear "[t]he Supreme Court finally

divorced the filing of a proof of claim from implied consent."  Robert Miller, *Nothing New:*

*Consent, Forfeiture, and Bankruptcy Court Final Judgments*, 65 Drake L. Rev. 89, 146 (2017).

14.    Closing his eyes to the Supreme Court's observations in *Stern*, the Trustee fails to

grapple with the substance of HSBC-HK's explanation why the filing of a proof of claim, by

itself, is not voluntary submission to the personal jurisdiction of the Court, or to respond in any

way to HSBC-HK's related unconstitutional conditions argument.  [Mot. ¶¶ 47–48.][7]

### III.    This Adversary Proceeding Lacks Any Meaningful Connection to the United States and Should Be Dismissed on the Basis of *Forum Non Conveniens*

15.    This is a textbook example of a case that should be dismissed based on *forum non*

*conveniens*.  As HSBC-HK addressed in detail [Mot. ¶¶ 50–68], this action lacks any

meaningful connection to the United States:  all alleged conduct occurred outside the United

States; the plaintiff, defendant, and all relevant witnesses are located abroad; contested issues of

foreign law control the Trustee's claims; and Hong Kong is an adequate alternative forum.  The

Trustee fails to respond to most of these points, and the few arguments he raises are unavailing.

A.    *The Trustee's Decision to Sue in the United States Is Not Entitled to Any Deference*

16.    As HSBC-HK has shown [Mot. ¶¶ 53–57], the Trustee's choice of a United States

forum is entitled to no deference.  The Trustee fails even to address the "forum shopping"

factors listed by the Second Circuit in *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d

146, 155 (2d Cir. 2005), all of which counsel in favor of dismissal.  [Mot. ¶ 55.]  Instead, the

Trustee argues that his choice of forum is entitled to deference because this Court appointed

him to maximize the value of the Peruvian Business, and because he is proceeding with this

lawsuit in the same court in which the chapter 11 cases are pending.  [Opp. ¶ 59.]  He is wrong

about both of these points.

---

[7] The Trustee's Opposition cites no controlling authority supporting his specious claim that this Court can exercise personal jurisdiction over HSBC-HK because its counsel entered notices of appearance and "requested affirmative relief . . . including sustaining its objection to the retention of . . . Quinn Emanuel."  [FAC ¶ 18; Opp. ¶ 52.]  Moreover, even the district court cases cited by the Trustee are off the mark.  For example, the Trustee quotes from *Deak & Co., Inc. v. R.M.P. Soedjono (In re Deak & Co.)*, 63 B.R. 422, 432–33 (Bankr. S.D.N.Y. 1986), but fails to mention that—unlike HSBC-HK here—the defendant in that adversary proceeding "never voiced his objection to this court's jurisdiction."

17.     *First*, the fact that the Trustee was appointed by this Court is irrelevant.  The Trustee represents an entity incorporated in Singapore with its principal place of business outside the United States.  [Mot. ¶ 54.]  The deference accorded to U.S. plaintiffs who bring lawsuits in their home jurisdiction does not apply to court-appointed representatives of foreign debtors.  *See, e.g.*, *Nat'l Bank of Anguilla (Private Banking Tr.) Ltd. v. Nat'l Bank of Anguilla (In re Nat'l Bank of Anguilla (Private Banking Tr.) Ltd.)*, 580 B.R. 64, 75–76, 85–86 (Bankr. S.D.N.Y. 2018) (finding that foreign representatives forum-shopped by filing adversary proceedings in the S.D.N.Y., even though the related bankruptcy petitions were pending in the same district); *see also VictoriaTea.com, Inc. v. Cott Beverages, Canada*, 239 F. Supp. 2d 377, 381 (S.D.N.Y. 2003) ("[T]he domestic forum choice of a 'nominally American plaintiff,' defined as subrogees, assignees, or representatives of foreign companies, is generally not given special deference." (citing *Pain v. United Techs. Corp.*, 637 F.2d 775, 797–98 (D.C. Cir. 1980))).

18.     *Second*, the Trustee's decision to file suit in the same jurisdiction in which the chapter 11 cases are pending does not immunize him from the forum shopping inquiry.  Courts have recognized that court-appointed trustees may be guilty of forum shopping when they select a forum with no connection to the underlying dispute—even where the main bankruptcy case is pending in the forum they select.  *See, e.g.*, *Nat'l Bank of Anguilla*, 580 B.R. at 86 ("[T]he choice of a New York venue was an exercise in forum shopping."); *Bancredit Cayman Ltd. v. Santana (In re Bancredit Cayman Ltd.)*, 2008 WL 5396618, at *8 (Bankr. S.D.N.Y. Nov. 25, 2008) ("[T]he plaintiffs' choice of this Court smacks of forum shopping.").[8]  This finding is

---

[8] *See also Seidel v. Ritter (In re Kinbrace Corp.)*, 2017 WL 1380524 (Bankr. S.D.N.Y. Apr. 17, 2017) (dismissing adversary proceeding commenced by foreign debtor for *forum non conveniens*); *I.E. Liquidation, Inc. v. Litostroj Hydro, Inc. (In re I.E. Liquidation, Inc.)*, 2009 WL 1586706 (Bankr. N.D. Ohio Mar. 18, 2009) (same); (….continued)

especially appropriate here, given that this Court previously stated that the chapter 11 cases

themselves were the product of forum shopping.  [*See* Trustee Dec. at 5.][9]

19.    *Finally*, the Trustee's reliance on *Lyondell* is misplaced given that case's strong

connection to the United States and the complete absence of any such connection here.

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 543 B.R. 428 (Bankr. S.D.N.Y. 2016).  In

*Lyondell*, only four of the complaint's 21 counts related to foreign law (*id.* at 434), and the court

stated that "U.S. interests predominate," noting that the relevant entities had "substantial

operations in Texas," that the corporate defendants had "operations in New York," and that the

individual defendants resided in New York or elsewhere in the United States.  *Id.* at 459.

Indeed, the *Lyondell* court expressly found "no evidence of forum shopping" by the litigation

trustee.  *Id.* at 458.  In sharp contrast, four of the seven counts of the FAC are pled under foreign

law—including Hong Kong law issues that the Trustee's foreign law declarant acknowledges

would require this Court to break new ground under Hong Kong law [*see, e.g.*, Francis Decl.

¶¶ 101–03]—and the U.S. law counts consist entirely of allegations regarding foreign law

violations and activities outside the United States.  HSBC-HK has no operations in New York,

and none of the witnesses reside in the United States.  This Court previously stated that the

chapter 11 cases lack any meaningful connection to the United States.  The hallmarks of forum

shopping are thus manifestly present here.

---

(continued….)

*Official Comm. of Unsecured Creditors v. Transpacific Corp. Ltd. (In re Commodore Int'l, Ltd.)*, 242 B.R. 243
(Bankr. S.D.N.Y. 1999) (same), *aff'd on other grounds*, 2000 WL 977681 (S.D.N.Y. July 17, 2000).

[9] The Trustee's suggestion that HSBC-HK is the party "motivated by forum shopping" is nonsensical.
[Opp. ¶ 60.]  Unlike the Debtors, HSBC-HK did not choose to commence proceedings in New York.  To the
contrary, HSBC-HK brought litigation against certain Debtors in Hong Kong which resulted in the Deed of
Undertaking.  HSBC-HK would have pressed for enforcement of the Deed of Undertaking in the Hong Kong courts,
as was its right, if the Debtors had not filed for bankruptcy in the United States.  [*See* Trustee Dec. at 5, 30; *see also*
Reasons for Decision ¶ 16.]  HSBC-HK filed the Proofs of Claim in New York because that is the only court in
which such proofs of claim could be filed.

B.    *Hong Kong Is an Adequate Alternative Forum*

20.    Hong Kong is unquestionably an adequate alternative forum.  [*See* Mot. ¶ 58

(observing that Hong Kong is an adequate alternative because HSBC-HK is "amenable to

service of process there and the forum permits litigation of the subject matter of the dispute")

(quoting *In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of

Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002)).]  In fact, "'Hong Kong has uniformly been

considered an adequate alternative forum for commercial disputes.'"  [Mot. ¶ 59 (quoting *Yung

v. Lee*, 2002 WL 31008970, at *2 (S.D.N.Y. Sept. 5, 2002), *aff'd in relevant part*, 432 F.3d 142

(2d Cir. 2005)).]

21.    The Trustee does not dispute that Hong Kong satisfies the requirements for an

adequate alternative forum, so this factor is conceded.  Instead, the Trustee argues that

commencing legal action in Hong Kong would be "duplicative" of a proceeding before this

Court, which will adjudicate HSBC-HK's Proofs of Claim.  [Opp. ¶ 61.]  The Trustee is

presumably referring to the equitable subordination claim—just one count among the seven

counts of the FAC.  The Trustee's attempt to bootstrap a complex foreign law litigation to a

count for equitable subordination should be rejected.[10]

22.    As a threshold matter, the Trustee's equitable subordination claim fails

independently on its merits [*see infra*, ¶¶ 103–139], so the Trustee's sole basis for such

---

[10] The presence of U.S. law claims does not stand in the way of dismissal for *forum non conveniens*.  *Nat'l Bank of Anguilla*, 580 B.R. at 87 ("[E]ven a colorable federal claim [will not prevent] consideration by the court of a *forum non conveniens* dismissal"); *CCS Int'l, Ltd. v. ECI Telesystems, Ltd.*, 1998 WL 512951, at *11 (S.D.N.Y. 1998) (dismissing complaint for *forum non conveniens* even though "New York law may apply to some of plaintiffs' claims, [because] Israeli law will govern the bulk, if not all, of them").  This is true even if the Trustee cannot obtain the same relief in Hong Kong.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) (affirming dismissal for *forum non conveniens* even though alternate forum would not recognize strict liability claims); *LaSala v. TSB Bank, PLC*, 514 F. Supp. 2d 447 (S.D.N.Y. 2007) (dismissing entire complaint on *forum non conveniens* grounds where four counts of the complaint were not cognizable in Swiss forum); *Nat'l Bank of Anguilla*, 580 B.R. 64 (granting *forum non conveniens* motion to dismiss where alternative forum did not recognize claim for constructive fraudulent transfer).

bootstrapping will be eliminated.  Moreover, this Court ultimately may not need to adjudicate

the Proofs of Claim, which are contingent claims that only become relevant if the Trustee fails

to enter into a transaction that exceeds what he has called the CFG Peru Sale Threshold—a

result the Trustee has said repeatedly he wishes to avoid.  [*See, e.g.*, Chapter 11 Trustee Motion

for Order (i) Approving the Settlement Agreement Netting Certain Intercompany Claims

Between CFG Peru Singapore and CFGI, and Between CFG Peru Singapore and SFR, (ii)

Authorizing Corporate Governance Actions, and (iii) Granting Related Relief, No. 16-11895,

ECF No. 1489 ¶ 14 ("The [Trustee] anticipates that third party creditors of the Peruvian OpCos

will be paid in full in cash as part of the [sale of the Peruvian OpCos].").]  Even if it is one day

necessary to adjudicate HSBC-HK's Proofs of Claim, it is appropriate for this Court to rely on

the Hong Kong courts to make determinations as to causes of action involving Hong Kong law,

and to use those findings to determine whether HSBC-HK's claims should be subordinated,

rather than wading into the thicket of foreign law presented by the FAC.

      C.     *The Public and Private Interests Uniformly Favor Litigation in Hong Kong*

     23.    As HSBC-HK noted in its Motion, the public and private interest factors also

overwhelmingly support dismissal of this proceeding in favor of litigation in Hong Kong.  [Mot.

¶¶ 60–67.]  The Trustee's discussion of the relevant factors is flawed and incomplete.

      i.    <u>The Public Interest Factors Favor Dismissal</u>

     24.    As HSBC-HK has established, the "public interest factors," designed to capture

each jurisdiction's interest in the dispute, uniformly support litigation in Hong Kong.  [Mot.

¶¶ 61–64 (noting, *inter alia*, that:  (1) this is a Hong Kong dispute that should be settled before

the Hong Kong courts; (2) complicated questions of foreign law control the outcome; and (3)

there is no connection to the United States at all).]  The courts of Hong Kong have an

extraordinary interest here because the dispute is based on alleged misconduct before the Court

of First Instance of the High Court of Hong Kong (the "**Hong Kong Court**"), turns on whether

HSBC-HK provided an undertaking in damages to the Hong Kong Court, and involves the

conduct of officers of the Hong Kong Court.  [FAC ¶¶ 2–5.]  Indeed, the Hong Kong Court

itself has already expressed dismay that the chapter 11 cases were filed at all.  [*See* Adv. Pro.

No. 18-01575-JLG, ECF No. 32-3, Reasons for Decision, China Fishery Group Ltd, HCMP

134/2018, [2019] HKCFI 174, [2019] HKEC 151 (the "**Reasons for Decision**") ¶ 16.]

Moreover, HSBC-HK's alleged misrepresentations to the Hong Kong Court related to possible

fraudulent activity by certain Debtors, which occurred in Hong Kong and remains under

investigation by various parties, including the liquidators appointed in the BVI proceedings.[11]

25.    Of the four factors discussed by HSBC-HK in the Motion,[12] the Trustee responds

to exactly one in his Opposition:  "court congestion."  [Opp. ¶ 66 ("HSBC[-HK] similarly has

failed to carry its burden of showing that court congestion weighs in favor of dismissal.").]  The

Trustee offers (1) no support for his statement, (2) no suggestion that this Court is *less busy* than

the courts of Hong Kong, and (3) no explanation of why any one factor—least of all court

congestion, which is often ignored—should control the outcome here.  *See, e.g.*, *Hosking v.*

*TPG Capital Mgmt., LP (In re Hellas Telecomms. (Luxembourg) II SCA)*, 555 B.R. 323, 348

(Bankr. S.D.N.Y. 2016) (dismissing based on *forum non conveniens* without mentioning court

congestion).

26.    If anything, the Trustee's Opposition has only underscored why at least one

public interest factor—disputed and controlling questions of foreign law—weighs heavily in

---

[11] [*See, e.g.*, Declaration of Nicholas James Gronow, No. 16-11895, ECF No. 1572, Exs. 4 & 5.]

[12] The public interest factors include: "(1) the preference for settling local disputes in a local forum; (2) the difficulty with the application of foreign law; (3) conserving judicial resources and avoiding burdens on local citizens; and (4) administrative difficulties related to court congestion."  [Mot. ¶ 61 (citing *Nat'l Bank of Anguilla*, 580 B.R. at 89–90).]

13

favor of dismissal. The Trustee submitted a lengthy foreign law declaration and hundreds of

pages of exhibits with regard to Hong Kong law from a Hong Kong-based lawyer.[13] To the

extent there was any doubt about this dispute's overwhelming connection to Hong Kong and its

legal system, the Trustee has resolved it.

        ii.     <u>The Private Interest Factors Favor Dismissal</u>

27.     In addition, HSBC-HK has established that the "private interest factors," designed

to compare the hardships that would result from litigating in the alternative forum, favor

litigation in Hong Kong. [Mot. ¶¶ 65–68 (noting, *inter alia*, the location of evidence in Hong

Kong and witnesses in Hong Kong and other locations abroad).] These factors demonstrate that

litigating this matter in New York would be inconvenient and wasteful for all parties relative to

litigation in Hong Kong, and the Trustee fails to show otherwise.[14]

28.     The Trustee alleges that "[a]ccess to evidence does not present an obstacle" to this

matter proceeding in the United States. [Opp. ¶ 63.] But relative ease of access to evidence

weighs in favor of a Hong Kong forum. Of the 22 individuals mentioned by name in the FAC,

at least 15 appear to have worked in Hong Kong or elsewhere in Asia, and the FAC does not

allege that any are present in the United States. [Mot. ¶ 66 n.15.] Restrictions in Hong Kong on

the mobility of documents will also impede discovery in the United States but not in Hong

Kong, which the Trustee implicitly recognized by designating his counsel's Hong Kong office

---

[13] If unsettled points of Hong Kong law are relevant to the resolution of this case, as Mr. Francis suggests, that factor weighs heavily in favor of dismissal. [*See, e.g.*, Francis Decl. ¶¶ 101–03 (given lack of binding Hong Kong precedent, interpretation of "unlawful means" will be determined by court's chosen degree of deference to English precedent).] *See LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 234 (S.D.N.Y. 2007) (dismissing case for *forum non conveniens* where legal experts disagreed about critical points in the application of Swiss law, finding that this was a "powerful factor weighing in favor of dismissal").

[14] The private interest factors include: "(1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive." [Mot. ¶ 65 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73–74 (2d Cir. 2001)).]

to receive the Rule 2004 productions.  [No. 16-11895, ECF No. 710 ("**Notice of Rule 2004 Subpoena**") at 2.]

29.    Witness transportation costs also support adjudication in Hong Kong.  Although the Trustee claims that "no single forum would be convenient for all witnesses" [Opp. ¶ 63], the United States is not convenient for *any* witness, and the Trustee identifies *no potential witnesses with any connection to the United States whatsoever*.  The Trustee's claim that "all necessary witnesses are within [the Court's] reach" is also untrue.  [Opp. ¶ 64.]  The Trustee's Opposition identifies potential witnesses in Hong Kong, Peru, and the United Kingdom, and there is no apparent basis to compel any of these witnesses to appear in New York, which the Trustee implicitly acknowledges when he notes that Ms. Ng appeared voluntarily before this Court (more than two years ago) and speculates that others "*may* appear voluntarily."  [Opp. ¶ 64 (emphasis added).]

30.    Finally, the Trustee claims that litigation in Hong Kong will cause "considerable added expense" for him compared to litigating before this Court.  [Opp. ¶ 65.]  As an initial matter, this hardship is entirely self-created—CFG Peru elected to file for bankruptcy in the United States, thousands of miles from where the events that gave rise to this litigation occurred.  In any event, the Trustee is already litigating against HSBC-HK in Hong Kong (he has chosen to appeal the Reasons for Decision) and is represented by counsel there.  Further, the Trustee regularly conducts creditor meetings in Hong Kong, and even his United States counsel received the relevant Rule 2004 discovery in Hong Kong.  [*See* Notice of Rule 2004 Subpoena, at 2.]  The marginal added expense, if any, of litigating this matter in Hong Kong does not justify keeping this litigation here.

15

31.    In sum, the Trustee fails to rebut HSBC-HK's showing that all the factors relevant

to the *forum non conveniens* analysis indisputably weigh in favor of dismissal.  The Court

should dismiss this matter in favor of adjudication in Hong Kong.

## IV.    Principles of International Comity Dictate Dismissal Notwithstanding the Lack of a Pending Foreign Insolvency Proceeding

32.    The Trustee contends HSBC-HK's international comity argument fails because

there are no parallel foreign insolvency proceedings pending, claiming "[t]hat fact alone is fatal

to HSBC's comity argument and renders its authorities inapposite."  [Opp. ¶ 55.][15]    The Trustee

misstates the issue.  The question posed here is not about which of two competing insolvency

proceedings should take precedence.  It is about which court should adjudicate a complaint in

which the Trustee has asserted non-bankruptcy claims against HSBC-HK.  Properly framed,

principles of comity strongly dictate that the issues raised in the FAC should be decided by the

Hong Kong Court.

33.    The Supreme Court has "long recognized the demands of comity in suits

involving foreign states, either as parties or as *sovereigns with a coordinate interest in the*

*litigation.*"  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,

482 U.S. 522, 546 (1987) (emphasis added).  American courts should "demonstrate due respect"

for "any sovereign interest expressed by a foreign state."  *Id.*  Because in this case the Trustee's

claims relate to alleged acts and omissions by HSBC-HK in seeking the appointment of joint

---

[15] The Trustee's supposed support for this sweeping assertion comes from a footnote where a district court hypothesized that "comity concerns would clearly come into play" in a bankruptcy case if a foreign insolvency proceeding were pending.  *GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes, S.A. (In re Globo Comunicacoes e Participacoes S.A.)*, 317 B.R. 235, 253 n.13 (S.D.N.Y. 2004).  He also cites a case describing foreign bankruptcy proceedings as "*one discrete category* of foreign litigation that generally requires the dismissal of parallel district court actions."  *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92–93 (2d Cir. 2006) (emphasis added).  These cases merely suggest the pendency of a foreign insolvency proceeding is sufficient, but not necessary, to trigger comity concerns.

16

provisional liquidators ("**JPLs**") and, later, in agreeing to a settlement to resolve that litigation

(the "**Deed of Undertaking**"), [Mot. ¶ 72], the Hong Kong Court has a sovereign interest here.

This is especially so because the Trustee's theory of liability turns largely on the question of

whether a duty owed by HSBC-HK *to the Hong Kong Court* was violated.[16]  *Cf. Schuler v.*

*Rainforest Alliance, Inc.*, 684 F. App'x 77, 79 (2d Cir. 2017) (summary order) (affirming

dismissal on international comity grounds where plaintiffs "essentially ask[ed] an American

court to overrule the Mexican courts' judgment"); *Jhirad v. Ferrandina*, 536 F.2d 478, 484–85

(2d Cir. 1976) ("It is not the business of our courts to assume the responsibility for supervising

the integrity of the judicial system of another sovereign nation.").

34.     Further, as this Court is well aware, the Deed of Undertaking that resolved the

JPL proceedings (a) was "governed by Hong Kong law and contain[ed] an exclusive Hong

Kong jurisdiction clause" and, (b) by its terms, specifically contemplated the potential

resumption of those proceedings in the event the Debtors breached the Deed of Undertaking.

[Reasons for Decision ¶ 7; Trustee Dec. at 24.]  The Debtors "deliberately breached all aspects"

of the Deed of Undertaking by filing the chapter 11 cases in the United States.  [Trustee Dec. at

36.]  The Hong Kong Court has stated that it would have been a matter of local jurisprudence

"to determine how to deal with [CFGL and CFIL's] failure to honour the Deed and new

winding-up proceedings" had the chapter 11 cases not been filed.  [Reasons for Decision ¶ 34.]

Accordingly, to grant "due respect" to the Hong Kong Court, this Court should take account of

_____

[16] Throughout the First Amended Complaint, the Trustee alleges that HSBC-HK "breached its duty of candor to the Hong Kong Court."  [FAC ¶ 135 (Count One, alleging that HSBC-HK's breach of this obligation to the Hong Kong Court subjects it to liability under *Peruvian* law); *see also, e.g.*, *id.* at ¶¶ 159–61 (Count Three), 174 (Count Four), 183 (Count Five), 191 (Count Six), and 200 (Count Seven).]  The applicability of such a duty and the extent to which a breach occurred are fundamentally matters of Hong Kong law, which provides that (a) an *ex parte* applicant's obligation of full and frank disclosure is owed specifically to the court to which the application was made and (b) redress for breach of that obligation is available only in that court, pursuant to specific procedures. [Rogers Decl. ¶¶ 16–20, 31.]

the Hong Kong Court's "position with regard to the maintenance of this litigation in a United

States forum." *Jota v. Texaco, Inc.*, 157 F.3d 153, 160–61 (2d Cir. 1998). In this context, it is

appropriate for the Court to decline to hear an action that seeks to review the facts of the Hong

Kong proceedings—particularly for the purpose of adjudicating the Trustee's non-bankruptcy

claims.

35.     To be sure, the existence of a foreign proceeding is a factor in applying principles

of comity. *See In re Picard*, 917 F.3d 85, 101 n.10 (2d Cir. 2019) (stating that "the existence of

parallel proceedings can factor into" comity analysis). However, that factor militates *in favor* of

dismissal based on comity here, given the significant activity that has taken place (and

continues to take place) in the Hong Kong Court in relation to this dispute. In this case,

insolvency proceedings were previously pending in Hong Kong and very likely would have

resumed had the chapter 11 filings here not blocked the Hong Kong Court from reinstating the

JPLs and the attendant winding-up proceedings in accordance with the terms of the Deed of

Undertaking. Moreover, there is still litigation underway in the Hong Kong courts between the

Trustee and HSBC-HK. In recent months, the Trustee brought his own applications related to

those proceedings before the very same Hong Kong Court. [*See* Reasons for Decision.] And

last week, HSBC-HK returned to that Court to address violations of the Hong Kong Court's

prior orders in connection with the Trustee's applications. [*See supra*, ¶¶ 6 n.1, 30.]

36.     In any event, even if there were no relevant proceedings in Hong Kong, it would

be appropriate to apply the doctrine of comity "prospectively" to the FAC, as many courts have

done. *See Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1239–40 (11th Cir. 2004)

(dismissing on comity grounds in favor of prospective filing in special German tribunal); *see

also Jota*, 157 F.3d at 161 (stating that courts dismissing on comity grounds "should normally

consider whether an adequate forum exists in the objecting nation and whether the defendant

sought to be sued in the United States forum is subject to or has consented to the assertion of

jurisdiction against it in the foreign forum"); *Sequihua v. Texaco, Inc.*, 847 F. Supp. 61, 63–64

(S.D. Tex. 1994) (dismissing on adjudicative comity grounds where no parallel foreign action

was pending).  As set forth above [*see supra*, ¶¶ 24–26], Hong Kong issues predominate in this

litigation, rendering Hong Kong the most suitable forum to adjudicate this dispute.

37.    Finally, the Trustee contends international comity does not apply because there is

no "true conflict" of laws, such that "compliance with the laws of the United States, on one

hand, and those of either Hong Kong or Peru, on the other hand, would be impossible."  [Opp.

¶¶ 53, 55.]  However, the assertion that a conflict of this kind is required is flatly wrong.  In the

Second Circuit, a showing of "true conflict" is required for prescriptive comity, which involves

questions of statutory construction in light of conflicting foreign law, but not adjudicatory

comity, which is "a discretionary act of deference by a national court to decline to exercise

jurisdiction in a case properly adjudicated in a foreign state."  *In re Maxwell Commc'n Corp.*

*plc by Homan*, 93 F.3d 1036, 1047 (2d Cir. 1996); *see also Picard*, 917 F.3d at 101 ("Although

prescriptive and adjudicative comity sometimes demand similar analysis, each asks a different

question and is rooted in a different legal theory."); *In re Vitamin C Antitrust Litig.*, 837 F.3d

175, 185 (2d Cir. 2016) ("[W]e have not required a true conflict where a party does not invoke a

prescriptive comity defense, that is, where a party does not claim that it is subject to conflicting

regulatory schemes[.]" (alterations, quotations, citations omitted)), *vacated on other grounds*

*sub nom. Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865 (2018).

HSBC-HK raised adjudicatory comity in arguing this Court should defer to the courts of Hong

Kong, "which have a strong interest in adjudicating claims involving conduct arising out of

19

judicial proceedings in that jurisdiction." [Mot. ¶ 69.] The cases cited by the Trustee involve

only prescriptive comity and are thus distinguishable. [Opp. ¶ 53 (citing *Picard*, 917 F.3d at

102; *Maxwell*, 93 F.3d at 1047).]

38.    In sum, for all of the reasons stated above, principles of comity strongly favor

adjudication of the issues in the FAC by the Hong Kong Court, and the Trustee's assertions to

the contrary are misplaced.

## V.    The Trustee's Claims Are Impermissibly Based on Petitioning Activity Protected by the Noerr-Pennington Doctrine

### A.    *Noerr-Pennington Covers the JPL Applications*

39.    The Trustee contends the Noerr-Pennington doctrine does not protect petitioning

before a foreign court. [Opp. ¶ 69.] This conflicts with the majority view, typified by the Fifth

Circuit's decision in *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1366 (5th Cir.

1983), that Noerr-Pennington extends to foreign petitioning. [Mot. ¶¶ 76, 78.] Indeed, HSBC-

HK is not aware of an opinion rejecting the Fifth Circuit's reasoning in the 36 years since that

case was decided. [*See* Mot. ¶¶ 76, 78.][17] Nor does the Trustee attempt to distinguish two cases

cited by HSBC-HK that follow this approach.[18]

40.    The Trustee also resists the application of Noerr-Pennington by contending the

doctrine has its "roots in the First Amendment," which does not apply extraterritorially. [Opp.

¶¶ 69–72.] But even if the First Amendment does not apply extraterritorially, the cases

applying Noerr-Pennington to foreign petitioning by U.S. citizens do not turn on the

---

[17] *Cf. Associated Container Transp. (Australia) Ltd. v. United States*, 705 F.2d 53, 60 n.10 (2d Cir. 1983) (declining to consider issue and deciding case on other grounds).

[18] [*See* Mot. ¶ 78 (citing *Carpet Grp. Intl. v. Oriental Rug Imps. Ass'n*, 256 F. Supp. 2d 249, 266 (D. N.J. 2003) ("To the extent that Defendants sought political action from Pakistani officials, their actions were not illegal simply because they were petitioning foreign, rather than domestic, government officers."))]; *Coca-Cola Co. v. Omni Pac. Co.*, 1998 U.S. Dist. LEXIS 23277, *28–30 (N.D. Cal. Dec. 9, 1998) (rejecting argument that Noerr-Pennington does not apply to petitions to foreign governments).

constitutional rights of the petitioners.  These courts focus on the nature of the activity, not its

location or the citizenship of the petitioner, in determining whether Noerr-Pennington applies.

*See, e.g.*, *Coastal States*, 694 F.2d at 1366 ("We see no reasons why acts that are legal and

protected if done in the United States should in a United States court become evidence of illegal

conduct because performed abroad."); *Luxpro Corp. v. Apple Inc.*, 2011 WL 1086027, at \*5

(N.D. Cal. Mar. 24, 2011) (following *Coastal States* regarding petitioning by U.S. company in

Germany and Taiwan); *Carpet Grp. Intl. v. Oriental Rug Imps.*, 256 F. Supp. 2d 249, 266 (D.

N.J. 2003) (petitioning by U.S. company in Pakistan); *Coca-Cola Co. v. Omni Pac. Co.*, 1998

U.S. Dist. LEXIS 23277, \*28–30 (N.D. Cal. Dec. 9, 1998) (petitioning by U.S. company in

Taiwan).  It is thus irrelevant whether HSBC-HK has "a First Amendment Right to petition the

Hong Kong Court[.]"  [Opp. ¶ 69.]

41.    The Trustee also contends the doctrine "applies with greatest force to lobbying

activities and is more limited" in the context of adjudicative proceedings.  [Opp. ¶ 68 (citing

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 505 (1988)).]  But the

Supreme Court has applied the doctrine expansively in both contexts.  *See Prof'l Real Estate

Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57 (1993) (holding that objectively

reasonable effort to litigate is protected regardless of plaintiff's subjective intent); *see also Bath

Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 2000 WL 1508873, at \*1 (2d Cir. Oct. 11,

2000) (summary order) (stating that doctrine imposes "significant hurdles" for claims based on

"efforts to influence governmental action through litigation, lobbying, and the like").  And, as

Justice Gorsuch recently stated in a bankruptcy case, it is well settled that "petitioning a court

normally isn't an actionable wrong that can give rise to a claim for damages."  *Mission Prod.

Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1667 (2019) (Gorsuch, J., dissenting).

B.     *The Sham Exception Is Inapplicable to the Trustee's Allegations*

42.    The Trustee's attempt to bring his allegations within the "extremely limited"

sham exception to Noerr-Pennington is unavailing.  *Doron Precision Sys., Inc. v. FAAC, Inc.*,

423 F. Supp. 2d 173, 191 n.17 (S.D.N.Y. 2006).  Even taken at its word, the FAC does not meet

the Supreme Court's test for application of the sham exception.

43.    A plaintiff bears the burden of establishing the applicability of the sham

exception.  *See Prof'l Real Estate*, 508 U.S. at 62.  First, the plaintiff must establish the

petitioning was "objectively baseless in the sense that no reasonable litigant could realistically

expect success on the merits."  *Id.* at 60.  "[A]n objectively reasonable effort to litigate cannot

be sham regardless of subjective intent."  *Id.* at 57.  If the plaintiff establishes the lawsuit was

objectively meritless, the court will examine "the litigant's subjective motivation."  *Id.* at 60.

The inquiry here is whether the litigant "use[d] the governmental *process*—as opposed to the

*outcome* of that process—as an anticompetitive weapon," such that the petitioning was "not

genuinely aimed at procuring favorable government action *at all*."  *City of Columbia v. Omni

Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991) (quotation omitted) (third emphasis

added).  Put simply, if the defendant brought objectively baseless litigation and "acted *solely* to

damage" the plaintiff, the exception may apply.  *In re Elysium Health-Chromadex Litig.*, 354 F.

Supp. 3d 330, 339 (S.D.N.Y. 2019) (finding sham exception inapplicable where petitioner's

FDA citizen petition was "genuinely aimed at procuring the result it ultimately achieved")

(emphasis added).[19]

---

[19] The Trustee suggests the applicability of the sham exception is a factbound question that cannot be
resolved on a motion to dismiss.  [Opp. ¶ 75.]  "While various courts outside [the Second] Circuit have generally
regarded the applicability of the sham exception as a question of fact for the jury, a court may decide this issue as a
matter of law where there is no dispute over the predicate facts underlying the legal proceeding."  *Elysium Health*,
354 F. Supp. 3d at 336 (citations and quotations omitted).  Here, the Trustee's own allegations make clear the sham
exception does not apply, and the issue may be resolved by the Court.

44.    The FAC fails to plausibly allege that no reasonable litigant could have

realistically expected the applications for appointment of JPLs ("**JPL Applications**") to be

granted.  Indeed, both the Hong Kong and Cayman courts granted HSBC-HK's JPL

Applications.  The subsequent discharge of the JPLs does not render HSBC-HK's pursuit of this

remedy "objectively baseless."  *See Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 61

(2d Cir. 2016) (cautioning that "courts need to resist the understandable temptation to engage in

*post hoc* reasoning by concluding that an ultimately unsuccessful action must have been

unreasonable or without foundation." (quoting *Prof'l Real Estate*, 508 U.S. at 60 n.5) (internal

quotation marks omitted)).  Moreover, had the JPL Applications been truly baseless, there

would have been no reason for the companies to enter into the Deed of Undertaking that

required HSBC-HK to give up its right to appeal the discharge of the JPLs in consideration of

the companies undertaking an accelerated sales process.  [*See* FAC ¶¶ 95–97.]  Indeed, the

Trustee's Opposition tacitly concedes the point, claiming "the threat of an appeal" was effective

leverage for HSBC-HK in negotiating with the companies.  [Opp. ¶ 33.]

45.    The Trustee also has failed to allege the requisite subjective intent.  This case is

readily distinguished from the cases cited by the Trustee involving disingenuous petitioning

intended to harm a competitor or foe.[20]  By its nature, the sham exception applies when a

petitioner uses governmental process as a "cover" or "disguise" for an attempt to cause harm

---

[20] *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90 (2d Cir. 2002), involved a default judgment that the plaintiff claimed had been obtained through deceit.  The Second Circuit merely observed that a default judgment, while technically a winning lawsuit, does not necessarily mean the lawsuit was not a sham.  *Id.* at 94.  *Hirschfeld v. Spanakos*, 104 F.3d 16 (2d Cir. 1997) involved intentionally obstructive and sanctionable litigation conduct, including intentionally filing a motion in the wrong court.  *Id.* at 19–20.  In *Associated Container Transportation (Australia) Ltd. v. United States*, 705 F.2d 53 (2d Cir. 1983), the Second Circuit stated in *dicta* that misrepresentation in the petitioning process may show an "abuse[] of governmental processes" sufficient to trigger the sham exception.  *Id.* at 59.  Finally, *Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293 (S.D.N.Y. 2014), was a Fair Debt Collection Practices Act case that was not decided on Noerr-Pennington grounds.  *Id.* at 300 & n.8.

and has "no real interest in the outcome." *EDF Renewable Dev., Inc. v. Tritec Real Estate Co.*, 147 F. Supp. 3d 63, 68–69 (E.D.N.Y. 2015). In his Opposition, the Trustee strains to reframe his allegations in this light, claiming HSBC-HK "misused the appointment of the Hong Kong JPLs for reasons unrelated to the outcome of the litigation and instead for the ulterior purpose of burdening the companies and the creditors with the Hong Kong Court's authority." [Opp. ¶ 76.] But this is inconsistent with the FAC itself, which clearly alleges HSBC-HK had a genuine interest in securing the relief it sought. The FAC alleges HSBC-HK "developed a strategy to have KPMG installed as provisional liquidators" beginning in November 2014. [FAC ¶ 42.] It further alleges that, when HSBC-HK filed the JPL Applications in November 2015, it was "executing on the plan it devised a year earlier … to install KPMG as provisional liquidators over certain members of the CF Group." [FAC ¶ 56.] By the Trustee's own account, then, HSBC-HK filed the JPL Applications *because it wanted liquidators appointed*, not as a means for achieving some other end. Because the FAC itself alleges the JPL Applications were "genuinely aimed at procuring the result[s they] ultimately achieved," *Elysium Health*, 354 F. Supp. 3d at 339, the sham exception to Noerr-Pennington is inapplicable.

## VI.    Each of the Non-Bankruptcy Causes of Action (Counts One Through Six) Should Be Dismissed

A.    *The Trustee Is Not Entitled to a "Relaxed" Pleading Standard*

46.    The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to the Trustee's claims, as the Trustee himself acknowledges. [Mot. ¶¶ 79–88; Opp. ¶¶ 17, 80–81.][21] In order to meet Rule 9(b)'s heightened standard, the FAC must "'(1) specify

---

[21] In fact, less than two weeks ago, the Trustee took the position that Rule 9(b) *does* apply to a court-appointed representative of an estate, as he stated in his reply brief in further support of his objection to the claims brought by the court-appointed liquidators of Parkmond Group Limited and Pacific Andes Enterprises (BVI) Limited. [Reply of Trustee William A. Brandt, Jr. in Further Support of Second Omnibus Claim Objection (….continued)

24

the statements the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d. Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

47.    The Trustee incorrectly argues that although Rule 9(b) applies, its standard "must be relaxed" for him because he is a "statutory fiduciary"—though he never articulates how or to what extent the Court should overlook his failure to meet Rule 9(b)'s pleading requirements. [Opp. ¶¶ 17, 80–81.] In other contexts, a more lenient standard is "sometimes afforded bankruptcy trustees who are strangers to the transaction at issue and who, therefore, do not have inside knowledge."[22] *Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 435 B.R. 169, 192 (Bankr. S.D.N.Y. 2010). However, any such leniency is unavailable where, as here, "the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts." *Hellas Telecomms.*, 535 B.R. at 562 (quoting *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987)); *see also Old CarCo LLC*, 435 B.R. at 192 ("[Where] there was ample opportunity to investigate any potential claims prior to filing the Complaint[, t]here is no justification to relax the particularized standard . . . .").

---

(continued....)
(Insufficient Proofs of Claim), No. 16-11895, ECF No. 1639, ¶ 52 ("[A]lthough the claims are not denominated as 'fraud' claims, Rule 9(b) still applies.").]  The Trustee was right—Rule 9(b) applies to them, just as it does to him.

[22] In such cases, a complaint may survive if it presents the textbook "badges of fraud," which "are circumstances that so commonly accompany fraudulent transfers that their presence gives rise to an inference of intent to defraud." *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 505 n.3 (Bankr. S.D.N.Y. 2002). Or, courts may permit a trustee's complaint to survive if it contains adequate allegations of intent supported by "specific facts supporting an inference of knowledgeable participation in the alleged fraud." *Official Comm. of Unsecured Creditors of Grumman Olson Indus., Inc. v. McConnell (In re Grumman Olson Indus., Inc.)*, 329 B.R. 411, 429 (Bankr. S.D.N.Y. 2005) (quoting *Devaney*, 813 F.2d at 569). Here, the "badges of fraud" are both absent and inapplicable, and in any case the Trustee has failed to allege specific facts supporting any inference of fraudulent intent.

48.     The Trustee, clearly aware of this limitation, argues that he has not had the opportunity to adequately investigate here because HSBC-HK produced "*only* 5,500 documents addressing approximately 19 discrete topics." [Opp. ¶ 81 (emphasis supplied).] The Trustee ignores the fact that HSBC-HK produced those 5,500 documents (more than 45,000 pages) in the course of Rule 2004 discovery the Court specifically authorized to inform this adversary complaint [No. 16-11895, ECF No. 634 ("**Rule 2004 Order**") at 9–10, 23 (authorizing discovery related to JPL proceedings)], and in response to 21 individual requests engineered to elicit precisely the information he relies upon for his allegations [Notice of Rule 2004 Subpoena at 15–18 (requesting, *e.g.*, "Documents and Communications relating to HSBC's decision to apply for JPLs in the Hong Kong proceedings," and "Documents concerning the JPLs' activities relating to the Peruvian OpCos, including Documents concerning the Peruvian OpCos' lenders, trade counterparties . . . and any actual or potential bidders for all or part of the Peruvian Businesses.").]

49.     Moreover, by the time the Trustee filed the FAC, he had been in control of CFG Peru and the Peruvian OpCos for more than 16 months, providing him ample time to independently investigate the allegations in the First Amended Complaint, to review the many corporate records available to him, and to obtain information from the other Debtors (as he was ordered to do). [*See* Rule 2004 Order at 23.] Thus, the Trustee is much better informed than any non-trustee plaintiff, and no special judicial grace is legally required or warranted. The Trustee was required to plead with particularity pursuant to Rule 9(b), and as set forth in the Motion, he has failed to do so. [*See* Mot. ¶¶ 86–88.]

B.     *The Peruvian Law Claims Are Time-Barred and Fail to State a Claim (Counts One and Two)*

i.     The Peruvian Law Claims Are Time-Barred

50.     Neither the Trustee nor the declaration of Mr. Payet [Adv. Pro. No. 18-01575-JLG, ECF No. 37-1 ("**Payet Decl.**")] submitted by the Trustee dispute Mr. Bullard's conclusions that (1) a Peruvian court would apply a two-year statute of limitations to the claims, and (2) no tolling provision applies under Peruvian law.  [*See* Payet Decl. ¶ 17; Declaration of Alfredo Bullard Gonzalez dated February 15, 2019 [Adv. Pro. No. 18-01575-JLG, ECF No.  32-1 ("**Bullard Decl.**")] ¶¶ 144, 148, 187, 193–94, 198.]  The Trustee's only argument that the Peruvian law claims are timely is that section 108(a) of the Code extended his time to file them.  [Opp. ¶¶ 83–87.]  Because that cannot be the case, the claims must be dismissed.

51.     The Trustee does not dispute that the term "applicable nonbankruptcy law" in section 108(a) is undefined, nor that the statute does not refer to foreign law or extraterritorial application.  [Mot. ¶ 94.]  His argument that section 108(a) allows him to assert Peruvian law claims time-barred under that nation's legal system defies the Supreme Court's practice of "ordinarily constru[ing] ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations."  *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004).

52.     The Trustee's insistence that this Court put aside Peru's own time limits also disregards the Supreme Court's extraterritoriality jurisprudence.  The Trustee ignores the Supreme Court's 2016 decision in *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), even though it was extensively discussed in HSBC-HK's Motion.  [*See* Mot. ¶¶ 92–94.]  As a result, the Trustee misapprehends the Supreme Court's two-step framework.  Contrary to the Trustee's account, [Opp. ¶¶ 84–85], the first step requires the court to "ask whether the

27

presumption against extraterritoriality has been rebutted—that is, whether the statute gives a

clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 136 S. Ct. at

2101. Then, if the statute itself does not affirmatively indicate extraterritorial effect, courts

consider "whether the case involves a domestic application of the statute" by looking to the

statute's "focus." *Id.*[23] The "focus" of a statute is "the object of its solicitude, which can

include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or

vindicate." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018)

(alterations and quotation marks omitted).

      53.    As detailed in the Motion, there is not a clear, affirmative indication in the statute

that Congress intended it to apply extraterritorially. Congress did not define the term

"applicable nonbankruptcy law," and the statute does not refer to foreign law or extraterritorial

application. [Mot. ¶ 94.] The predecessor provision was expressly limited to "Federal or State

law," and the legislative history of section 108(a) does not suggest Congress intended to expand

this to include foreign law. [*See* Mot. ¶ 94 n.23.] Because Congress provided no "clear,

affirmative indication" that section 108(a) should have extraterritorial effect, "it has none."

[Mot. ¶ 94 (quoting *RJR Nabisco*, 136 S. Ct. at 2100–01).]

      54.    This case also does not involve a domestic application of a federal statute. The

focus of section 108(a) is on causes of action outside of the Bankruptcy Code that may be

asserted by a trustee and, in this case, its application involves (1) foreign law claims, (2) by a

foreign debtor (through the Trustee), (3) against a foreign defendant, (4) concerning foreign

conduct. The extraterritorial nature of this application of section 108(a) is clear: it would

---

[23] The Trustee is also incorrect that HSBC-HK must somehow "overcome" the "focus" inquiry before the Court may consider congressional intent. [Opp. ¶ 85.] To the contrary, it is the *Trustee's* "heavy burden of demonstrating that Congress unmistakably intended" section 108(a) to apply extraterritorially. *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807, 819 (S.D.N.Y. 1995), *aff'd*, 93 F.3d 1036 (2d Cir. 1996).

displace Peru's own tolling rules and resuscitate time-barred claims that could not have been

brought in Peru on the date the Trustee filed his original complaint. [*See* Bullard Decl. ¶¶ 195–

99; Bullard Reply Decl. (as defined below) ¶¶ 12–38.]

55.    The principles underlying the presumption against extraterritoriality apply even

more acutely here than they do in most cases, where the typical issue is whether a U.S. statute

governing conduct should be applied to foreign conduct. *Kiobel v. Royal Dutch Petroleum Co.*,

569 U.S. 108, 116 (2013) ("We typically apply the presumption to discern whether an Act of

Congress regulating conduct applies abroad."). In such cases, when the presumption is

overcome, the result is the application of U.S. law by a U.S. court. Yet here it would result in

displacement by the United States of Peru's own laws about when its causes of action become

untimely—which much more directly brings into conflict the federal law in question and the

laws of another sovereign nation. As the Motion explains, courts must guard against application

of foreign law in ways that depart from the approach taken in the foreign jurisdiction. [*See* Mot.

¶ 95 (citing cases).] Like the private right of action under RICO, which the Supreme Court has

held not to overcome the presumption against extraterritoriality, the application of section

108(a) to foreign law claims presents the danger of "international friction beyond that presented

by merely applying U.S. substantive law to that foreign conduct." *RJR Nabisco*, 136 S. Ct. at

2106 (observing potential foreign policy implications of providing a remedy under U.S. law for

foreign conduct already covered by foreign remedial schemes); *Dandong Old N.-E. Agric. &*

*Animal Husbandry Co. v. Hu*, 2017 WL 3328239, at *14 (S.D.N.Y. Aug. 3, 2017) ("The *RJR*

*Nabisco* Court premised its decision in substantial part on the risks of 'international friction'

associated with allowing foreign entities to 'bypass' potentially 'less generous remedial

schemes' available in their home jurisdictions and pursue treble damages for injuries suffered

abroad through civil RICO actions in the United States.").  "Although a risk of conflict between

the American statute and a foreign law is not a prerequisite for applying the presumption against

extraterritoriality, where such a risk is evident, the need to enforce the presumption is at its

apex."  *RJR Nabisco*, 136 S. Ct. at 2107 (quotations, citations omitted).

    56.    The Trustee notes that at least one court has held that section 108(a) applies in

chapter 15 cases, and that others have held that foreign representatives in chapter 15 cases can

assert foreign law claims.  [Opp. ¶ 87.]  Taken separately, these are unremarkable

propositions.  Of course, foreign representatives can bring claims *under U.S. law*, and section

108(a) may be available for these claims.  [Opp. ¶ 87 (citing *Hellas Telecomms.*, 524 B.R. at

488, 523 & n.37).]  Foreign representatives, like chapter 11 trustees, also may bring foreign law

claims.  But none of that supports the Trustee's conclusion that section 108(a) applies to foreign

law claims even when brought by foreign representatives.  Indeed, the Trustee does not cite a

single case where a foreign representative relied on section 108(a) to bring a claim under

foreign law.[24]  If the Trustee's view prevailed, the application of section 108(a) to foreign law

claims brought in chapter 15 cases would incentivize a debtor or bankruptcy administrator to

evade a foreign country's chosen limitations period governing its laws by filing a chapter 15

petition and pressing the claim in the U.S. instead.  But no principle of statutory construction

supports that interpretation of section 108(a).

---

        [24] In one case, the foreign representative merely sought an order confirming that section 108(a) is available
to a foreign representative in the chapter 15 context.  *In re Millennium Global Emerging Credit Master Fund Ltd.*,
458 B.R. 63, 65 (Bankr. S.D.N.Y. 2011).  The court did not state that section 108(a) applies to foreign causes of
action, nor did it analyze whether the provision was intended to have extraterritorial effect.  In another, the foreign
representative sought to bring claims of fraudulent transfer and/or unjust enrichment under New York law.  *Hellas
Telecomms.*, 524 B.R. at 499.  In the third, section 108 was not at issue.  *In re Condor Ins. Ltd.*, 601 F.3d 319, 321
(5th Cir. 2010).

ii.    The Trustee Fails to State a Claim Under Peruvian Law

57.    Even if timely, the Trustee's Peruvian law claims fail on the merits for a number

of reasons.  As explained in Mr. Bullard's reply declaration dated July 12, 2019 ("**Bullard

Reply Decl.**"), attached hereto as Exhibit 1 to the Declaration of Elliot Moskowitz, dated July

15, 2019 (the "**Moskowitz Reply Decl.**"), the Trustee and Mr. Payet have failed to explain why

the Peruvian law claims should not be dismissed.

58.    First, as Mr. Bullard explains, the Trustee lacks standing ("legitimacy to act") to

bring Counts One and Two because the claims pertain to damages suffered by the Peruvian

OpCos, not CFG Peru.  [Bullard Reply Decl. ¶¶ 39–67.]  It is not enough, as Mr. Payet

contends, for a plaintiff to "affirm[] that she or he is the holder of a right in order to be entitled

to sue."  [*Id.* ¶ 42 (quoting Payet Decl. ¶ 127).]  If that were the case, the defense of lack of

legitimacy to act would be toothless, as any plaintiff would simply claim to have it.  [Bullard

Reply Decl. ¶ 42.]  Rather, a plaintiff must actually be covered by Peru's extra-contractual

liability provisions.  [*Id.* ¶ 57.]  Mr. Payet's theory that CFG Peru may recover as a shareholder

or creditor of the Peruvian OpCos is inconsistent with these provisions, which protect "direct

victims," not indirectly affected third parties.  [*Id.* ¶ 59.]

59.    Second, Counts One and Two must be dismissed because the Trustee failed to

establish HSBC-HK acted unlawfully in filing the JPL Applications.  [Bullard Reply Decl.

¶ 68.]  Mr. Payet argues HSBC-HK abused its right to petition under Peruvian law (or acted

outside the regular exercise of the right) in seeking the appointment of liquidators based on

purportedly incomplete disclosures to the Hong Kong Court.  But as Mr. Bullard explains, a

Peruvian court construing the right to petition would not focus on the content of its applications,

but rather on whether HSBC-HK used the petitioning process itself for its intended purpose—

*i.e.*, to appoint liquidators.  To establish an abuse of the right, the Trustee must show HSBC-HK

acted in contravention of the purpose of initiating insolvency proceedings, which he has not

done.  [*Id.* ¶¶ 71, 89–91; *see also supra* ¶¶ 43–45.]  Because HSBC-HK's applications were

consistent with Peruvian law permitting creditors to initiate insolvency proceedings to protect

their rights, the applications cannot be considered unlawful.  [Bullard Reply Decl. ¶ 91–94.]

60.     Third, because HSBC-HK cannot be vicariously liable for the actions of the JPLs,

Count Two must be dismissed.  [Bullard Reply Decl. ¶¶ 101–02.]  A claim of vicarious liability

requires a legal or contractual relationship between principal and agent.  [*Id.* ¶ 104.]  Here, the

JPLs' only legal obligations were to the courts that appointed them.  [*Id.* ¶ 113.]  Mr. Payet

contends HSBC-HK may be vicariously liable because it allegedly directed the JPLs' work, but

a Peruvian court would not attribute the JPLs' actions to HSBC-HK in the absence of a formal

legal relationship.  [*Id.* ¶¶ 112–14.]  Moreover, under Peruvian law, a principal may not be held

liable for an agent's actions when the agent's work falls outside the scope of the principal's

normal business activities.  [*Id.* ¶ 115.]  That is, the Peruvian Supreme Court requires a fit

between the business of the agent and principal.  [*Id.* ¶¶ 119–21.]  Neither the Trustee nor Mr.

Payet explains how the JPLs, as insolvency practitioners, were engaged in the same business as

HSBC-HK, a banking institution.  [*Id.* ¶ 118.]  Finally, because the Trustee neither brought

claims against the JPLs in this action nor explained why they would be liable under Peruvian

extra-contractual liability provisions, HSBC-HK may not be held vicariously liable for their

actions.  [*Id.* ¶¶ 126, 128.]  Mr. Payet acknowledges vicarious liability depends on establishing

"the liability of the direct perpetrator" [Payet Decl. ¶ 87], and it is well settled that an agent

must be joined to a proceeding to determine whether a principal is vicariously liable for the

agent's actions.  [Bullard Reply Decl. ¶¶ 131–35.]

32

C.    *Count Three Fails to State a Claim Under Hong Kong Law*

61.    In an attempt to manufacture a cause of action cognizable under Hong Kong law, the Trustee in his Opposition tries to recast Count Three of the First Amended Complaint from a "breach of duty causing loss under Hong Kong common law" to a breach of duty "to act in good faith." [Opp. ¶ 92.] In support of this proposition, the Trustee cites a declaration from David Nigel Francis [Adv. Pro. No. 18-01575-JLG, ECF No. 37-2 ("**Francis Decl.**")] to argue that the Trustee can seek damages under "two separate theories: implied undertaking and tort." [*Id.*]

62.    As a threshold matter, the Trustee is bound by the allegations of the FAC and cannot alter a cause of action through an opposition brief. The fact that Mr. Francis asks the Court to read Count Three of the FAC as something other than a cause of action for breach of duty causing loss "even if that is the heading of the relevant section of the complaint" speaks volumes about his lack of confidence in the FAC as originally pled. [Francis Decl. ¶ 17.]

63.    However it is styled, Count Three does not state a viable claim. Mr. Anthony Rogers, a former judge and vice-president of the Hong Kong Court of Appeal, explained clearly in his opening declaration that the only recourse available to a party who alleges it has suffered loss through a subsequently discharged *ex parte* order is from the Hong Kong Court, and only if an undertaking was required by the court. [*See* Declaration of Anthony Rogers dated March 29, 2019 [Adv. Pro. No. 18-01575-JLG, ECF No. 32-2 ("**Rogers Decl.**")] ¶¶ 8–9.]

i.    There Was No Implied Undertaking

64.    The Trustee appears to concede that no express undertaking was given in connection with the issuance of the Hong Kong Court's November 25, 2015 order. However, in his Opposition, the Trustee argues that he may have a right of recovery on the basis of an "implied undertaking." [Opp. ¶¶ 93–94.]

65.    In support of this argument, Mr. Francis relies on practice applicable to "Mareva"

injunctions, *i.e.*, temporary injunctions used urgently to freeze liquid assets, and "Anton Piller"

orders, *i.e.*, mandatory injunctions which require persons served with the order to give access to

premises and documents.  [Francis Decl. ¶ 29; Second Declaration of Anthony Rogers, dated

July 10, 2019, and attached to the Moskowitz Reply Decl. as Exhibit 2 ("**Rogers Reply Decl.**")

¶¶ 27, 29–30.]  But that is not the order that was sought or granted here: the order referenced in

the FAC is not an injunction order, but rather an order for the appointment of provisional

liquidators.  [Rogers Reply Decl. ¶ 28.]  Mr. Francis also mischaracterizes the practice of

obtaining *ex parte* orders in Hong Kong.  He states that the process of application for an *ex*

*parte* order "involves the solicitors for the applicant submitting a draft to the clerk of the judge

who dealt with the application for approval and it is the responsibility of the applicant's

solicitors to ensure the draft submitted is accurate and complete in all respects."  [Francis Decl.

¶ 35.]  Mr. Francis thus suggests that the judge is not involved in the finalization of an *ex parte*

order and thereby concludes that "an undertaking will be taken to have been given whether or

not it is recorded in the sealed copy order drawn up."  [*Id.*]

66.    Mr. Francis is wrong.  As Mr. Rogers—a former judge in both courts of first

instance and appeal in Hong Kong with 35 years of experience in practice in Hong Kong—

states, "the practice of judges in Hong Kong is to scrutinize the terms of *ex parte* orders very

carefully."  [Rogers Reply Decl. ¶ 19.]  Hong Kong law vests with judges the power and

responsibility to issue orders; it is the judge, not the clerk or the solicitor, who makes the order.

[*Id.* ¶ 20.]  In fact, Hong Kong practice requires that draft orders be given to the court

"sufficiently long before the hearing to enable the Judge to read and digest them all before the

hearing." [*Id.* ¶ 22 (quoting Practice Direction 11.1).] The judge will then go through the draft

order line by line and make any changes needed. [Rogers Reply Decl. ¶ 24.]

67.    There is no allegation in the FAC that Mr. Justice Harris, when considering

whether to grant HSBC-HK's application for an *ex parte* order to appoint provisional

liquidators, was presented with papers with insufficient time to review and/or amend the draft

order. Indeed, the Trustee admits that the issue was before the Court during the *ex parte*

hearing when he notes that HSBC-HK itself indicated a willingness to give an undertaking.

[Opp. ¶ 93.] As Mr. Rogers states, if Mr. Justice Harris intended to require an undertaking, he

would have had ample opportunity to do so expressly in the order before it was finalized.

[Rogers Reply Decl. ¶¶ 14–18.]

68.    While Mr. Justice Harris did not provide his rationale in the November 25, 2015

order, as Mr. Rogers explains, there is a good explanation as to why an undertaking might not

be required in connection with a winding-up petition. Mr. Justice Harris's Reasons for Decision

of January 14, 2019 make clear that, at the time of the *ex parte* application, he believed that the

winding up of the Companies was inevitable. [*See* Rogers Reply Decl. ¶ 12; Reasons for

Decision ¶ 17.] Thus, Mr. Justice Harris might well have decided that an undertaking need not

be required. [Rogers Reply Decl. ¶ 13.]

69.    Finally, had the judge intended to grant an undertaking (but had, for whatever

reason, inadvertently omitted it from the *ex parte* order), the omission could have been easily

remedied at the *inter partes* continuation hearing on December 4, 2015. [*Id.* ¶ 14.] That did not

occur. Additionally, even if the issue of an undertaking was not raised at that hearing, Hong

Kong provides another mechanism by which an inadvertent omission can be corrected: Order

20, Rule 11 of the Rules of High Court ("the Slip Rule") allows for correction of, among other

things, any omission from an order at any time by the Court on summons without an appeal.
[Rogers Reply Decl. ¶¶ 17–18.]  No such application was ever made.

70.     Though Mr. Francis attempts to buttress his theory of an implied undertaking by citing various Hong Kong cases, as Mr. Rogers explains, the authorities are inapposite because either:  (1) the issue of whether an undertaking should be implied was not before the Hong Kong Court [*id.* ¶¶ 32–37]; (2) the issue of whether an undertaking should be implied was in the context of a proceeding wholly irrelevant to the JPL proceeding [*id.* ¶¶ 38–39]; or (3) the *dicta* of the trial court, upon which Mr. Francis relies, "seemed incorrect to the Court of Appeal." [*Id.* ¶ 40.]

71.     This Court should not disturb the Hong Kong Court's decision to refrain from requiring an undertaking and there is no basis to read into the November 25, 2015 order an implied undertaking as to damages.

ii.     <u>Even If an Undertaking Were Implied, the Plaintiff Could Not Recover</u>

72.     Even assuming, *arguendo*, that this Court were to modify, on a *post hoc* basis, the Hong Kong Court's November 25, 2015 order to incorporate an implied undertaking in damages, that undertaking would not provide a vehicle by which the Trustee could recover in this Court.  This is for three reasons.

73.     First, there can be no independent cause of action based on the breach of an undertaking.  "It is well established that an undertaking in damages as a result of an injunction does not found any cause of action."  [*Id.* ¶ 50 (quoting Hong Kong Civil Practice (*i.e.*, the "Hong Kong White Book") at ¶ 18/19/5).]

74.     Second, under Hong Kong law, an undertaking can only be enforced by the court to which it was given.  The Trustee's Opposition claims to the contrary that "Hong Kong law does not require that an undertaking be enforced in the court in which it was granted."  [Opp.

¶ 94.]  However, Mr. Francis himself admits that such enforcement by a foreign court would be contrary to "the usual practice and procedure as between the parties to litigation" in Hong Kong and that "there has been no English or Hong Kong decision that directly addresses this scenario," and he does not provide any authority aside from his own speculation on the subject to substantiate the Trustee's claim.  [Francis Decl. ¶ 45; *see also* Rogers Reply Decl. ¶ 46.] This Court should not be the first to take this unprecedented step.

75.    Third, even if this Court were to appropriate for itself the power to adjudicate a purported implied undertaking given to a Hong Kong court, as explained in the Motion, any undertaking to pay damages "would inure only to the benefit of the companies subject to the *ex parte* order (i.e., CFGL and CFIL)" and would not, under Hong Kong law, be "enforced for the benefit of an affiliated party such as CFG Peru."  [Mot. ¶ 102 (citing Rogers Decl. ¶¶ 35–36).]

76.    The Trustee argues that "Hong Kong courts do not limit recovery on an undertaking to the parties expressly named within it."  [Opp. ¶ 94 (citing Francis Decl. ¶¶ 39–44).]  However, the Trustee again relies on misleading statements in the Francis Declaration. Though Mr. Francis includes general statements about the position of potential creditors or contractual counterparties vis-à-vis a winding-up order, the cases he cites to support the proposition that undertakings may be used by parties not subject to the order once again are limited to "Mareva injunctions" and "Anton Piller orders."  [Rogers Reply Decl. ¶ 44; *see also* Francis Decl. ¶¶ 39–44.]  As discussed in the Rogers Reply Declaration, there are good reasons why these types of proceedings require undertakings that are broader than those given in other contexts (such as winding-up petitions and the appointment of liquidators).

### iii.    There Is No Tort Based on a Wrongfully Obtained *Ex Parte* Order

77.     The Trustee claims in the alternative that Hong Kong provides a tort "on the ground that [an *ex parte*] order was obtained by the applicant malicious[ly] and without reasonable cause, or in abuse of the process of the court."  [Opp. ¶ 95.]

78.     In the first instance, this claim fails because the FAC did not allege a tort on the basis of a wrongfully obtained *ex parte* order.  Though the FAC alleged a generic claim for "breach of duty causing loss," Hong Kong law requires a specific cause of action to be pleaded, such as a particular tort.  [*See, e.g.*, Mot. ¶ 99; Rogers Decl. ¶¶ 1–3.]  The Trustee's attempt to re-plead this element through his Opposition is improper.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers." (quotation omitted)).

79.     Additionally, the Trustee's support for this proposition rests entirely on the declaration of Mr. Francis, who not only fails to identify what he imagines the tort at issue to be, but furthermore cannot "cite a single authority in which a civil cause of action has been identified and upheld for damages arising from a subsequently discharged *ex parte* order." [Rogers Reply Decl. ¶ 66.]  Furthermore, Mr. Francis's view of this potential tort is "wrong and . . . refuted in the strongest terms by clear authority in Hong Kong, England, and Australia." [*Id.* ¶ 53.]

80.     What the Trustee does cite to support this proposition is paragraphs 47–60 of the Francis Declaration, which consists of an examination of *National Australia Bank Ltd and others v. Bond Brewing Holdings Ltd and others* [1991] 1VR 386.  [Opp. ¶ 95 ("Hong Kong

case law[25] . . . contemplate that a cause of action for damages may be made out even where

there is no undertaking.").]  To substantiate the Trustee's claim that a cause of action for tort in

Hong Kong exists, Mr. Francis cites selected portions of each of the opinions of the three judges

on the *National Australia Bank* panel and concludes that "all [three] judges in [*National*

*Australia Bank*] expressly held open the possibility of a claim being brought on a basis other

than the mere making of the relevant court orders and without there needing to be an

undertaking in damages."  [Francis Decl. ¶ 60.]

81.    However, this shading of the *National Australia Bank* case obscures that each of

the three judges (Kaye, Murphy, and Brooking) expressly stated in the case that there was no

basis for a claim absent an undertaking.  [Rogers Reply Decl. ¶ 65.]  As such, it is clear that Mr.

Francis' interpretation overlooks the unanimous view of the *National Australia Bank* Court.

82.    Despite the Trustee's assertions to the contrary, no cause of action in tort lies

absent the provision of an undertaking—and none was given here.

iv.    The Is No General Duty to Act in "Good Faith"

83.    The Trustee also now appears to allege breach of an equitable duty of good faith.

The purported duty is described as an "equitable duty of good faith to act honestly and without

reckless disregard for the borrowers' interests."  [Francis Decl. ¶ 63.]

84.    As a threshold matter, the Trustee's claim that HSBC-HK breached a duty to act

in good faith is without merit because, under Hong Kong law, HSBC-HK had no such duty to

CFG Peru or any of the Debtors.  There is no general duty of good faith in Hong Kong contract

law between unsecured bank lenders and borrowers.  [Rogers Reply Decl. ¶ 69.]  In fact,

---

[25] *National Australia Bank* is a case from Australia.  As Mr. Rogers explains, while decisions from Commonwealth common law jurisdictions, in particular Australia, may be considered highly relevant and are commonly cited in Hong Kong, they are not, strictly speaking, "Hong Kong" law.  [*See, e.g.*, Rogers Decl. p. 6.]

leading authorities applicable in Hong Kong affirm that "[c]old water has rightly been poured

on the idea that a general duty of good faith is likely to apply to commercial banking contracts"

such as those that govern the relationship between HSBC-HK and the Debtors.  [*Id.* ¶ 71 (citing

Paget's Law of Banking, 15th ed. (2018) ¶ 4.32).]  Rather, Hong Kong law would look to the

contractual rights and obligations of the parties when seeking to enforce rights in accordance

with the terms of the contract.  [Rogers Reply Decl. ¶ 76.]  Here, it is undisputed that the Club

Facility was in default at the time HSBC-HK commenced the winding-up and JPL proceedings

due to, among other things, the borrowers' failure to repay principal on the loans.  [*Id.* ¶ 78.]

85.    In order to maneuver around this obstacle, the Trustee's foreign law declarant

attempts to fashion a duty where none exists by drawing together portions of a treatise related to

equity taken out of context, cases related to the duties imposed on secured creditors, and the

duty owed to the court by an *ex parte* applicant.  [*Id.* ¶¶ 85–90.]  However, as Mr. Rogers

explains, none of these sources support the proposition that an unsecured commercial creditor

has any duty other than those delineated in the contract governing its commercial relationship

with the borrowers.  [*Id.*]

D.    *Count Four Fails to State a Claim Cognizable Under Hong Kong Law*

86.    The Trustee agrees with HSBC-HK that the claim pleaded in Count Four,

unlawful interference with economic interests under Hong Kong law, has two elements: (1) that

the defendant interfered with the plaintiff's economic interests using unlawful means; and (2)

that the defendant intended to cause damage.  [Opp. ¶ 96.]

i.    The Trustee Has Not Sufficiently Alleged That Unlawful Means Were
Employed

87.    In an attempt to satisfy the first prong of this test, the Trustee alleges that HSBC-

HK's actions were unlawful because "HSBC breached its equitable duty to act in good faith."

[Opp. ¶ 97.]  However, as discussed above, HSBC-HK had no duty under Hong Kong law to act in good faith.  Therefore, no duty could be breached.

88.    In the alternative, the Trustee argues that if HSBC-HK breached its duty of full and frank disclosure to a Hong Kong court, this could qualify as the interference by unlawful means.  However, as explained by Mr. Rogers, the courts in Hong Kong would be expected to follow the majority view of the UK House of Lords in *OBG Limited v. Allan* [2007] UHKL 21, which held that only conduct that gave rise to a civil cause of action could be considered to be "unlawful means."  [Rogers Reply Decl. ¶ 96.]  Because the duty of full and frank disclosure to a Hong Kong court is a duty owed to the court, and to no other party, the Trustee would be unable to bring a civil cause of action against HSBC-HK for any breach of this duty and, thus, under the majority approach, it would not qualify as "unlawful means" sufficient to sustain a cause of action for interference by unlawful means.  [*Id.* ¶ 97; Rogers Decl. ¶¶ 38–42.]  Mr. Francis accepts this to be the position, and is reduced to arguing that the "Hong Kong court is not bound to follow English precedent."  [Francis Decl. ¶ 103.]

ii.    The Trustee Has Not Alleged that HSBC-HK Intended to Cause Damage

89.    In addition to the above, Count Four cannot be sustained because the Trustee does not allege that HSBC-HK intended to cause damage in pursuing its contractual rights to repayment.  The Trustee claims that HSBC-HK "sought to take control of the Peruvian Business . . . in order to obtain expedited repayment from an accelerated sale, regardless of the impact of its conduct on other creditors."  [Opp. ¶ 99.]  The Trustee alleges that this allegation is sufficient because *OBG Limited*, the controlling precedent, dictates that "[o]ne intends to cause loss even though it is the means by which one achieved the end of enriching oneself."  [*Id.*]  However, the Trustee misstates *OBG Limited*.  As Mr. Rogers explains, the majority view of the House of Lords was that "'one is not liable for loss which is neither a desired end nor a means of attaining

41

it but merely a foreseeable consequence of one's actions.'"  [Rogers Decl. ¶ 44 (quoting Lord

Hoffman).]  Here, the Trustee has made no allegation that any loss suffered by the Peruvian

Business was anything more than a "foreseeable consequence" of the actions they allege HSBC-

HK to have undertaken.  He does not because he cannot.  As Mr. Rogers explains, any "lowered

sale value did not benefit and could not be said to have been intended to benefit HSBC-HK."

[Rogers Reply Decl. ¶ 101.]  Thus, "there is no basis for suggesting that such loss was a desired

end or means to an end."  [*Id*.]  The Trustee's allegations do not establish the two prongs

required to sustain this cause of action under Hong Kong law, and, therefore, the Court cannot

find that HSBC-HK intended to cause damage to the Trustee, and Count Four should be

dismissed.

      E.    *The Trustee's U.S. Tortious Interference Claims Should Be Dismissed (Counts Five and Six)*

    90.    In its Motion, HSBC-HK demonstrated that the Trustee's tortious interference

claims (Counts Five and Six) fail as a matter of law for several independent grounds.  [*See* Mot.

¶¶ 119–32.]  As discussed below, the Trustee defends these claims half-heartedly, failing to

dispute most of the grounds for dismissal and rebutting none of them.  Therefore, Counts Five

and Six should be dismissed.

    91.    HSBC-HK showed that Hong Kong law governs whether the Trustee's allegations

of wrongful conduct by HSBC-HK before the Hong Kong Court state a claim for unlawful or

tortious interference.  [Mot. ¶¶ 109–13.]  HSBC-HK also showed that because the Trustee

asserts Counts Five and Six under "U.S. Law"—which he now identifies as New York law

[Opp. ¶ 58 n.134]—rather than under governing Hong Kong law, those counts should be

dismissed.  [Mot. ¶¶ 107–108, 119.]  The Trustee makes no attempt to rebut these showings.

Nor does the Trustee dispute that HSBC-HK's allegedly unlawful or tortious conduct under

Counts Five and Six took place in Hong Kong.  [FAC ¶¶ 176, 183, 191; Opp. ¶¶ 96–102.]

Under applicable choice-of-law principles, therefore, Hong Kong law governs whether the

allegations underlying both counts state a claim on which relief can be granted.  [Mot. ¶¶ 109–

13.]

92.    Rather than disputing HSBC-HK's showing that Hong Kong law applies to the

tortious interference counts, the Trustee avers generally that choice of law is "fact-intensive"

and should not be determined prior to discovery.  [Opp. ¶ 82.]  But the Trustee fails to show that

there is any factual issue that warrants delaying a choice of law determination *in this case*.  To

the contrary, where, as here, the "relevant facts are sufficiently clear, courts in this Circuit have

engaged in choice of law analysis at the motion to dismiss stage."  *Holborn Corp. v. Sawgrass*

*Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (quotation omitted); *see also, e.g.*,

*McPhee v. Gen. Elec. Int'l, Inc.*, 736 F. Supp. 2d 676, 679–81 (S.D.N.Y. 2010) (same), *aff'd*,

426 F. App'x 33 (2d Cir. 2011).  Counts Five and Six, which are erroneously premised on "U.S.

Law," should be dismissed.  [Mot. ¶¶ 107–08, 119.]

93.    HSBC-HK also demonstrated in its Motion that it would violate the Due Process

Clause to apply the law of any U.S. state to HSBC-HK's alleged conduct underlying Counts

Five and Six, which have no connection whatsoever to any U.S. state, including New York.

[*See* Mot. ¶ 122.]  The Trustee does not even try to rebut this demonstration, which is fatal to

Counts Five and Six.

94.    In any event, as shown below Counts Five and Six fare no better on the merits

under New York substantive law than Count Four fares under Hong Kong substantive law.  For

all of these reasons, Counts Five and Six should be dismissed.

i.    Count Five Should Be Dismissed

95.    In its Motion, HSBC-HK showed that Count Five fails to state a claim for tortious

interference with business relationships [Mot. ¶¶ 124–31], including because the Trustee has not

pleaded that HSBC-HK's conduct was directed at the Peruvian lenders [Mot. ¶ 129]; that CFG

Peru, as opposed to the affiliated Peruvian OpCos, had any "business relationship" with the

Peruvian lenders [Mot. ¶¶ 127–28]; or that HSBC-HK's JPL applications were frivolous.[26]  The

Trustee does not dispute this showing.

96.    Instead, the Trustee defends Count Five under the separate theory of tortious

interference with *contract*.[27]  The Trustee's own authority emphasizes that these are distinct

torts with different elements.  *See C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223,

245–46 (S.D.N.Y. 2013) ("Though [plaintiff] treats tortious interference with contract and

tortious interference with [business relationships] as interchangeable, they are in fact different

causes of action.") (internal citation omitted).

97.    In any event, Count Five fails to state a claim for tortious interference with

contract.  *First*, the Trustee fails to allege "the existence of a valid contract between *the plaintiff*

and a third party."  *Kirch v. Liberty Media Grp.*, 449 F.3d 388, 401 (2d Cir. 2006) (emphasis

added) (quotation omitted).  The FAC alleges the existence of lending or inventory

arrangements between the "Peruvian OpCos" and their lenders and suppliers.  [FAC ¶¶ 34,

179.]  The Trustee does not allege that CFG Peru was a party, contractual or otherwise, to those

---

[26] HSBC-HK also demonstrated that tortious interference with business relationships (Count Five) and tortious interference with prospective economic advantage (Count Six) are, under New York law, different labels for the same claim.  [Mot. ¶ 125.]  The legal standards and authoritative case law are, therefore, interchangeable.  [*Id.* (quoting *Catskill Dev., LLC v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).]

[27] In his Opposition, the Trustee misleadingly labels Count Five as "tortious interference with existing business relations."  [Opp. ¶ 100.]  But he defends the count using cases governing the separate tort of tortious interference with contract.  The disconnect is obvious from, for example, the Trustee's argument that he "alleges the existence of valid contracts" and "breaches of contract."  [*Id.*]

44

arrangements.  *Second*, the Trustee never pleads "actual breach" of any contract.  *Kirch*, 449

F.3d at 401.  He alleges that the Peruvian banks "suspended their facilities with the Peruvian

OpCos," but nowhere alleges that any suspension amounted to a breach of contract—as opposed

to an exercise of contractual rights.  [FAC ¶ 182.]  *Third*, absent any allegation showing that the

banks breached their contracts, the Trustee cannot plausibly allege that HSBC-HK

"intentional[ly] procure[d]" any breach.  *Kirch*, 449 F.3d at 401.  Under these circumstances,

Count Five does not state any claim on which relief can be granted, and should be dismissed.

ii.    <u>Count Six Should Be Dismissed</u>

98.    In its Motion, HSBC-HK showed that, for four principal reasons, Count Six fails

to state a claim for tortious interference with prospective economic advantage.

99.    First, the Trustee has not pleaded that HSBC-HK directed its conduct at *the*

*potential purchasers* of the Peruvian OpCos.  HSBC-HK established that this is an essential

element of the Trustee's claim for tortious interference with prospective economic advantage.

[Mot. ¶ 129.]  In response, the Trustee does not dispute that he has failed to plead facts showing

that HSBC-HK directed its conduct at the potential purchasers.  Rather, he suggests that it

would suffice that HSBC-HK intentionally interfered with any business relationship known to

it.  [Opp. ¶¶ 101–02.]  But the Trustee makes no attempt to rebut HSBC-HK's showing that

New York law requires that wrongful conduct be "directed *not at the plaintiff itself*, but at the

party with which the plaintiff has or seeks to have a relationship."  *Carvel Corp. v. Noonan*, 3

N.Y.3d 182, 192 (2004) (citations omitted; emphasis added); *accord Valley Lane Indus. Co. v.*

*Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 106 (2d Cir. 2012). [*See* Mot.

¶ 129.]  The Trustee does not plead that *any* conduct was directed at the potential purchasers.

[FAC ¶ 191.]

45

100.    Second, the Trustee has failed to plead that *CFG Peru*, as opposed to its affiliates, had any existing or prospective "business relationship" with any third party that was affected by HSBC-HK's conduct.  [Mot. ¶¶ 127–28.]  As HSBC-HK has demonstrated, no entity can be liable to CFG Peru for tortious interference with a particular business relationship unless CFG Peru itself was a party to that relationship.  [*Id.*]  Rather than dispute this requirement, the Trustee argues that he has satisfied it by alleging a relationship between "Pacific Andes Group management" and potential purchasers.  [Opp. ¶ 102 n.141 (citing FAC ¶ 108).]  In an attempt to obscure the difference between "Pacific Andes Group" management and CFG Peru, the Trustee insists that CFG Peru "was being represented by [Pacific Andes Group] management in those negotiations."  [Opp. ¶ 60 n.141.]  However, he cites no factual basis in the FAC or elsewhere to support this assertion.  In any event, the mere assertion that CFG Peru was "represented by" the Pacific Andes Group management in negotiations with potential purchasers of the Peruvian OpCos would not substantiate a prospective relationship between CFG Peru and the potential purchasers sufficient to support a tortious interference claim.  *See Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC*, 2010 WL 4739938, at *10 (S.D.N.Y. Nov. 5, 2010) (noting that an affiliate "lack[ed] standing as a third party beneficiary to assert its claims for . . . tortious interference with business relationships").

101.    Third, the Trustee fails to allege facts satisfying the element of "wrongful means." [Mot. ¶¶ 130–31; Opp. ¶ 101.]  In its Motion, HSBC-HK showed that initiating legal action, such as in seeking the appointment of JPLs, can support a tortious interference claim only if the action is "frivolous."  *See, e.g.*, *Arnon Ltd. v. Beirwaltes*, 125 A.D.3d 453, 453–54 (1st Dep't 2015).  Unable to show that HSBC-HK's requests for relief were frivolous, the Trustee argues that he has satisfied the "wrongful means" requirement by alleging "wrongful use of a revoked

46

*ex parte* order" and "wrongful use of the JPLs as HSBC's proxies." [Opp. ¶ 102 (citing FAC

¶¶ 54, 91, 95–101, 146).] In support of that argument, however, the Trustee cites his allegation

conceding that HSBC-HK's purpose was "to secure repayment of its loan." [FAC ¶ 101.]

These allegations that HSBC-HK was acting in its own normal economic self-interest as a bank

seeking repayment of loans are fatal to the Trustee's claim for tortious interference with

prospective economic advantage. *See, e.g.*, *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262

(2d Cir. 2015) ("When a defendant has acted with a permissible purpose, such as 'normal

economic self-interest,' wrongful means have not been shown, even if the defendant was

'indifferent to the [plaintiff's] fate.'" (quoting *Carvel*, 3 N.Y.3d at 190)).

102.    Finally, as HSBC-HK established in its Motion, the Trustee has failed to

adequately plead that HSBC-HK's conduct was the "but for" cause of the breakdown of the

management-led sale process, which is an essential element of a claim for tortious interference

with business relations. [Mot. ¶ 132.] The Trustee implicitly concedes that he has not pleaded

"but for" causation by failing to contend otherwise, and instead arguing that a lower standard of

causation applies at the pleading stage. [Opp. ¶ 102 n.148.] However, the Trustee does not

coherently explain what that lower standard of causation is. In any event, the Trustee is wrong

that a lower standard applies. *See, e.g.*, *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103,

107 (2d Cir. 2009) (New York law "requires an allegation that plaintiff would have entered into

an economic relationship *but for* the defendant's wrongful conduct" (citations omitted;

emphasis added)); *Lions Gate Entm't Corp. v. Icahn*, 2011 WL 1217245, at *2 (S.D.N.Y. Mar.

30, 2011) (dismissing claim for tortious interference with business relations because it "d[id]

not allege the 'but for' causation required by *Premium Mortgage*").[28]  Because the Trustee fails

to establish causation, Count Six should be dismissed.

## VII.  The Court Should Dismiss the Trustee's Claims for Equitable Subordination and Equitable Disallowance

103.    Count Seven, the Trustee's equitable subordination claim, should be dismissed

both because the Trustee lacks standing to bring the action and because he has failed to state a

claim.  The Trustee is not a fiduciary for any of the estates at which HSBC-HK's claims are

asserted and has not met any applicable standard to bring the claim either on a derivative basis

or on behalf of CFG Peru as a creditor.  Even if the Trustee had standing to prosecute a claim

for equitable subordination against HSBC-HK, the allegations in the FAC fall short of stating

one.  Further, although the Trustee has pleaded Count Seven as a claim for equitable

subordination *and* equitable disallowance, the latter is not a cognizable remedy under the

Bankruptcy Code.

### A.    *The Trustee Lacks Standing to Bring Equitable Subordination Claims Against HSBC-HK*

#### i.    The Trustee Is Not an Estate Fiduciary of Any Debtor Other than CFG Peru

104.    The Trustee asserts that his status as a "Court-appointed fiduciary" affords him

standing to dispute HSBC-HK's Proofs of Claim, notwithstanding the fact that he is not the

fiduciary for the estates of the Debtors against which such claims were filed.  [Opp. ¶¶ 105–07.]

However, as the Trustee acknowledges, the Court ordered his appointment as chapter 11 trustee

---

[28] The Trustee's reliance on *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202 (N.D.N.Y. 2010) is misplaced.  There, the plaintiff was approached by a third party who proposed a potential purchase or merger with the plaintiff.  *Id.* at 205–06.  After learning of this proposal, the defendant sabotaged plaintiff's efforts by meeting with the third party before plaintiff could and attempted to steal the business opportunity, which caused the third party to call off the transaction with plaintiff.  *Id.* at 206.  The Trustee's attempt to plead causation is nowhere near comparable to these facts.

solely with respect to CFG Peru and has not granted the Trustee any powers under section 1104(a) of the Bankruptcy Code or otherwise to prosecute claims on behalf of, or otherwise displace the estate fiduciaries of, any other Debtors.  [Trustee Dec. at 48 (directing that the "trustee be appointed for Debtor CFG Peru Singapore and, at this time, *for no other Debtor*" (emphasis added)); Declaration of William A. Brandt Jr. in Support of Notice of Sale of Non-Debtor Real Estate in Accordance with Non-Debtor Asset Sale Order, No. 16-11895, ECF No. 1286, Ex. A. ¶ 10 (declaring that the Trustee had "taken the Court's decision to appoint [him] only at CFG Peru Singapore and to keep the Ng family in place as management at the Other Debtors to heart . . . .").]

105.    Further, the Trustee cites no authority to support the argument that status as a court-appointed fiduciary with respect to a single debtor confers automatic standing to prosecute claims or assert defenses belonging to another debtor's estate.  As such, the Trustee's status as a fiduciary for CFG Peru does not give the Trustee standing to pursue estate litigation on behalf of CFGL, CFIL, Smart Group, or any other Debtor.

ii.    The Trustee Does Not Have Standing as a Creditor to Pursue Equitable Subordination Against HSBC-HK

106.    Perhaps recognizing the weakness of his claim to automatic standing as a fiduciary of a different estate, the Trustee asserts equitable subordination claims against HSBC-HK in connection with CFG Peru's status as a "creditor and party in interest in the chapter 11 cases of CFGL, CFIL and Smart Group."  [FAC ¶ 196.][29]  As the representative of a creditor,

---

[29] HSBC-HK also filed a Proof of Claim against a fourth Debtor, N.S. Hong, against which CFG Peru does not have a filed proof of claim or scheduled claim, and the Trustee has sought subordination or disallowance of such claim in the First Amended Complaint.  [FAC ¶¶ 197, 207.]  However, the Trustee has not alleged that CFG Peru is a creditor of N.S. Hong, conceding that CFG Peru has withdrawn its proof of claim against N.S. Hong, or made any other allegation or argument for CFG Peru's standing as a creditor or party in interest at that estate.  [FAC ¶ 126 n.74.]

the Trustee must allege a "particularized injury" resulting from the defendant's inequitable

conduct or "obtain derivative standing from the bankruptcy court" in order to bring an equitable

subordination claim against HSBC-HK. *Lyme Regis Partners, LLC v. Icahn (In re Blockbuster*

*Inc.)*, 2011 WL 1042767, at *1–2 (Bankr. S.D.N.Y. Mar. 17, 2011). He has failed to do either.

iii.    <u>CFG Peru Has Not Suffered a Particularized Injury</u>

          a.   Like any other creditor, the Trustee must establish particularized
               injury

107.    The Second Circuit has held unequivocally that a creditor does not have standing

in its own right to prosecute a claim for equitable subordination except where that creditor has

suffered a particularized injury. *Official Comm. of Unsecured Creditors of AppliedTheory*

*Corp. v. Halifax, L.P. (In re AppliedTheory Corp.)*, 493 F.3d 82, 86 (2d Cir. 2007) (upholding

dismissal of equitable subordination action brought by creditors' committee and rejecting

argument that, as a general matter, "equitable subordination claims 'may be brought directly by

a creditor'" (internal citation omitted)); *Blockbuster*, 2011 WL 1042767, at *2 ("The only time

that a *STN* review may not be required, the Second Circuit observed, is if an individual creditor

is able to show a 'particularized injury' for which a 'direct claim might be . . . available.'"

(citing *AppliedTheory*, 493 F.3d at 87)). To the extent the Trustee relies on CFG Peru's status

as a creditor of CFGL, CFIL and Smart Group as the basis for his standing to pursue equitable

subordination claims against HSBC-HK, CFG Peru is subject to this "particularized injury"

requirement to the same extent as any other creditor.

108.    The Trustee contends he is exempt from such a requirement because he is a court-

appointed fiduciary. [Opp. ¶ 105.] Here, the Trustee again conflates his role as fiduciary for *an*

estate with the role of the fiduciary for the estates at which the claims in question sit. Indeed,

while the Trustee owes fiduciary obligations to CFG Peru's estate, he approaches CFGL, CFIL,

50

and Smart Group as the representative of a creditor, charged with maximizing the value of CFG

Peru's own claims, rather than administering all claims at the subject estates.   Thus, the

Trustee's argument that he should not be treated like an individual creditor is perplexing.  [Opp.

¶ 107.]  Both cases cited by the Trustee for this proposition—*ABF Capital Mgmt. v. Kidder

Peabody & Co. (In re Granite Partners, L.P.)*, 210 B.R. 508, 515 (Bankr. S.D.N.Y. 1997) and

*White Family Cos. v. PNC Bank (In re Dayton Title Agency, Inc.)*, 527 B.R. 289, 300 (Bankr.

S.D. Ohio 2015) (finding that a creditor lacked standing to bring an equitable subordination

claim against another creditor, as it sought to vindicate "not . . . its own individual rights or

injury, but rather an injury common to all of the creditors of [the debtors]")—actually illustrate

the opposite.  These cases stand for the principle that individual creditors (such as CFG Peru in

this instance) are disfavored parties to bring equitable subordination claims against other

creditors, and the fiduciaries for the estates at which the claims actually sit should instead be the

parties presumptively in control.  *Granite Partners*, 210 B.R. at 516 ("[W]here inequitable

conduct causes direct injury to the estate, the [estate's fiduciary] is the proper party to assert it

on behalf of the creditors.").[30]

> b.  The Trustee Has Not Alleged a Particularized Injury Suffered by
>      CFG Peru as a Creditor

109.   The Trustee argues that CFG Peru has suffered a particularized injury because it

is the only creditor with "hard assets" that were allegedly damaged by HSBC-HK's conduct.

[Opp. ¶ 111.]  However, any such injury would pertain to CFG Peru's status as an equityholder

of the Peruvian OpCos, rather than its status as a creditor at the estates of CFGL, CFIL, and

---

[30] It is puzzling that the Trustee argues, on the one hand, that he has automatic standing to pursue equitable subordination or claims at other estates because his mandate is "afield of CFG Peru" and that maximizing value to creditors is "the Trustee's primary responsibility" and, on the other hand, that he brings this action to vindicate a purported harm that is specific to CFG Peru.  [Opp. ¶¶ 106–07.]

Smart Group.  "The fundamental aim of equitable subordination is to undo or offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other *creditors* in terms of *bankruptcy results*."  *Official Comm. of Unsecured Creditors v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*, 345 B.R. 56, 59 (Bankr. S.D.N.Y. 2006) (emphases added; citation omitted).  Thus, equitable subordination is fundamentally an inappropriate remedy for a shareholder to use to seek redress for alleged harm to its equity interests, and the fact that CFG Peru, in its non-creditor capacity, is also an affiliate of other Debtors and of the Peruvian OpCos is of no moment.

110.    The Trustee also specifically pleaded in the FAC that HSBC-HK's alleged conduct broadly "resulted in harm to CFG Peru *and the creditor body* in [the] Chapter 11 cases [of CFGL, CFIL, and Smart Group] because *creditors* are less likely to recover the full amounts due to them."  [FAC ¶ 200 (emphases added).]  Thus, the underlying allegations in Count Seven concede that any injuries to be remedied by equitable subordination were suffered by creditors collectively and are not particularized to CFG Peru.

111.    Further, even with respect to CFG Peru's status as an equityholder of the Peruvian OpCos, the Trustee has not alleged "particularized" injuries—the underlying allegations relate to supposed diminution in value of CFG Peru's equity stake in the Peruvian OpCos, which would have affected affiliates up and down the chain of corporate ownership, including, critically, the Debtors against which HSBC-HK filed its Proofs of Claim.

112.    The Trustee thus has not pleaded a particularized injury and therefore lacks standing to pursue equitable subordination of HSBC-HK's claims on behalf of CFG Peru in its capacity as a creditor.

iv.   The Trustee Does Not Have Derivative Standing to Pursue Equitable
      Subordination of HSBC-HK's Claims

113.   Contrary to the superficial contentions in the Opposition, the Second Circuit

imposes a rigorous standard upon parties seeking derivative standing to assert estate claims in

bankruptcy.  *See, e.g.*, *Unsecured Creditors Comm. of STN Enters. v. Noyes (In re STN Enters.)*,

779 F.2d 901, 904–05 (2d Cir. 1985);[31] *see also Blockbuster*, 2011 WL 1042767, at *2 (finding

that the Second Circuit "squarely held" that if a creditor is able to pursue a claim for equitable

subordination, that creditor "would first have to obtain derivative standing from the bankruptcy

court under *STN*").

114.   The Trustee contends he "can easily satisfy" [Opp. ¶ 107 n.151] the requirements

of the *STN* test, but the only basis he offers in support of that contention is that the Debtors have

not brought their own equitable subordination motions or agreed to assign standing to the

Trustee.  The mere fact that estate fiduciaries have not (yet) sought to dispute a claim is not

sufficient to satisfy *any* prong of the *STN* test.  Indeed, *STN* affords a path to derivative standing

where the debtor's failure to bring the underlying claims is *unjustified*.  *STN Enters.*, 779 F.2d at

904.  The Trustee has entirely failed to establish that the Debtors lack justification for declining

to pursue equitable subordination claims against HSBC-HK, particularly given the relatively

undeveloped posture of these Cases, in which (a) no chapter 11 plans have been prosecuted (let

alone confirmed) and (b) the Trustee's sale process is still ongoing.  Indeed, if the Trustee's sale

process is successful and HSBC-HK's Club Facility claims are repaid in full by the Peruvian

OpCos, any dispute of HSBC-HK's Proofs of Claim will be rendered moot.

---

[31] The *STN* factors require the movant to show that: (i) the "debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing"; (ii) the "action asserting [the proposed claims] is likely to benefit the reorganiz[ed] estate"; and (iii) "there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of the litigation will likely produce."  *Id.*

115.    Moreover, *STN* also requires the movant to show that (a) the "action asserting [the proposed claims] is *likely to benefit the reorganiz[ed] estate*" (with an eye toward potential "financial recovery" to the estate) and (b) "there is a sufficient likelihood of success to *justify the anticipated delay and expense to the bankruptcy* estate that the initiation and continuation of the litigation will likely produce." *Id.* at 904–05 (emphases added).  The Trustee does not even mention these elements of the test in his Opposition, let alone explain why he satisfies them with respect to the equitable subordination claim he has asserted.

116.    The Trustee also incorrectly suggests that, although he has made no attempt so far to satisfy *STN*, he can nevertheless be awarded derivative standing to pursue equitable subordination claims in this case on a retroactive basis.  [Opp. ¶ 107 n.151.]  The proposition that a court may "retroactively" grant derivative standing is far from settled law in the Second Circuit.  Indeed, in support of this proposition, the Trustee relies only on *The Official Committee of Unsecured Creditors of the Debtors v. Austin Financial Services, Inc. (In re KDI Holdings, Inc.)*, a 20-year-old bankruptcy court decision purporting to grant such relief.  [Opp. ¶ 107 n.151 (citing 277 B.R. 493, 504 (Bankr. S.D.N.Y. 1999)).]  In contrast to *KDI Holdings*, the Fourth Circuit has refused to retroactively grant derivative standing, writing that to do so "would run contrary to the very purpose of imposing standing limitations: preventing bankruptcy proceedings from being sidetracked, even temporarily, by wasteful ancillary litigation."  *Scott v. Nat'l Century Fin. Enters., Inc. (In re Balt. Emergency Servs. II, Corp.)*, 432 F.3d 557, 563 (4th Cir. 2005).  As that court observed, "requiring a formal determination of [derivative standing's] propriety in a given case is the only way to prevent [a] creditor from unjustly hijacking the bankruptcy proceedings.  Such a determination 'is not unduly burdensome,' and the cost . . . is small compared to the large-scale disruption that it prevents."

*Id.* (quoting *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003)); *cf. PW Enters. v. North Dakota (In re Racing Servs., Inc.)*, 540 F.3d 892, 900 (8th Cir. 2008) (holding that a court can grant derivative standing if the movant files its standing motion after its complaint).

117.    Moreover, the party that received derivative standing retroactively in *KDI Holdings* brought the claims at issue toward the end of a 120-day period after the court denied a request for extension.  *KDI Holdings*, 277 B.R. at 506.  Here, the Trustee had nearly two years before commencing this adversary proceeding, during which he could have sought such relief but did not do so.  Additionally, the court observed in *KDI Holdings* that the granting of retroactive approval is only proper in instances where there is "little likelihood of confusion as to who would file an adversary proceeding."  *Id.* at 505 (quotation omitted).  By contrast, the Trustee's very assertions in the Opposition illustrate the attendant confusion in this case: not only does the Trustee contend that his mandate includes some amorphous authority to act on behalf of other Debtors without the consent of their appointed fiduciaries, but he also notes that CFGL, CFIL, and Smart Group apparently disagree and have refused to "assign to the Trustee their standing to prosecute objections."[32]   [Opp. ¶ 107 n.151.]

118.    For the reasons set forth above, the Trustee has met neither the substantive nor the procedural requirements to obtain derivative standing to bring an equitable subordination claim against HSBC-HK.  Further, because he has also failed to plead a particularized injury for CFG Peru, he lacks standing to assert equitable subordination claims against HSBC-HK, and Count Seven should be dismissed on that basis alone.

---

[32] *See also Commodore Int'l, Ltd. v. Gould (In re Commodore Int'l, Ltd.)*, 262 F.3d 96, 100 (2d Cir. 2001) (requiring a creditors' committee to establish that derivative standing was in the best interest of the estate and "necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings" even where the debtor consented to such standing (internal citations omitted)).

B. *The Allegations in the First Amended Complaint Do Not State a Claim for Equitable Subordination of HSBC-HK's Claims*[33]

i. HSBC-HK Was Never an Insider of the Debtors

119.    HSBC-HK was not an "insider" of the Debtors by any legal or practical interpretation of the term.  [Opp. ¶¶ 118–21.]  Although the Trustee reaches for an argument that HSBC-HK was a non-statutory insider and "in control of" the Debtors (he fails to specify *which* Debtors and at which periods of time), his factual allegations fall far short of any standard needed to actually establish insider status.  [Opp. ¶¶ 116–21.]  *See Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 541 B.R. 551, 582 (Bankr. S.D.N.Y. 2015) ("[A]n 'insider' must, *in every case*, exercise dominion and control sufficient to create a 'merger of identity' to the point where the 'creditor has become, in effect, the alter ego of the debtor.'" (quoting *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 499 (S.D.N.Y. 1994) (emphasis added)).

120.    As discussed in the Motion, the Trustee's allegations regarding HSBC-HK's supposed "insider" status illustrate HSBC-HK's position as a third-party lender pursuing legal rights and remedies, rather than as an "alter ego" or person "in control" of the Debtors.[34]  [Mot.

---

[33] The commonly applied *Mobile Steel* test sets forth three independent elements that must be satisfied before a claim may be equitably subordinated.  They are: (i) the "claimant must have engaged in some type of inequitable conduct" sufficient to merit equitable subordination, (ii) the "misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant," and (iii) equitable subordination of the claim "must not be inconsistent with the provisions of the Bankruptcy Act."  *LightSquared LP v. SP Special Opportunities LLC (In re LightSquared Inc.)*, 511 B.R. 253, 347 (Bankr. S.D.N.Y. 2014) (quoting *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 700 (5th Cir. 1977)).  "The test for equitable subordination was originally articulated in [*Mobile Steel*] and has since been adopted by Courts in the Southern District of New York."  *LightSquared*, 511 B.R. at 346.

[34] In support of the claim that HSBC-HK was an insider, the Trustee has pointed to: (i) HSBC-HK's use of a legal creditor remedy in seeking and temporarily obtaining court appointment of the JPLs; (ii) HSBC-HK's negotiation and entry into the Deed of Undertaking as a means of effectively settling and resolving such judicial process (until the Debtors and their management willfully breached the Deed of Undertaking); (iii) earlier "workout" discussions and negotiations between Pacific Andes Group management and HSBC-HK (among other creditors) and information that HSBC-HK received regarding efforts to sell assets and repay defaulted and distressed loans; and (iv) HSBC-HK's retention of accountants and financial advisors—specifically, KPMG, employees of which (….continued)

¶¶ 155–58.]  As a general matter, a creditor may act aggressively or "us[e] his bargaining position . . . to improve the status of his existing claims."  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 610 (2d Cir. 1983); *see also Lehman Bros.*, 541 B.R. at 583.  Recognizing that creditors are afforded considerable latitude in enforcing, improving the position of, and collecting on their claims, courts are appropriately reluctant to find that such conduct could, on its own, render a creditor an insider.  *See BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC* (*In re BH Sutton Mezz LLC)*, 2016 WL 8352445, at *32 (Bankr. S.D.N.Y. Dec. 1, 2016) (finding that lenders were not insiders despite acting as the debtors' sole source of financial support and attempting to influence the debtors' decisions); *The Official Comm. of Unsecured Creditors of Champion Enters., Inc. v. Credit Suisse (In re Champion Enters., Inc.)*, 2010 WL 3522132, at *6 (Bankr. D. Del. Sept. 1, 2010) ("In the context of a lender-defendant, courts have refused to apply insider status absent a showing of a high level of control by the lender.").[35]

121.    Indeed, each of the four cases cited by the Trustee for the contention that the FAC "adequately establishes HSBC is an insider" is highly distinguishable from the allegations here. [Opp. ¶ 121.]  Among other things, each of those cases involves creditors enmeshed in complex commercial and operational relationships with debtors that go well beyond that of a mere third-party bank lender such as HSBC-HK.

122.    *Schubert v. Lucent Technologies Inc. (In re Winstar Communications, Inc.)*, for example, involved a creditor that was *both* an operationally critical supplier and *the principal*

---

eventually became JPLs, and FTI, employees of which subsequently became liquidators in separate proceedings (in which HSBC-HK is not involved) involving affiliates of the Debtors.  [FAC ¶ 203; Opp. ¶ 120.]

[35] Recognizing this extraordinarily "high level of control" required for lenders to become insiders, the *Champion* court went on to determine that lenders which (i) had access to and monitored the debtor's financial information, (ii) exerted influence in negotiating amendments to a credit agreement, and (iii) received related concessions had not become non-statutory insiders.  *Champion*, 2010 WL 3522132, at *6–7.

*lender* to the debtor—a factual scenario already considerably different from the facts in this case.  554 F.3d 382, 391–93 (3d Cir. 2009).  Although the court in that case affirmed a finding that the supplier-creditor was an insider, the decision was based on underlying findings of the bankruptcy court that, among other things, the supplier had used the debtor "as a mere instrumentality to inflate [the supplier's] own revenues," and had used the threat of non-performance and refusal to fund draw requests to coerce favorable renegotiation of critical commercial agreements.  *Id.* at 393, 399, 408.

123.    Similarly, the Trustee cites *KDI Holdings*, a case in which the creditors alleged to be insiders not only had complex trade relationships with the debtors, but also had overlapping management and affiliates with equity ownership in the debtors' parent entity.  277 B.R. at 511–13.  Moreover, the *KDI Holdings* court found viable allegations that "there are also indications that [one of the insider creditors] engaged in the direct management of the Debtors."  *Id.* at 512.

124.    The Trustee also cites *Pan Am Corp. v. Delta Airlines, Inc.*, a case in which Delta, the putative insider, was debtor Pan Am's DIP lender, a potential purchaser of its assets and a significant competitor.  175 B.R. at 500.  Critically, in that case, the court found that Delta *was not an insider*, despite the aforementioned overlapping relationships and the fact that it had special access to information about the debtors' operations relative to other creditors, and access to the debtors' premises and personnel.  *Id.*

125.    The Trustee points to only one 15-year-old, out-of-circuit case in which bank lenders were found to be insiders.  *Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.)*, 299 B.R. 732, 742–44 (Bankr. D. Del. 2003).  That case, too, is highly distinguishable, as the bank creditor defendants were accused of having acted as "both lender and investment banker" in connection with a problematic transaction.  *Id.* at 743.

Further, in *Exide*, the lenders were also alleged to have used their position to coerce a pledge of collateral and then force the debtors to wait out a preference period before filing for bankruptcy, so as to specifically elevate the priority of their claims over others (*i.e.*, in an effort to manipulate claim priorities in anticipation of bankruptcy). *Id.* In this case, by contrast, there was no contemplation by creditors of a bankruptcy in the United States until the moment the Debtors filed and, more fundamentally, there is no suggestion that HSBC-HK sought to elevate the priority of its Club Facility claims. [Mot. ¶¶ 15–34.]

126. Thus, the Trustee has failed to allege that HSBC-HK was an "insider" of any of the Debtors under any legal definition or common sense application of the term.

> ii. HSBC-HK Has Not Alleged that HSBC-HK Engaged in Inequitable Conduct

127. In general, absent illegality, equitable subordination of a third-party claim requires "gross and egregious" conduct that "shocks one's good conscience." *LightSquared*, 511 B.R. at 347–48. Because, as noted above, "there is generally no objection to a creditor's using his bargaining position . . . to improve the status of his existing claims," the claims of third-party creditors are generally subject to equitable subordination only in extreme cases. *Lehman Bros.*, 541 B.R. at 583 (quoting *W.T. Grant*, 699 F.2d at 610); *see also Smith v. Assocs. Commercial Corp. (In re Clark Pipe & Supply Co.)*, 893 F.2d 693, 702 (5th Cir. 1990) (finding that a creditor's "control over [debtor's] finances, admittedly powerful and ultimately severe, . . . [and] close watch over [debtor's] affairs does not, by itself . . . amount to such control as would justify equitable subordination"). The Trustee cannot show that HSBC-HK meets this high standard.

128. As a threshold matter, the Trustee tries to shore up the FAC by including in his Opposition descriptions of the original decision dismissing the JPLs. [*See* Opp. ¶¶ 6, 32.] As

described in the Motion, the Trustee previously sought permission from the Hong Kong Court

to use the original decision in this adversary proceeding, and such permission was denied in an

order and strongly worded "reasons for decision" in which the Hong Kong Court explained

why, under the circumstances, it would be unfair to allow the Trustee to do this. [*See* Mot.

¶¶ 33–34; Reasons for Decision.] The Trustee's effort to nonetheless characterize (and, in

HSBC-HK's view, blatantly mischaracterize) the original decision in his Opposition is a

violation of the Hong Kong Court's order and an indication that the Trustee understands that the

FAC requires additional support. HSBC-HK has returned to the same Hong Kong Court and

sought an injunction to require the Trustee to adhere to its prior ruling, including striking the

offending paragraphs from the FAC and Opposition, and to refrain from violating the order

again.

129.    In any event, even with these allegations in the Opposition, the Trustee does not

come close to laying the groundwork for a viable claim. Although the Trustee cites

superficially to a number of cases in his Opposition for the proposition that courts have declined

to dismiss equitable subordination claims amid alleged "[im]propriety of lender conduct," he

fails to connect those distinguishable cases to the attendant facts here. [*See* Opp. ¶ 125.]

Indeed, as with his argument that HSBC-HK was an "insider," the Trustee points here to a

number of cases in which the creditors accused of misconduct had multiple relationships with

the debtor (*i.e.*, they were not strictly lenders or financial creditors), and their alleged

misconduct related to attempts to unfairly leverage those non-lender relationships and/or the

breach of a duty owed in connection therewith. *See KDI Holdings*, 277 B.R. at 514–15

(denying motion to dismiss equitable subordination claim where defendant was an insider

holding numerous commercial, financial, and governance relationships with the debtors and

"breached its fiduciary duty by making secured loans . . . in lieu of an equity investment at a time when [d]ebtors were undercapitalized"); *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.),* 361 B.R. 369, 387–88 (Bankr. S.D.N.Y. 2007) (noting that "in addition to its position as a lender, Softbank held two seats on the Board," among other non-lender rights, and used such rights to advantage itself and inflict harm to other creditors); *Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 26–28, 45 (Bankr. E.D.N.Y. 2006) (creditor was car dealership's principal supplier, and was adequately alleged to have engaged in fraud); *Exide Techs.*, 299 B.R. at 743 (defendants were found to have manipulated creditor priorities in the run-up to bankruptcy by, among other things, transacting with the debtors "as both lender and investment banker").  In contrast to the aforementioned cases, the facts alleged by the Trustee do not point to any "dual role" on the part of HSBC-HK, let alone any attempt by HSBC-HK to abuse such a multifaceted relationship with the Debtors in order to advantage itself over other creditors.[36]

130.    Further, unlike in the examples cited by the Trustee, the central allegations of misconduct in this case relate to HSBC-HK's (a) use of a foreign court process to pursue appointment of the JPLs and (b) negotiation of the Deed of Undertaking (which was accepted by the Hong Kong Court) to resolve that foreign court process.  Setting aside the question of whether this Court should sit in judgment at all of conduct undertaken by a court in a foreign jurisdiction that occurred before the parties had any known ties to the United States, it is a

---

[36] Certain of the cases cited by the Trustee are also irrelevant here because they involved no or only cursory examination of whether inequitable conduct had actually occurred.  *See, e.g.*, *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 469 B.R. 415, 452 (Bankr. S.D.N.Y. 2012) (in denying motion to dismiss equitable subordination claim in omnibus decision addressing 49-count complaint, court merely noted in a chart that it agreed with plaintiffs that the "[c]omplaint alleges inequitable conduct sufficient to support a claim" and did not provide more detailed analysis); *Monahan Ford*, 340 B.R. at 45 (finding that, because a separate claim for fraud survived dismissal, the "inequitable conduct" element of equitable subordination was *per se* "also adequately pled").

critical differentiating fact in this case that much of the purportedly inequitable conduct

occurred under the supervision of a foreign judicial authority.  The presence of judicial

oversight immediately distinguishes the facts here from the cases cited by the Trustee in which

lenders are accused of working in secret to gain some hidden advantage or benefit.  *See, e.g.*,

*Exide Techs.*, 299 B.R. at 743 (complaint alleged that defendants leveraged non-public

information gained as financial advisor to the debtors in perpetrating their alleged inequitable

acts); *Adelphia Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns Corp.)*, 365

B.R. 24, 78 (Bankr. S.D.N.Y. 2007) (complaint alleged that the "[d]efendants, who were or

should have been aware that the [debtors' principals] were defrauding the [d]ebtors, knowingly

misrepresented and/or concealed material facts about fraud from [debtors'] independent

directors, with the intention that the [d]ebtors act upon the lenders' concealment").

131.    Moreover, lawful enforcement of creditor rights and remedies is generally

insulated from charges of equitable subordination, and the use of court process is the most

straightforward path available to creditors to protect and enforce their rights.  *See, e.g.*, *Nat'l*

*Westminster Bank USA v. Century Healthcare Corp.*, 885 F. Supp. 601, 608–09 (S.D.N.Y.

1995) ("Lenders are afforded substantial leeway in dealing with a debtor in default . . . .").  To

sanction a lender's use of judicial intervention (particularly in a foreign jurisdiction) as an

instance of "inequitable conduct" would call into doubt creditors' most fundamental exercise of

their rights.

132.    Finally, the Trustee fails to establish that HSBC-HK engaged in inequitable

conduct because he has not alleged a "direct relationship or communication between" CFG

Peru, as plaintiff, and HSBC-HK, as defendant, or that HSBC-HK violated "an independent

legal duty in its dealing with" CFG Peru.  *Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital*

*Corp.*, 121 F. Supp. 3d 321, 334–35 (S.D.N.Y. 2015).  The Trustee all but concedes that HSBC-HK has not violated a contractual obligation or other independent legal duty in the course of its conduct, instead arguing that "an actual breach of the provisions of the Club Facility" is not necessary, and that a court may find a basis for equitable subordination in a breach of the implied covenant of good faith and fair dealing instead.  [Opp. ¶ 126 (citing *LightSquared*, 511 B.R. at 352).]  However, the Trustee ignores two critical facts:  first, CFG Peru is not a party to the Club Facility and has no known contractual privity of any kind with HSBC-HK; and second, that the implied covenant of good faith and fair dealing is a creature of *New York* law, while by its terms, the Club Facility is governed by *English* law.[37]  English law does not recognize the implied covenant of good faith and fair dealing.  *See, e.g.*, *SmartStream Techs., Inc. v. Chambadal*, 2018 WL 1870488, at *6 (S.D.N.Y. Apr. 16, 2018) (dismissing defendant's good faith and fair dealing counterclaim because "[i]t is well established that English case law does not recognize any general implied duty of good faith and fair dealing") (quotation omitted); *Dover v. British Airways, PLC (UK)*, 2017 WL 4358726, at *4 (E.D.N.Y. Sept. 29, 2017) ("[U]nlike New York law, English law does not recognize a general obligation of good faith and fair dealing implied in all contracts."); *see also*, *supra* ¶¶ 83–85 (noting absence of similar duty under Hong Kong law).  Thus, even to the extent a breach of the implied covenant of good faith and fair dealing is sufficient to sustain a claim for equitable subordination in some cases, there is no such implied covenant arising under applicable law in this case.

---

[37] [No. 16-11895, Proof of Claim No. 98-1, Ex. A (the "**Club Facility Agreement**"), § 18.6(a).]

63

### iii.  HSBC-HK's Conduct Neither Resulted in Harm to Other Creditors Nor Conferred a Benefit Upon HSBC-HK

133.    "In [the Second] Circuit, the second requirement for equitable subordination involves a conjunctive test, requiring a showing of *both* unfair advantage to one creditor *and* harm to the debtor or its other creditors."  *In re Mr. R's Prepared Foods, Inc.*, 251 B.R. 24, 29 (Bankr. D. Conn. 2000) (emphasis added) (quotation omitted); *see also LightSquared*, 511 B.R. at 349 (under the *Mobile Steel* test, the "benefit, or unfair advantage, must have resulted in an injury to the debtor or its creditors").  That courts in this Circuit treat the element as a conjunctive test (*i.e.*, requiring a showing of both unfair advantage and harm) is both logical and consistent with the equitable grounding of equitable subordination under section 510(c)—it assures that the doctrine will be limited to circumstances where there is a need for rebalancing between a creditor that has unfairly advantaged itself and the others that have been harmed. *See, e.g.*, *Enron Corp. v. Avenue Special Situations Fund II, LP (In re Enron Corp.)*, 333 B.R. 205, 218 (Bankr. S.D.N.Y. 2005) ("The purpose of section 510(c) of the Bankruptcy Code is to correct inequitable conduct and ensure no creditor gain[s] an unfair advantage in the distribution of the estate.").

134.    The Trustee disregards both the case law and the logic that underpins this conjunctive requirement and contends HSBC-HK should be subject to equitable subordination because it "stood to benefit from the commencing [of] a liquidation proceeding that would have accelerated the repayment of its Club Facility loan," regardless of whether any unfair advantage was ever actually obtained.  [Opp. ¶ 112.]  To be sure, the Trustee has not identified any actual "unfair advantage in the distribution of the estate" that HSBC-HK received or is poised to

receive on account of its alleged inequitable conduct.  The Trustee has thus failed to satisfy an

essential element required to sustain a claim for equitable subordination.[38]

C. *Dismissal of Equitable Subordination Claims at the Rule 12(b) Stage Is an Appropriate and Common Practice*

135.    The Trustee contends that, as a general matter, adjudication of equitable

subordination at the Rule 12(b) stage is "improper."  [Opp. at 62.]  However, equitable

subordination claims are not insulated from generally applicable procedural rules, and there is

ample precedent for the dismissal of equitable subordination actions just as there is precedent

for dismissal of other types of claims.  *See, e.g.*, *LaMonica v. Tilton (In re TransCare Corp.)*,

592 B.R. 272, 291–92 (Bankr. S.D.N.Y. 2018) (dismissing equitable subordination claim as

inadequately pled); *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman

Sachs Credit Partners (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 554 (Bankr. D. Del. 2009)

(same); *O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 276–

77 (Bankr. S.D.N.Y. 2008) (same); *Official Comm. of Unsecured Creditors of Sunbeam Corp.

v. Morgan Stanley & Co. (In re Sunbeam Corp.)*, 284 B.R. 355, 369 (Bankr. S.D.N.Y. 2002)

(same).

---

[38] In its Motion, HSBC-HK also submitted that Count Seven must be dismissed because it is inconsistent with the Bankruptcy Code and therefore fails the third prong of the *Mobile Steel* test.  [Mot. ¶¶ 162–63.]  Specifically, HSBC-HK argued that equitably subordinating HSBC-HK's claims in this case is improper under the Bankruptcy Code because doing so would (i) violate principles of international comity and deference to a creditor's pre-bankruptcy exercise of local law rights and (ii) result in an impermissible "doubling up" of equitable subordination and money damages as additive remedies.  [*Id.*]  In response, the Trustee argues that, if he can establish the first two elements of the *Mobile Steel* test (as discussed above, he cannot), then the question of whether his equitable subordination count is consistent with the Bankruptcy Code is "likely moot."  [Opp. ¶ 127 (internal citation omitted).]  However, the Trustee has not even attempted to refute or otherwise directly address the substance of these deficiencies, which HSBC-HK maintains would contravene the Bankruptcy Code and are also, independent of the *Mobile Steel* test, grounds for dismissal of Count Seven.  HSBC-HK submits, as set forth in the Motion, that equitable subordination in this case would represent an improper extraterritorial application of section 510(c) of the Bankruptcy Code.  [Mot. ¶ 164.]

D. *There Is No Reason the Court Need Adjudicate the Equitable Subordination Claim Prior to the Sale of the Peruvian OpCos*

136.    Although, for the reasons set forth above and in the Motion, the Trustee's equitable subordination claim should be dismissed on the merits, HSBC-HK also respectfully submits that, regardless of the Court's decision on the merits, there is no reason why the Trustee's equitable subordination claim must go forward now.  Indeed, while the Trustee contends that "[t]he Court and the Trustee are not required to wait on HSBC[-HK]" in adjudicating the Trustee's equitable subordination claim, he has not adequately explained why there is a need to adjudicate the claim now.  [Opp. ¶ 115.]  By the Trustee's own words, it is anticipated that HSBC-HK's claims (along with the claims of the other Club Lenders) will be paid in full by the Peruvian OpCos at the time of their sale.[39]  Although HSBC-HK recognizes the possibility that the sale process will not ultimately work out as the Trustee intends (and that the Trustee may ultimately fall short of his prior assurances regarding payment in full of the Club Lenders), there is nothing now on the record in the chapter 11 cases to suggest that such a result is anticipated or likely.

137.    For the Trustee to pursue active and resource-intensive litigation on such a hypothetical basis is a questionable use of estate and judicial resources, and will also result in needless further drain on HSBC-HK's resources.  Moreover, because HSBC-HK, as a lender under the Club Facility, is entitled to pass along its litigation costs under the Club Facility's broad indemnification and reimbursement provisions, the costs of this litigation incurred by

---

[39] [*See, e.g.*, Chapter 11 Trustee's Motion for Order (i) Approving the Settlement Agreement Netting Certain Intercompany Claims Between CFG Peru Singapore and CFGI, and Between CFG Peru Singapore and SFR, (ii) Authorizing Corporate Governance Actions, and (iii) Granting Related Relief, No. 16-11895, ECF No. 1489 ¶ 14 ("The [Trustee] anticipates that third party creditors of the Peruvian OpCos will be paid in full in cash as part of the [sale of the Peruvian OpCos].").]

HSBC-HK will ultimately also be borne by the Peruvian OpCos and, indirectly, the Debtors.[40]

Accordingly, HSBC-HK respectfully requests that, in the event the Court otherwise declines to

grant a final dismissal of the Trustee's equitable subordination claim, the claim should be

dismissed without prejudice or, alternatively, held in abeyance until it becomes relevant to

recoveries or other central issues in the chapter 11 cases.

      E.   *"Equitable Disallowance" Is Not a Remedy Recognized Under the Bankruptcy Code*

    138.   "[N]o court has ever employed equitable disallowance as a remedy or sanction

under the Bankruptcy Code."  *Harbinger Capital Partners LLC v. Ergen (In re LightSquared*

*Inc.)*, 504 B.R. 321, 338 (Bankr. S.D.N.Y. 2013).  Indeed, the weight of authority in this district

and elsewhere is that the Bankruptcy Code does not permit equitable disallowance of claims.

"[T]he Bankruptcy Code, pursuant to section 510(c) or otherwise, does not permit equitable

disallowance of claims that are otherwise allowable under section 502(b) of the Bankruptcy

Code."  *Id.* at 339; *see also Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC)*, 515 B.R.

117, 157 (Bankr. S.D.N.Y. 2014) ("[Section] 510(c) provides for the remedy of equitable

subordination, not equitable disallowance.  Equitable disallowance is inconsistent with equitable

subordination, and frankly, would eviscerate the principle of equitable subordination by

disallowing a claim under the same set of facts." (citations omitted)).  The Trustee ignores such

authority and points to a single case in this district and one other case in another district in

which the court found equitable disallowance theoretically available as a remedy in "extreme

instances."  *In re Wash. Mut. Inc.*, 461 B.R 200, 257 (Bankr. D. Del. 2011); *Adelphia*

*Commc'ns Corp. v. Bank of Am. N.A. (In re Adelphia Commc'ns Corp.)*, 365 B.R. 24, 73

---

[40] *See* Club Facility Agreement §§ 14.2, 16.

67

(Bankr. S.D.N.Y. 2007), *aff'd in part sub nom. Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390

B.R. 64 (S.D.N.Y. 2008); [Opp. ¶ 129 (citing *Washington Mutual* and *Adelphia*).]  Moreover,

both the *Adelphia* and *Washington Mutual* decisions are contrary to more recent opinions from

courts in their respective districts.  *See LightSquared*, 504 B.R. at 339; *Madoff*, 515 B.R. at 157;

*In re Hercules Offshore, Inc.*, 565 B.R. 732, 760 (Bankr. D. Del. 2016) (bankruptcy courts

"routinely reject equitable disallowance as a remedy under the [Bankruptcy] Code").

139.    However, even if such a remedy *could* exist under some circumstances, HSBC-

HK submits that the facts alleged in this case—which for the reasons set forth above fail to state

a claim for equitable *subordination* (let alone, equitable disallowance)—fall far short of the

extreme wrongdoing that would be required to sustain such unprecedented relief. [41]

## **CONCLUSION**

140.    For the reasons set forth herein, and for the reasons set forth in the Motion,

HSBC-HK respectfully requests that the Court dismiss the First Amended Complaint with

prejudice.

---

[41] The Trustee's argument that the 80-year-old *Pepper v. Litton* decision (which long pre-dates enactment of the Bankruptcy Code) was not expressly overruled by the Supreme Court's decision in *Law v. Siegel*, 571 U.S. 415 (2014), is misplaced and ultimately of no moment.  In *Law*, the Supreme Court affirmed "[i]t is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code."  *Id.* at 421 (quotation omitted).  As noted in *Madoff*, the Supreme Court's decision in *Law* "bolstered" the conclusion that the Bankruptcy Court does not permit equitable disallowance.  *Madoff*, 515 B.R. at 157 ("[T]he all-inclusive structure of 11 U.S.C. § 502(b) implies that whatever is excluded cannot be supplied through § 105(a)."). However, neither *Madoff* nor *LightSquared* relied on *Law* as the basis for holding that equitable disallowance is not permitted under the Bankruptcy Code (indeed *LightSquared* pre-dated *Law*).  Instead, those decisions relied on thorough review of the Bankruptcy Code and case law directly addressing equitable disallowance to determine that it is not a permissible remedy.  HSBC-HK respectfully submits that those courts reached the proper conclusion independent of *Law*.  Finally, HSBC-HK also notes that the Trustee's citation of *Law* for the principle that a "court may also possess further sanctioning authority under either 105(a) or its inherent powers" is taken out of context, as the Supreme Court was specifically describing potential authority to sanction "*debtor* misconduct."  [Opp. ¶ 129 (citing *Law*, 571 U.S. at 427).]

Dated:   New York, New York
         July 15, 2019

| | |
|---|---|
| DAVIS POLK & WARDWELL LLP | BOIES SCHILLER FLEXNER LLP |
| By:   */s/ Elliot Moskowitz* | By:   */s/ Scott E. Gant* |
| Donald S. Bernstein | Scott E. Gant (admitted *pro hac vice*) |
| Elliot Moskowitz | 1401 New York Avenue, NW |
| 450 Lexington Avenue | Washington, DC 20005 |
| New York, New York 10017 | Telephone:   (202) 237-2727 |
| Telephone:   (212) 450-4000 | |
| | - and - |
| | Damien J. Marshall |
| | 55 Hudson Yards |
| | New York, New York 10001 |
| | Telephone:   (212) 446-2300 |

*Counsel to The Hongkong and Shanghai Banking Corp. Ltd.*